1    TRINETTE G. KENT (State Bar No. 222020)
2    Lemberg Law, LLC
     1100 West Town & Country Rd.
3    Suite 1250
4    Orange, California 92868
     Telephone: (480) 247-9644
5    Facsimile: (480) 717-4781
6    E-mail: tkent@lemberglaw.com

7                    UNITED STATES DISTRICT COURT
8                   CENTRAL DISTRICT OF CALIFORNIA

9
10   Gary Guthrie, Stephanie Crain, Chad       Case No.:  8:22-cv-01055-DOC-DFM
     Hinton, and Julio Zelaya, *on behalf of*
11   *themselves and all others similarly*     **FIRST AMENDED CLASS ACTION**
     *situated,*                               **COMPLAINT**
12
13                    Plaintiffs,
14                                             **DEMAND FOR JURY TRIAL**
          vs.
15
16   Mazda Motor of America, Inc.,
17                    Defendant.
18
19
20
21
22
23
24
25
26
27
28

For this First Amended Class Action Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, and Julio Zelaya, by undersigned counsel, state as follows:

## INTRODUCTION

1.    Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, and Julio Zelaya bring this lawsuit on behalf of themselves and a proposed class of past and present owners and lessees of defective 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Mazda Motor of America, Inc. ("Defendant" or "Mazda").

2.    Plaintiffs and the Classes were damaged because the Class Vehicles contain defective valve stem seals that allow engine oil to leak into the Class Vehicles' combustion chamber (the "Valve Stem Seal Defect"), which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals, places the Class Vehicles at an increased risk of engine failure, and causes to damage to the Class Vehicles' engines.

3.    The Valve Stem Seal Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because it prevents the Class Vehicles' engines from maintaining the proper level of engine oil and causes voluminous oil consumption that cannot be reasonably anticipated or predicted and can result in engine failure.  As a result, the Defect can cause engine failure while the Class Vehicles are in operation,

2

and it exposes the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accidents and injury.

4.    Mazda has long known about the Defect; however, it has refused or otherwise been unable to repair the Defect in the Class Vehicles under Mazda's warranty.  Indeed, in an October 4, 2021, bulletin, Mazda recognized that the Class Vehicles consume an excessive amount of engine oil in between oil changes and that "it is very likely that valve stem seal damage is causing oil to leak into the combustion chamber."  However, Mazda merely directs its dealerships to "top off the engine" oil in response to Class Vehicle owner complaints – which merely addresses a symptom of the Defect rather than the cause of the Defect – and admits that it does not yet have a "complete repair" for the serious and dangerous defect.   As of July 2022, Mazda has still not provided its dealerships with an adequate repair regarding the Defect.

5.    As set forth below, Mazda knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Despite being notified of the Valve Stem Seal Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Mazda enthusiast websites), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Valve Stem Seal Defect, has not offered its customers a suitable repair for the Valve Stem Seal Defect, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to the Valve Stem Seal Defect.

FIRST AMENDED CLASS ACTION COMPLAINT

6.      Further, Mazda has concealed the Valve Stem Seal Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.  Not only did Mazda not disclose the Defect to Plaintiffs or putative class members at the time of sale, but thereafter Mazda has claimed that Class Vehicles' engine oil consumption is purportedly "normal" even though it is the result of a defect within the Class Vehicles' engine.

7.      As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

8.      Plaintiffs have each given Mazda a reasonable opportunity to cure the Valve Stem Seal Defect in their vehicles, but Mazda has been unable to repair the vehicles within a reasonable amount of time.

9.      Mazda's conduct is in violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.,* the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, *et seq.*, and constitutes fraudulent concealment, unjust enrichment, and a breach of express and implied warranties and the Magnuson-Moss Warranty Act.

10.     Mazda has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale, as their vehicles continue to suffer from the

4

unremedied Valve Stem Seal Defect.

11.    To remedy Mazda's unlawful conduct, Plaintiffs, on behalf of the
proposed class members, seek damages and restitution from Mazda, as well as
notification to class members about the Defect.

## **PARTIES**

12.    Plaintiff Gary Guthrie ("Mr. Guthrie") is an adult individual residing in
Spokane, Washington.

13.    Plaintiff Stephanie Crain ("Ms. Crain") is an adult individual residing in
Chicago, Illinois.

14.    Plaintiff Chad Hinton ("Mr. Hinton") is an adult individual residing in
Gallatin, Tennessee.

15.    Plaintiff Julio Zelaya ("Mr. Zelaya") is an adult individual residing in
Doral, Florida.

16.    Defendant Mazda Motor of America, Inc. ("Mazda" or "Defendant") is a
California corporation with a principal place of business at 200 Spectrum Center
Drive, Irvine, Orange County, California 92618,

17.    At all times herein mentioned, Mazda designed, engineered, developed,
manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or
failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled,
advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the
Class Vehicles, including the vehicle operated by Plaintiffs.  Mazda also reviews and

5

analyzes warranty data submitted by Mazda's dealerships and authorized technicians in order to identify defect trends in vehicles. Under Mazda's written warranties Class Vehicle owners are required to bring their vehicles to authorized Mazda dealerships for warranty repairs, and Mazda specifically dictates what warranty repairs such dealerships perform and how such repairs are performed by Mazda dealers. Upon information and belief, Mazda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decide to audit the dealership. Mazda uses this information to determine whether particular repairs are covered by an applicable Mazda warranty or are indicative of a pervasive defect.

18.    Mazda also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Valve Stem Seal Defect.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over Mazda, and venue is proper in the Superior Court for the County of Orange, because Mazda is headquartered and its principal place of business is within Orange County.

6

# FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

## I.    Gary Guthrie

20.    On June 7, 2021, Mr. Guthrie purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBEY3MM260992 (hereafter the "Guthrie Vehicle") from Foothill Autogroup ("Foothill"), an authorized Mazda dealership located in Spokane, Washington.

21.    Prior to the purchase, Foothill assured Mr. Guthrie that the Guthrie Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty[1] and was free from defects of workmanship and that the car was safe and reliable.

22.    Shortly after purchasing the Guthrie Vehicle, Mr. Guthrie experienced the Valve Stem Seal Defect.

23.    Specifically, on or about March 16, 2022, approximately 4,000 miles after the Guthrie Vehicle had its last oil change, Mr. Guthrie observed that the Guthrie Vehicle's "Low Engine Oil Level" indicator light illuminated and displayed on the vehicle's instrument cluster.  Mr. Guthrie checked the Guthrie Vehicle's engine oil level with a dipstick and observed that the dipstick was "bone dry."

---

[1] Under Mazda's New-Vehicle Limited Warranty, "[t]he New-Vehicle Limited Warranty period for defects in materials and workmanship in all parts supplied by Mazda is 36 months or 36,000 miles, whichever comes first" and "The Powertrain Limited Warranty period for defects in materials and workmanship in the powertrain components supplied by Mazda is 60 months or 60,000 miles, whichever comes first." *See* https://www.mazdausa.com/owners/warranty (last visited April 8, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

24.    On March 18, 2022, Mr. Guthrie presented the Guthrie Vehicle to Foothill, complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals, and sought a repair.  In response, Foothill inspected the Guthrie Vehicle, determined that there were no signs of an oil leakage, and confirmed that the Guthrie Vehicle had consumed too much engine oil in between oil changes. Nonetheless, the dealership advised Mr. Guthrie that pursuant to Mazda's Technical Service Bulletin No. 01-012/21, Mazda had not yet determined the root cause of the excess engine oil consumption, and there were no repairs available for the issue at that time.  The dealer directed Mr. Guthrie to add additional engine oil to the Guthrie Vehicle whenever the low engine oil indicator light illuminated in between oil changes.

25.    On June 21, 2022, approximately 3,300 miles after the Guthrie Vehicle's prior oil change, the low engine oil indicator light illuminated once again while Mr. Guthrie was driving the Guthrie Vehicle on the freeway between Spokane, Washington and Idaho:

FIRST AMENDED CLASS ACTION COMPLAINT

26.     Notably, compared with the first time the vehicle's low engine oil light illuminated, the second occasion occurred approximately 1,000 miles sooner following the prior oil change, indicating that the rate of the Guthrie Vehicle's consumption of engine oil has already begun to increase exponentially.

27.     Mr. Guthrie thereafter drove off the freeway, parked his vehicle, checked the vehicle's oil level with a dipstick and observed the dipstick was nearly entirely dry. He then added additional engine oil to his vehicle before returning to the freeway

9

and continuing his trip, to prevent the engine from failing.

28.    On June 22, 2022, Mr. Guthrie called Foothill and notified it that the Guthrie Vehicle's low engine oil indicator light had once again illuminated in between oil change intervals.  In response, the dealer told Mr. Guthrie that his vehicle's engine oil consumption was purportedly "normal" and the Class Vehicles "all do that."  The dealer further told Mr. Guthrie that he simply needed to add more engine oil to the vehicle until the low engine oil light was no longer illuminated and that there was no need for him to bring his vehicle to the dealer for an inspection or repair attempt.

29.    On July 8, 2022, Mr. Guthrie presented his vehicle to Foothill, complained once again about his vehicle's excessive engine oil consumption and low engine oil light illuminated, and requested a repair. In response, the dealer inspected the Guthrie Vehicle but did not attempt any repairs.  Instead, the dealer told Mr. Guthrie that all turbo engines burn engine oil and emphasized to him that his vehicle's engine oil consumption was purportedly "normal." The dealer also resisted providing Mr. Guthrie with a repair order documenting the dealer visit and only reluctantly provided one to him after he demanded such paperwork.

30.    Moreover, Mr. Guthrie provided the dealership with a copy of the 2021 Technical Service Bulletin No. 01-012/21 (discussed below) and noted that pursuant to the bulletin, Mazda had determined that the cause of his vehicle's oil consumption was likely the vehicle's valve stem seals, but that no repair was available when the bulletin was issued. He then asked the dealer whether any subsequent bulletins or

repairs were issued following the 2021 bulletin.  In response, the dealer stated that it was not aware of any more recent technical service bulletins concerning the oil consumption issue, and that the dealer did not believe that Mazda would be providing it with a repair instruction regarding the issue in the near future.  The dealer remarked that it nonetheless would like another bulletin because the dealer receives a "dozen" oil consumption complaints each day.

31.    To date, Mr. Guthrie has had to repeatedly purchase additional engine oil out-of-pocket and add it to his vehicle in between oil changes to prevent the vehicle's engine from failing.  Indeed, Mr. Guthrie constantly drives with additional engine oil in his trunk in the event his low engine oil indicator light appears in between oil changes.

32.    Accordingly, unless and until the Guthrie Vehicle is repaired, Mr. Guthrie will have to continue to purchase additional engine oil and add it to his vehicle in between oil change intervals in order to prevent his vehicle's engine from failing.

33.    Further, Mr. Guthrie has had to miss work and lost wages in order to bring his vehicle to Mazda dealerships in an attempt to repair the Valve Stem Seal Defect.

34.    Mr. Guthrie, through his counsel, has sent a letter to Mazda, advising it that the Guthrie Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

11

FIRST AMENDED CLASS ACTION COMPLAINT

35.     The Guthrie Vehicle remains unrepaired to date.

36.     At all times, Mr. Guthrie has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## II.   Stephanie Crain

37.     On March 5, 2021, Ms. Crain purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBDY6MM236851 (hereafter the "Crain Vehicle") from Sandy Sansing Mazda ("Sansing"), an authorized Mazda dealership located in Pensacola, Florida.

38.     Prior to the purchase, Sansing assured Ms. Crain that the Crain Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and that the car was safe and reliable.

39.     Shortly after purchasing the Crain Vehicle, Ms. Crain experienced the Valve Stem Seal Defect when her vehicle's low engine oil indicator light illuminated before she was due for her next oil change.

40.     On June 30, 2021, when the Crain Vehicle's odometer read approximately 6,494 miles, Ms. Crain presented the Crain Vehicle to Sansing to perform an oil change and complained that the Crain Vehicle's low engine oil indicator light had previously illuminated in between oil change intervals.  In response, the dealership did not attempt any repairs on the Crain Vehicle regarding the vehicle's oil consumption.

41.     On or about May 23, 2022, Ms. Crain presented the Crain Vehicle to

12

Mazda Evanston, an authorized Mazda dealership located in Evanston, Illinois.  Ms. Crain complained that the Crain Vehicle's low engine oil indicator light again illuminated in between oil change intervals.  In response, the dealership inspected the vehicle and confirmed that the "vehicle came in with low oil, oil was to the tip of the dip stick."  However, the dealer claimed that the vehicle's low engine oil level may have been the result of the prior dealership not adding enough engine oil to the vehicle when performing an oil change.  The dealership additionally attributed the Crain Vehicle's low engine oil levels to the fact that the vehicle has a turbo engine and claimed that turbos consume more engine oil than vehicles without turbo engines. The dealership did not perform any repairs on the Crain Vehicle regarding the vehicle's engine oil consumption or the Valve Stem Seal Defect.

42.     Accordingly, unless and until the Crain Vehicle is repaired, Ms. Crain will have to purchase engine oil and add it to her vehicle in between oil change intervals in order to prevent her vehicle's engine from failing.

43.     Ms. Crain, through her counsel, has sent a letter to Mazda, advising it that the Crain Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

44.     The Crain Vehicle remains unrepaired to date.

45.     At all times, Ms. Crain has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

13

### III.    Chad Hinton

46.    On October 23, 2021, Mr. Hinton purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBAY7MM308029 (hereafter the "Hinton Vehicle") from Wyatt-Johnson Mazda ("Wyatt-Johnson"), an authorized Mazda dealership located in Clarksville, Tennessee.

47.    Prior to the purchase, Wyatt-Johnson assured Mr. Hinton that the Hinton Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and that the car was safe and reliable.

48.    Shortly after purchasing the Hinton Vehicle, Mr. Hinton experienced the Valve Stem Seal Defect.

49.    Specifically, on or about June 1, 2022, Mr. Hinton observed that the Hinton Vehicle's "Low Engine Oil Level" indicator light illuminated and displayed on the vehicle's instrument cluster. Mr. Hinton checked the Hinton Vehicle's engine oil level with a dipstick and observed that the dipstick was dry.

50.    Mr. Hinton thereafter purchased engine oil and added it to his vehicle in between oil change intervals in order to prevent damage to the vehicle's engine or the engine failing.

51.    On June 16, 2022, Mr. Hinton presented his vehicle to Wyatt-Johnson for an oil change and complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals and that he had twice checked the oil

14

levels and confirmed they were low.  In response, the dealership stated that the Hinton Vehicle's oil consumption was purportedly "normal" and that his vehicle will "burn oil."  The dealership did not attempt any repairs on the vehicle regarding the engine oil consumption or the Valve Stem Seal Defect.

52.     Shortly after the oil change, Mr. Hinton checked his dipstick and confirmed that the dealership had overfilled his engine with oil during the June 16, 2022 oil change and the oil level was above the 'full' mark on the dipstick.

53.     Thereafter, Mr. Hinton has measured the Hinton Vehicle's oil consumption on two more occasions with a dipstick and confirmed that its engine continues to consume oil following the June 16, 2022 dealer visit.

54.     Accordingly, unless and until the Hinton Vehicle is repaired, Mr. Hinton will have to purchase additional engine oil and add it to his vehicle in between oil change intervals in order to prevent his vehicle's engine from failing.

55.     Mr. Hinton, through his counsel, has sent a letter to Mazda, advising it that the Hinton Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

56.     The Hinton Vehicle remains unrepaired to date.

57.     At all times, Mr. Hinton has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

IV.    **Julio Zelaya**

58.     On December 10, 2021, Mr. Zelaya purchased a new 2021 Mazda CX-30

15

vehicle, Vehicle Identification Number 3MVDMBDY7MM310276 (hereafter the

"Zelaya Vehicle") from Ocean Mazda ("Ocean"), an authorized Mazda dealership

located in Miami, Florida.

59.     Prior to the purchase, Ocean assured Mr. Zelaya that the Zelaya Vehicle

was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty

and was free from defects of workmanship and that the car was safe and reliable.

60.     Shortly after purchasing the Zelaya Vehicle, Mr. Zelaya experienced the

Valve Stem Seal Defect.

61.     Specifically, in March 2022, when the Zelaya Vehicle's mileage was

approximately 4,700 miles, the "Low Engine Oil Level" indicator light illuminated

and displayed on the vehicle's instrument cluster.

62.     On March 30, 2022, Mr. Zelaya presented the Zelaya Vehicle to Ocean,

complained that his vehicle's low engine oil indicator light illuminated in between oil

change intervals, and sought a repair.  In response, Ocean told Mr. Zelaya that because

his vehicle contains a turbo engine, it will consume engine oil.  As a result, the

dealership told Mr. Zelaya he would need to get his vehicle's oil changed more often

to account for the vehicle's engine oil consumption.  The dealership did not attempt

any repairs on the Zelaya Vehicle regarding the complaints of engine oil consumption.

63.     Accordingly, unless and until the Zelaya Vehicle is repaired, Mr. Zelaya

will have to continue to purchase additional engine oil and add it to his vehicle in

between oil change intervals, and/or his oil changed more frequently, in order to

16

1    prevent his vehicle's engine from failing.

2    64.     Mr. Zelaya, through his counsel, has sent a letter to Mazda, advising it
3
4    that the Zelaya Vehicle suffers from the Valve Stem Seal Defect and that Mazda has
5    failed to repair the vehicle under Mazda's warranty.

6    65.     The Zelaya Vehicle remains unrepaired to date.
7
8    66.     At all times, Mr. Zelaya and his wife have driven the Zelaya Vehicle in a
9    foreseeable manner and in the manner in which it was intended to be used.
10
11                        **FACTUAL ALLEGATIONS**

12   **The Valve Stem Seal Defect**

13   67.     On July 8, 2020, Mazda announced the release of its "Skyactiv-G 2.5T
14
15   engine," noting that the engine "will deliver an impressive 250 horsepower and 320
16   lb-ft of torque with premium (93 octane) fuel or a solid 227 horsepower and 310 lb-ft
17
18   of torque with regular (87 octane) fuel."[2]

19   68.     The Class Vehicles all share the same exact Skyactiv-G 2.5T engine and
20   Mazda began selling the Class Vehicles in late 2020.
21
22   69.     Engine oil is crucial to a vehicle's proper functioning because it acts as
23   an essential lubricant for the moving parts in internal combustion engines.  The oil
24   creates a film separating surfaces of adjacent moving parts to minimize direct contact,
25
26
27   _____

28   [2] *See* https://news.mazdausa.com/2020-07-08-2021-Mazda3-2-5-Turbo-Refined-Performance (last visited July 13, 2022); *see also, e.g.,* https://news.mazdausa.com/2020-09-17-2021-Mazda-CX-30-2-5-Turbo-Empowering-Performance (last visited July 13, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

decreasing heat caused by friction and reducing wear.  Engine oil also has important cleaning and sealing functions and serves as an important medium for dissipating heat throughout the engine.  As a result, the Class Vehicles need the proper amount of engine oil in order for their Skyactiv-G 2.5T engine and its related parts to function safely.

70.     The valve stem seals in the Class Vehicles' identical Skyactiv-G 2.5T engines are supposed to prevent engine oil from contaminating the air/fuel mixture in the Class Vehicle's engine's combustion chamber and prevent intake and exhaust gases from contaminating the oil in the cylinder head and the rest of the engine.

71.     Further, valve stem seals within the engines are supposed to last the lifetime of the Class Vehicles.

72.     However, as a result of, *inter alia,* the materials Mazda used to manufacture the Class Vehicles' engine components and specifically the valve stem seals, and the way in which Mazda manufactured the Class Vehicles' engine components and valve stem seals, the Class Vehicles contain defective valve stem seals that cause engine oil to leak past the valve stem and into the Class Vehicles' engines' combustion chamber (the "Valve Stem Seal Defect" or the "Defect").  As a result of the Defect, the Class Vehicles consume an excessive amount of engine oil in between recommended oil change intervals.  Moreover, the Defect causes damage to the Class Vehicles' engines and other components, which are more likely to prematurely fail and need replacement due to the Defect.

18

73.     For instance, the defective valve stem seals in the Class Vehicles and the resulting engine oil burning in the vehicles' combustion chambers creates carbon deposits on the valves and piston crown and contaminates the spark plugs, causing the engines to lose power.  The Defect can also cause the engine valves to fail to seal, and in turn a lack of compression and a poor running engine.  In addition, the defective valve stem seals can cause excess exhaust gases in the crankcase, which result in damage to other vehicle systems.

74.     On November 10, 2020 – almost immediately after Mazda began selling the Class Vehicles – Mazda acknowledged that some of the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Steam Seal Defect. Specifically, on that date, Mazda updated its "High Engine Oil Consumption" "M-Tips" Bulletin to its dealerships, M-Tips No.: MT-005/20, to include, *inter alia,* 2021 CX-5, 2021 CX-9, and 2021 Mazda6 vehicles, and noted that "Some customers may complain about high engine oil consumption."

75.     Mazda's inclusion of certain 2021 Class Vehicles in the above M-tip Bulletin establishes that prior to November 2020 Mazda had already determined that the Class Vehicles consume excess engine oil via sources not available to the general public or Plaintiff such as pre-release testing and early vehicle owner complaints made shortly after Mazda began selling the Class Vehicles.

76.     Further, the M-tip Bulletin notes that it supersedes a previously-issued bulletin that was released in October 2019 which applies to certain earlier Mazda

19

models.  Thus, Mazda has been aware that its vehicles consume an excess amount of engine oil, and that owners have been complaining about the same, since at least 2019, well before it began selling the Class Vehicles.

77.     The above M-Tip Bulletin provides a process for Mazda dealerships to measure a vehicle's engine oil consumption.  Specifically, it directs Mazda dealers to measure a vehicle's engine oil consumption after driving 1,200 miles and states that "[n]o repair is necessary" where a vehicle consumes less than one liter (1.06 quarts) of engine oil within 1,200 miles.

78.     However, Mazda's Owner's Manual and Warranty advise the recommended oil service interval for Class Vehicles is the earlier of 10,000 miles or one year.  Thus, according to Mazda, a vehicle needs to consume more than 8 quarts of engine oil in between recommended oil change intervals in order to necessitate a repair for excess oil consumption, and a vehicle that consumes, for instance, 7 quarts of engine oil in between oil changes is purportedly normal and within specifications. To the contrary, there is nothing normal or expected about this rate of oil consumption, as vehicles that consume less than 8 quarts of engine oil between recommended oil change intervals still suffer from Valve Stem Seal Defect and should be entitled to a repair, and upon information and belief the bulletin was designed by Mazda to minimize warranty repairs and associated costs to Mazda.

79.     Moreover, when Plaintiffs presented their vehicles to Mazda dealerships and complained about their vehicles' engine oil consumption, the Mazda dealerships

did not offer to perform an oil consumption test.

80.    On October 4, 2021, Mazda issued Technical Service Bulletin No. 01-012/21, applicable to 2021 Mazda CX-30, CX-5, CX-9, Mazda3 and Mazda6 vehicles that were "produced before September 14, 2021," i.e., the Class Vehicles.  The bulletin notes that "Some vehicles may have a 'LOW ENGINE OIL LEVEL' warning message and a CHECK ENGINE light illuminated in the instrument cluster, along with DTC P250F:00 stored in memory. . . . Upon inspecting the engine oil level, the level is found to be low and there doesn't appear to be any trace of oil leakage in the engine compartment.  This concern usually occurs when the mileage reaches approximately 3,100 – 4,700 miles (5,000 - 7,500km) and may also occur again after replacing or topping off the engine oil."

81.    The October 4, 2021 bulletin further states that "[t]he root cause of this concern has not been identified yet, therefore a repair procedure will be announced at a later date."  However, at the same time, the bulletin acknowledges that "[s]ince this issue has been reported after a valve stem seal modification, *it is very likely that valve stem seal damage is causing oil to leak into the combustion chamber*." (emphasis supplied). Thus, prior to the release of this bulletin in October 2021 Mazda had already determined that Class Vehicles' oil consumption was linked to the Class Vehicles' valve stem seals contained within their identical engines.

82.    Mazda's above bulletin recognizes that all Class Vehicles share the same common Valve Stem Seal Defect, the bulletin applies to all Class Vehicles, and

21

Mazda treats all Class Vehicles identically with respect to their engine oil consumption issues.

83.     Further, through the bulletin Mazda acknowledges that since it began selling the Class Vehicles owners have been reporting that their vehicles consume excess engine oil consumption. Upon information and belief, by late 2020 or early 2021 Mazda had already received enough oil consumption complaints from Class Vehicle owners such that Mazda identified the issue as an emerging trend, identified the issue as one of the most common Class Vehicle owner complaints, and determined that owners were complaining about the issue to such a degree that it needed to begin the months-long process of preparing and ultimately releasing a technical service bulletin to its dealers.

84.     Regarding a repair procedure, the bulletin directs dealers that they should first "verify that the oil level is low" and if so, "verify that there is no oil leakage in the engine compartment." "If no oil leakage is found," the bulletin advises that dealer should "top off the engine oil to the FULL level as a temporary measure."

85.     The bulletin also directs dealers to minimize the severity of the Valve Stem Seal Defect to Class Vehicle owners by telling dealers to "[e]xplain the following to the customer: A small amount of the engine oil may be leaking into the combustion chamber, causing the oil consumption. Mazda has confirmed this oil leakage into the combustion chamber will not cause any immediate engine damage and the vehicle may be safely driven. The warning message and CHECK ENGINE

22

light will go off by topping off the engine oil level. This is only a temporary repair and as soon as Mazda identifies the root cause, a complete repair procedure will be announced. Mazda will top off or replace the engine oil at no charge until the complete repair is provided." Notably, Mazda does not claim that engine oil leaking into the combustion chamber will not cause long term engine damage, but only that it purportedly "will not cause any immediate damage."

86.    On November 24, 2021, Mazda issued a revised version of Bulletin No. 01-012/21.  The bulletin was largely identical; however, it directs Mazda dealers that if the dealer inspects a vehicle and determines there is no oil leakage, the dealer should either "top off the engine oil to the FULL level as a temporary measure or replace the engine oil if service is due within 1000 miles or 30 days."  The bulletin continues to state that "[t]he root cause of this concern has not been identified yet, therefore a repair procedure will be announced at a later date." To date, however, Mazda has not provided its dealers with an adequate repair procedure regarding the Valve Stem Seal Defect.

87.    Indeed, as of July 2022 Mazda has still not provided its dealerships with any technical service bulletins directing them to perform any actual repairs on Class Vehicles in response to complaints of engine oil consumption.  Instead, its only instruction to dealers is to 'top off' engine oil, which merely addresses a symptom of the Valve Stem Seal Defect, not the actual cause.  In the meantime, the unrepaired Valve Stem Seal continues to cause damage to the Class Vehicles, including a buildup

23

of carbon deposits on the valves and piston crown and contamination of the spark plugs which can cause the engines to lose power; an increased risk of the engine valves failing to seal, resulting in a lack of compression and a poor running engine; and excess exhaust gasses in the crankcase resulting in damage to other vehicle systems.

88.    Other Class Vehicle owners, in addition to Plaintiffs, complain that they have not been provided with any repair attempts regarding the actual underlying cause of their vehicles' excess engine oil consumption, are told by dealers that Mazda does not yet have a "fix" for the issue, and are often falsely assured by dealers that the Class Vehicles' excess engine oil consumption is purportedly "normal." *See, e.g.*:

- NHTSA Complaint No. 11444769, December 22, 2021 (2021 Mazda CX-5): "Bought the car brand new in May 2021, did a first oil change at around 4K miles due to the fact the car uses conventional 5w-30 oil and not synthetic oil. At around 7k miles the low oil engine light came on. Checked the dipstick and it was low. Added a quart of oil to hold me over until the next available appointment. Dealer could not find any leaks, they completed a oil change again. I went in again at 11K for another oil change. Had no problems. A few days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. Both times I got a notification from Mazda connect services alerting me of these problems. (Please see attached) **I brought the car in on 12/22/21 and was told the car was low on oil and nothing else could be done until Mazda comes up with a solution."**

- NHTSA Complaint No. 11451279, February 9, 2022 (2021 Mazda CX-30): "At about 3,605 miles, I received a low engine oil warning. The car is only 4 months old. **When i took the car to the dealer, apparently there is a TSB that was issued in October 2021 about the problem. I bought the car in November was not advised of this issue. At this time, it appears at this**

24

FIRST AMENDED CLASS ACTION COMPLAINT

**time Mazda is unable to determine the root cause**. It appears that I am to take the vehicle to the dealer every time I have this experience. I am worried about the potential impact and the lifespan of the engine."

- NHTSA Complaint No. 11466068, May 25, 2022 (2021 Mazda CX-30): "I have the 2.5 liter turbocharged engine in my CX-30. It currently has approximately 18,000 miles after a little over a year of ownership. So far I have had to put in 3 quarts of oil in that time. The engine/low oil indicator comes on about every 4,000 miles. When I check the oil, it shows that it is down a quart. **I have taken it in for regular service (oil and filter, tire rotation) twice now, and have brought this to the attention of the service advisor who tells me that this is normal for turbo engines.** I disagree with this assessment. I will bring it up again later this week when it goes in for its third service. No new car should consume oil at the rate this one does. I have also observed blue smoke from the exhaust on start-up. I owned another turbo Mazda model a few years ago that did not do this. I have found what appears to be a technical service bulletin from Mazda regarding all turbocharged 2021 models built prior to September 2021. (TSB-01-012-21) **My greatest concern is that this will only become worse and end up causing major damage to the engine and/or make the car unsafe to drive.**"

- NHTSA Complaint No. 11467864, June 6, 2022 (2021 Mazda CX-5): "Low engine oil level light & status is coming on for our 2021 Mazda CX-5 turbo. It has 9115 miles and still 1300 miles away from needing oil change. **I called our dealership today & was informed we were the 2nd to call today with message. They provided no further info**. I have since found there are technical bulletins regarding this issue. Recalls need to be made & Mazda should be covering all repair costs for this."

- NHTSA Complaint No. 11471263, June 27, 2022 (2021 Mazda Mazda3): "Engine is consuming excessive oil. **Dealership states there is a TSB out but the fix is to keep topping the oil off.** I would like an investigation to determine the root cause of the oil consumption on a new engine."

- NHTSA Complaint No. 11472739, July 7, 2022 (2021 Mazda CX-30): "My car is burning a quart of oil every 1500 miles. **I have taken it to the dealer three times. They say that they know about the problem but don't have a fix.** I am afraid that the engine could seize up during driving, causing a accident."

FIRST AMENDED CLASS ACTION COMPLAINT

89.     However, as Consumer Reports has repeatedly noted when reporting on oil consumption issues in modern vehicles, engine oil consumption in newer vehicles like the consumption exhibited by Class Vehicles "isn't normal" and is "unacceptable."[3] Indeed, Consumer Reports "believes that people who drive modern cars shouldn't have to worry about running low on oil and having to routinely top it off between scheduled service visits."[4]

90.     Moreover, Class Vehicle owners complain that Mazda dealers overfill their vehicles with engine oil in order to address the Valve Stem Seal Defect:

- NHTSA Complaint No. 11472002, July 1, 2022 (2021 Mazda Mazda3): "My Mazda 3 2.5T has been burning oil in excess. The car has a total of 24,000 miles and has been serviced 3 times. I have had to add oil in between every service. The oil has been completely burned off by 4,000-5,000 miles. I have noticed that other people have been posting about the same issues online. **When talking to the dealership they state that they have noticed this issue with the 2.5T's but offer no fix and seem to overfill the engine oil to try and compensate."**

- On May 2, 2022, Class Vehicle owner complained "All the dealer will do is over fill the oil and hope for the best. I go from way over the top hole to right at the bottom hole at 4K mile."[5]

91.     Further, while Mazda issued the above-referenced technical service bulletins to its dealers, those bulletins are provided to and intended for Mazda dealerships, not the public; the bulletins are not readily accessible to the public.

---

[3] *See* https://www.consumerreports.org/cro/magazine/2015/06/excessive-oil-consumption/index.htm (last visited July 14, 2022).

[4] *See* https://www.consumerreports.org/car-maintenance/some-newer-cars-can-burn-lots-of-oil-a1065338868/ (last visited July 14, 2022).

[5] https://mazdas247.com/forum/t/2021-cx-9-burning-oil.123876289/page-7 (last visited July 13, 2022)

FIRST AMENDED CLASS ACTION COMPLAINT

92.    Mazda had and has a duty to fully disclose the true nature of the Valve Stem Seal Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Mazda had and has exclusive knowledge or access to material facts about the Class Vehicles' defective valve stem seals that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members; and because Mazda has actively concealed the Valve Stem Seal Defect from its customers.  Because the Class Vehicles are defective, Mazda should repair or replace each of the Class Vehicles' valve stem seals free of charge.

**Mazda's Knowledge of the Defect**

93.    Before Mazda sold Plaintiffs their Class Vehicle, Mazda was on notice that the Class Vehicles suffered from the Valve Stem Seal Defect; however, Mazda failed to disclose the existence of the defect to Plaintiffs or any other Class Vehicle owner.

94.    Indeed, Mazda issued the above-discussed M-Tips No.: MT-005/20 on November 10, 2020 – before Plaintiffs purchased their vehicles – acknowledging that the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Steam Seal Defect.  Given the time it takes Mazda to gather relevant data, prepare the bulletin and release it to its dealers, Mazda was thus aware of the Valve Stem Seal Defect months before it issued the bulletin if not earlier.  The same is true of Mazda's subsequent October 4, 2021, Technical Service Bulletin No. 01-012/21,

27

which was released before Plaintiffs Hinton and Zelaya purchased their vehicles.
Here too, given the time it takes Mazda to prepare and release the bulletin, the bulletin
establishes that Mazda was aware of the Valve Stem Seal Defect well before October
2021 and before the Plaintiffs purchased their vehicles.

95.     Further, Mazda also became aware of the Valve Stem Seal Defect
through sources not available to Plaintiffs and Class Members, including, but not
limited to, pre-production testing, pre-production design failure mode and analysis
data, production design failure mode and analysis data, early consumer complaints
made exclusively to Mazda's network of dealers and directly to Mazda, aggregate
warranty data compiled from Mazda's network of dealers, testing conducted by
Mazda in response to consumer complaints, and repair order and parts data received
by Mazda from Mazda's network of dealers.

96.     On information and belief, during the pre-release process of designing,
manufacturing, engineering, and performing durability testing on the Class Vehicles,
including the Class Vehicles' common Skyactiv-G 2.5T engine, which would have
likely occurred between 2019 and early 2020, before Mazda began selling the Class
Vehicles in the fall of 2020, Mazda necessarily would have gained comprehensive and
exclusive knowledge about the Class Vehicles' Skyactiv-G 2.5T engines and
specifically the valve stem seals: the types and properties of materials used to make
them, including their durability and whether those materials would weaken over time
regardless of wear and use; the basic engineering principles behind their construction;

28

and the cumulative and specific impacts on the valve stem seals and related engine

components caused by wear and use, the passage of time, and environmental factors.

97.     An adequate pre-release analysis of the design, engineering, and

manufacture of the Class Vehicles would have revealed to Mazda that the valve stem

seals were defective and allow engine oil to escape into the Class Vehicles' engines'

combustion chambers.  Thus, during the pre-release analysis stage of the Class

Vehicles, Mazda would have known that the Class Vehicles were defective and would

pose a safety risk to owners/lessees and the motoring public.  Despite that such testing

on the Class Vehicles revealed the Valve Stem Seal Defect to Mazda, Mazda failed to

remedy the damages vehicles into production and selling them to the public.

98.     Mazda also knew about the Valve Stem Seal Defect because numerous

consumer complaints regarding excess engine oil consumption were made directly to

Mazda.  The Valve Stem Seal Defect and the Class Vehicle's engine oil consumption

occurs almost immediately after owners begin driving their vehicles and thus Class

Vehicle owners began lodging complaints to Mazda and its authorized dealerships

shortly after Mazda began selling the Class Vehicles in the fall of 2020.  The large

number of complaints, and the consistency of their descriptions of the symptoms of

the Defect, alerted Mazda to this serious Valve Stem Seal Defect affecting the Class

Vehicles.  The full universe of complaints made directly to Mazda about the Valve

Stem Seal Defect is information presently in the exclusive custody and control of

Mazda and is not yet available to Plaintiffs prior to discovery.  However, upon

29

information and belief, many Class Vehicle owners complained directly to Mazda and Mazda dealerships and service centers about their Vehicles' excessive engine oil consumption.

99.    Further, Mazda provides "Mazda Connected Services" and a MyMazda mobile application to Class Vehicles owners that, *inter alia,* notifies Class Vehicles owners when their vehicles need servicing.[6]  For instance, Plaintiff Guthrie's MyMazda mobile application alerted him that his engine oil level was low on June 21, 2022:

---

[6] https://www.mazdausa.com/siteassets/pdf/owners-optimized/optimized-connected-vehicle/enroll-in-mazda-connected-services.pdf (last visited July 13, 2022)

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

**10:56**

Low Engine Oil Level

04:31PM 06/21/2022

**2021 CX-30 2.5 T PP AWD**
3MVDMBEY3MM260992

Date            06/21/2022

Time            04:31 PM

Details

Low oil level.
Refer to the owner's manual for information on how to add
engine oil or schedule an appointment at your local dealership.

CHECK HEALTH REPORT

CALL DEALER

20    100.    Other Class Vehicles owners have likewise reported that Mazda

21    Connected Services have alerted them when their vehicles' low engine oil light

22

23    indicator is illuminated. *See, e.g.*:

24    • NHTSA Complaint No. 11444769, December 22, 2021 (2021 Mazda CX-5):

25        "Bought the car brand new in May 2021, did a first oil change at around 4K
          miles due to the fact the car uses conventional 5w-30 oil and not synthetic

26        oil. At around 7k miles the low oil engine light came on. Checked the dipstick
          and it was low. Added a quart of oil to hold me over until the next available

27        appointment. Dealer could not find any leaks, they completed a oil change
          again. I went in again at 11K for another oil change. Had no problems. A few

28

31

days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. **Both times I got a notification from Mazda connect services alerting me of these problems**. (Please see attached) I brought the car in on 12/22/21 and was told the car was low on oil and nothing else could be done until Mazda comes up with a solution."

- NHTSA Complaint No. 11468396, June 9, 2022 (2021 Mazda CX-9): "I purchased this vehicle June 5 2021. The vehicle has approximately 9150 miles at this time. I changed the oil the first time at 3222 miles just because it was new and I wanted to have a starting point on oil changes. **The car has an app you load on your cell phone for messages. The first time I received a massage that the engine was low of oil was around 6700 miles. I checked it and it was low with at the add oil mark with 3500 miles driven. I received a second message from the app stating the oil was low. Again, I checked the oil and it was to the add oil level with 9014 miles or only been driven 2300 miles.** I have contacted Mazda and will take it to the dealership in a few days, but I am having to add and check the oil ever day or so. There seems to be an oil consumption issue with this engine."

101.    Thus, Mazda itself receives and possesses real-time data of all instances where the Class Vehicles' low engine oil warning lights appear.  The frequency and volume of such notifications alerted, or should have alerted, Mazda that the Class Vehicles consume excess engine oil as a result of the Valve Stem Seal Defect.

32

FIRST AMENDED CLASS ACTION COMPLAINT

**The NHTSA Complaints and Online Discussions of the Defect**

102.    Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Valve Stem Seal Defect.  Given how widespread the issue is and the fact that the Valve Stem Seal Defect often begins manifesting shortly after the purchase date, Class Vehicle owners have been complaining about the Valve Stem Seal Defect directly to Mazda since 2020 and have been posting such complaints online since 2021.

103.    Mazda regularly monitors online discussions of its vehicles, including the Class Vehicles, and thus upon information and belief Mazda had actual knowledge of the below complaints.  Further, the below complaints are merely representative of the complaints made to Mazda, do not reflect the entire universe of complaints, and Class Vehicle owners have complained directly to Mazda as well as its dealerships before the first online complaint cited below.

104.    For instance, on July 12, 2021, a 2021 Mazda3 owner wrote on a Mazda-enthusiast website, "I'm a few hundred kilometres from my very first oil change being due and received a Low Engine Oil warning in the dashboard on my 2.5T. Checked the dipstick a few times, oil was just barely past the minimum mark dot (not below the min dot). Dealer changed the oil and pulled & cleared the stored DTC P250 error. Oil up back up to the max dot. No leaks or other issues found. They said to keep an eye

FIRST AMENDED CLASS ACTION COMPLAINT

out on it and let them know if the error returns."[7]  In response, other vehicle owners reported experiencing similar oil consumption issues with their Class Vehicles and reporting the same to Mazda dealers.  *See id.*

105.   On September 27, 2021 a 2021 CX-9 vehicle owner complained on a Mazda-enthusiast website that "the low oil warning light came on" in between oil change intervals.[8]  The same owner noted that on October 2, 2021, that they had brought their vehicle to the dealership regarding their vehicle's oil consumption, and the dealer told the owner that it was purportedly "normal for a turbocharged car to consume 'a lot' of oil especially my engine was still new."[9]  Over the following months many other Class Vehicle owners reported experiencing the Valve Stem Seal Defect.

106.   On October 5, 2021, a 2021 CX-5 owner complained on a Mazda-enthusiast website, "I have a 2021 CX-5 bought in Nov. 2020, right now it has a little over 4500 miles on it.  Not long ago after driving for about an hour, I noticed my engine oil warning light came on and the app said I have low engine oil."[10]  In response, on October 13, 2021, another 2021 CX-5 owner complained that they "have

---

[7] https://www.mazda3revolution.com/threads/dtc-p250-error-code-low-engine-oil.243613/ (last visited April 8, 2022).

[8] https://mazdas247.com/forum/t/2021-cx-9-burning-oil.123876289/ (last visited April 8, 2022).

[9] https://mazdas247.com/forum/t/2021-cx-9-burning-oil.123876289/page-2 (last visited April 8, 2022).

[10] https://mazdas247.com/forum/t/low-engine-oil-warning-light-on-new-cx-5.123876329/ (last visited April 8, 2022).

34

the same issue, oil light came on right before my first oil change and then again 2 more time after that, now I am at almost 11,000 and when I went to the dealership, they opened a hot ticket with Mazda and did you know what their answer was: WE CAN'T FIX IT, you will have to drive to the dealership an top off oil every time you get that."[11] Over the following months many other Class Vehicle owners reported experiencing the Valve Stem Seal Defect.[12]

107.    Likewise, in or around October 2021, Class Vehicle owners complained on Reddit that they were experiencing the Valve Stem Seal Defect and had complained to Mazda dealers but were told there is nothing Mazda can do other than top off the vehicles with additional engine oil.[13]  One such owner complained, "I've got a 2021 Turbo with about 12,000 miles and just had the same issue.  Called the service desk and they said just top it off, it's a known issue but nothing they could do about it.  Thought it was strange as we've owned several turbo or supercharged cars that were driven much harder than an SUV w/o any issues."[14]

108.    Moreover, Class Vehicles owners have been complaining about Valve

---

[11] *See id.*

[12] *See e.g.,* https://mazdas247.com/forum/t/mazda-cx-5-and-other-models-oil-consumption-tsb-wtf.123876828/ (Mazda CX-5 owner complained, "Looks like I just started having this issue on my 21 CE AWD Turbo as soon as I hit 5k miles. The low oil light came on. More alarming is that I did my first oil change at 3,500 miles myself and put in 5.0 quarts so within 1,500 miles it consumed enough to trigger the light and when I checked the dipstick, oil is below the 2 dots about halfway.").

[13] https://www.reddit.com/r/CX5/comments/qczybb/any_one_else_with_the_25_turbo_having_oil/?utm_medium=android_app&utm_source=share (last visited April 8, 2022).
[14] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Stem Seal Defect to NHTSA.  The below example complaints, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Mazda actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous, that Class Vehicles owners have been regularly complaining about the Valve Stem Seal Defect since Mazda began selling the Class Vehicles (indeed the complaints note that some owners had previously complained to Mazda dealers about the issue prior to lodging NHTSA complaints) and that Mazda has known about the defect at all relevant times:

- NHTSA Complaint No. 11441650, November 24, 2021 (2021 Mazda CX-5): "On Nov 4th my Mazda CX5 alerted me to low engine oil level by illuminating dashboard symbol and app notification. I attached a file containing an explanation of the issue, emails directed to Mazda corporation and Napelton Mazda in Naperville IL. I also attached screenshots of the in app notification and the Mazda TSB which I had to find on my own because Mazda coporate and both the selling/servicing dealer would not acknowledge the oil burning issue."

- NHTSA Complaint No. 11444769, December 22, 2021 (2021 Mazda CX-5): "Bought the car brand new in May 2021, did a first oil change at around 4K miles due to the fact the car uses conventional 5w-30 oil and not synthetic oil. At around 7k miles the low oil engine light came on. Checked the dipstick and it was low. Added a quart of oil to hold me over until the next available appointment. Dealer could not find any leaks, they completed a oil change again. I went in again at 11K for another oil change. Had no problems. A few days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. Both times I got a notification from Mazda connect services alerting me of these problems. (Please see attached) I brought the car in on 12/22/21 and was told the car was low on oil and nothing else could be done until Mazda comes up with a solution."

FIRST AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11444904, December 24, 2021 (2021 Mazda CX-30): "Low engine oil light displayed at 7,030 miles. No leaks detected. Engine consuming oil burning in combustion chamber. Possible engine damage or failure if oil was not quickly refilled."

- NHTSA Complaint No. 11451279, February 9, 2022 (2021 Mazda CX-30): "At about 3,605 miles, I received a low engine oil warning. The car is only 4 months old. When i took the car to the dealer, apparently there is a TSB that was issued in October 2021 about the problem. I bought the car in November was not advised of this issue. At this time, it appears at this time Mazda is unable to determine the root cause. It appears that I am to take the vehicle to the dealer every time I have this experience. I am worried about the potential impact and the lifespan of the engine."

- NHTSA Complaint No. 11459502, April 4, 2022 (2021 Mazda CX-30): "The contact owns a 2021 Mazda CX-30. The contact stated that the low engine oil warning light was illuminated. The contact stated that the app used for alerting vehicle failure also notified the contact of the failure. The failure occurred twice. The dealer was contacted and informed her that it was a known issue however, there was no recall. The contact had not taken the vehicle to the dealer. The vehicle had not been diagnosed or repaired. The manufacturer was not made aware of the failure. The approximate failure mileage 3,100."

- NHTSA Complaint No. 11464803, May 16, 2022 (2021 Mazda CX-30): "Low engine oil after 4630 miles!"

- NHTSA Complaint No. 11466068, May 25, 2022 (2021 Mazda CX-30): "I have the 2.5 liter turbocharged engine in my CX-30. It currently has approximately 18,000 miles after a little over a year of ownership. So far I have had to put in 3 quarts of oil in that time. The engine/low oil indicator comes on about every 4,000 miles. When I check the oil, it shows that it is down a quart. I have taken it in for regular service (oil and filter, tire rotation) twice now, and have brought this to the attention of the service advisor who tells me that this is normal for turbo engines. I disagree with this assessment. I will bring it up again later this week when it goes in for its third service. No new car should consume oil at the rate this one does. I have also observed blue smoke from the exhaust on start-up. I owned another turbo Mazda model a few years ago that did not do this. I have found what appears to be a technical service bulletin from Mazda regarding all turbocharged 2021

FIRST AMENDED CLASS ACTION COMPLAINT

models built prior to September 2021. (TSB-01-012-21) My greatest concern is that this will only become worse and end up causing major damage to the engine and/or make the car unsafe to drive."

- NHTSA Complaint No. 11466576, May 29, 2022 (2021 Mazda Mazda3): "Low engine oil warning between oil changes. Burned 3+ quarts between 5000 mile and 10,000 mile service."

- NHTSA Complaint No. 11467570, June 4, 2022 (2021 Mazda CX-30): "Low engine oil pressure light came on forcing me to stop driving the vehicle. Upon investigation, engine oil level was a full quart low of oil, despite no leaks and only having 8000 miles."

- NHTSA Complaint No. 11467878, June 6, 2022 (2021 Mazda CX-5): "Car is burning oil. The low oil level light has come on twice, requiring additional oil be poured into the engine between oil changes. Appears the car is burning oil."

- NHTSA Complaint No. 11467864, June 6, 2022 (2021 Mazda CX-5): "Low engine oil level light & status is coming on for our 2021 Mazda CX-5 turbo. It has 9115 miles and still 1300 miles away from needing oil change. I called our dealership today & was informed we were the 2nd to call today with message. They provided no further info. I have since found there are technical bulletins regarding this issue. Recalls need to be made & Mazda should be covering all repair costs for this."

- NHTSA Complaint No. 11468396, June 9, 2022 (2021 Mazda CX-9): "I purchased this vehicle June 5 2021. The vehicle has approximately 9150 miles at this time. I changed the oil the first time at 3222 miles just because it was new and I wanted to have a starting point on oil changes. The car has an app you load on your cell phone for messages. The first time I received a massage that the engine was low of oil was around 6700 miles. I checked it and it was low with at the add oil mark with 3500 miles driven. I received a second message from the app stating the oil was low. Again, I checked the oil and it was to the add oil level with 9014 miles or only been driven 2300 miles. I have contacted Mazda and will take it to the dealership in a few days, but I am having to add and check the oil ever day or so. There seems to be an oil consumption issue with this engine."

38

- NHTSA Complaint No. 11468850, June 12, 2022 (2021 Mazda CX-30): "Randomly accelerated on its own; burns oil- low oil levels twice in 6 months; randomly says cruise control is available under 25 mph when car is traveling at highway speeds; the unlock and lock functions randomly fail; lift gate randomly opens; alarm system randomly goes off; TERRIBLE fuel economy (18-21 mpg)"

- NHTSA Complaint No. 11469501, June 15, 2022 (2021 Mazda CX-30): "Low engine oil light came on at 8990 miles. Bought vehicle brand new. Has occurred before with this same vehicle. Excessive oil consumption is a known issue with this make/model"

- NHTSA Complaint No. 11469500, June 15, 2022 (2021 Mazda CX-30): "Low engine oil light came on at 4600 miles. Brand new vehicle. Excessive consumption of oil known issue with this make/model"

- NHTSA Complaint No. 11469536, June 16, 2022 (2021 Mazda6): "The issue I am experiencing is one that many are in regards to the oil consumption. My check oil light came on prematurely in regards to the recommended scheduling for these sorts of vehicles, at around 3500 miles approximately. This is a vehicle that experienced this issue under 10k miles."

- NHTSA Complaint No. 11469667, June 16, 2022: "Every 4,000 miles my engine oil warming light comes. When the dealership checked my oil level, it was about a quart low."

- NHTSA Complaint No. 11470053, June 20, 2022 (2021 Mazda CX-30): "Driving home from work today I got a "low engine oil level" alert/warning. First time this has happened. I have approx. 15,500 miles on my vehicle and it was serviced on 3/22/22 (11,828 miles). That service included a full oil and filter change. I see it has been noted that there is an oil leak with this particular vehicle but Mazda has not been able to figure out what is causing it. Just wanted it to be reported"

- NHTSA Complaint No. 11471263, June 27, 2022 (2021 Mazda Mazda3): "Engine is consuming excessive oil. Dealership states there is a TSB out but the fix is to keep topping the oil off. I would like an investigation to determine the root cause of the oil consumption on a new engine."

39

- NHTSA Complaint No. 11471507, June 29, 2022 (2021 Mazda Mazda3): "Excess oil consumption in engine. Low light came on around 5,000 miles and dipstick showed engine oil was at the minimum mark."

- NHTSA Complaint No. 11472002, July 1, 2022 (2021 Mazda Mazda3): "My Mazda 3 2.5T has been burning oil in excess. The car has a total of 24,000 miles and has been serviced 3 times. I have had to add oil in between every service. The oil has been completely burned off by 4,000-5,000 miles. I have noticed that other people have been posting about the same issues online. When talking to the dealership they state that they have noticed this issue with the 2.5T's but offer no fix and seem to overfill the engine oil to try and compensate."

- 

- NHTSA Complaint No. 11472485, July 6, 2022 (2021 Mazda Mazda6): "Low engine oil light came on at around 13,700. Last oil change was at 10,000 miles. Checked oil dipstick, oil level slightly below first marker hole."

- 

- NHTSA Complaint No. 11472739, July 7, 2022 (2021 Mazda CX-30): "My car is burning a quart of oil every 1500 miles. I have taken it to the dealer three times. They say that they know about the problem but don't have a fix. I am afraid that the engine could seize up during driving, causing a accident."

- NHTSA Complaint No. 11472913, July 8, 2022 (2021 Mazda CX-5): "On July 4th when car had only 10,300 miles driven on it, oil light came on. Oil level was down over 1.5 quarts. Car was not due for an oil change for another 1800 miles."

- NHTSA Complaint No. 11473433, July 11, 2022 (2021 Mazda CX-5): "July 6, 2021 Low oil light came on and I stopped to check oil and it was down 1quart. Then added oil. Miles on car 28,734. I always have oil changed every 5k miles and this was between oil changes. Happened 3200 miles into my next oil change. Mazda has a TSB out in reference to these engines and the TSB is TSB NO 01-012/21 Dated October 4, 2021. It states that Mazda is aware of the problem and as soon as they identify the root cause a complete repair will be made. I will be bringing vehicle into dealer for an oil comsumption test in the next 1500 miles when my oil change is due. The dealer does know there problems with these engines stated in the TSB. My safety and all others are good. On the Mazda Forum there are many complaints and I mean many complaints on this exact same issue I'm experiencing with this vehicle. People are extremely frustrated and getting

FIRST AMENDED CLASS ACTION COMPLAINT

excuses that this is just normal for these engines to use a quart of oil every 3 or 4 k miles. I don't agree and this is not normal."

109.    Although Mazda was aware of the widespread nature of the Valve Stem Seal Defect in the Class Vehicles, and that it posed grave safety risks, Mazda has failed to take adequate steps to notify all Class Vehicles owners of the Defect and provide relief.

110.    Customers have reported the Valve Stem Seal Defect in the Class Vehicles to Mazda directly and through its dealers.  Defendant is fully aware of the Valve Stem Seal Defect contained in the Class Vehicles.  Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendant:

a.  failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Valve Stem Seal Defect;

b.  failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their valve stem seals were not in good working order, were defective, and were not fit for their intended purpose; and

c.  failed to disclose and/or actively concealed the fact that the Class Vehicles and valve stem seals were defective, despite the fact that Defendant learned of the Valve Stem Seal Defect by at least early 2020.

41

111.    Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Valve Stem Seal Defect contained in the Class Vehicles.

112.    Defendant has not recalled the Class Vehicles to repair the Valve Stem Seal Defect, has not offered to its customers a suitable repair or replacement of parts related to the Valve Stem Seal Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Valve Stem Seal Defect.

113.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

114.    As a result of the Valve Stem Seal Defect, the value of the Class Vehicles has diminished, including, without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that their vehicles will not contain serious defects with the vehicles' engines and that they will not need to add additional engine oil to their vehicles in between recommended oil change intervals in order to avoid engine failure.  Plaintiffs and Class Members further expect and assume that Mazda will not sell or lease vehicles with known safety defects, such as the Valve Stem Seal Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that Mazda would fail to disclose the Valve Stem Seal Defect to them, and then fail to repair the

42

Defect within a reasonable period of time under Mazda's warranty.

## CLASS ACTION ALLEGATIONS

### A. The Classes

115. Plaintiffs bring this action on behalf of themselves and the following classes:

> **Nationwide Class:** All persons or entities in the United States who are current or former owners and/or lessees of a 2021 Mazda CX-30, CX-5, CX-9, Mazda3, or Mazda6 vehicle.

> **Florida Sub-Class:** All persons or entities who purchased or leased any 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicle in the State of Florida (the "Florida Class")

> **Washington Sub-Class:** All persons or entities who purchased or leased any 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicle in the State of Washington (the "Washington Class")

> **Tennessee Sub-Class:** All persons or entities who purchased or leased any 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicle in the State of Washington (the "Washington Class")

116. Defendant and its employees or agents are excluded from the Classes.

### B. Numerosity

117. Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout Washington.

43

### C. **Common Questions of Law and Fact**

118.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Valve Stem Seal Defect;

b.    whether the Valve Stem Seal Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Valve Stem Seal Defect and, if so, how long Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' valve stem seals constitutes a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles, including their defective valve stem seals and the vehicles' resulting excess consumption of engine oil, to Plaintiffs and the other Class Members;

f.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.    whether Defendant knew or reasonably should have known of the Valve Stem Seal Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

44

FIRST AMENDED CLASS ACTION COMPLAINT

h.    Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and whether Defendant violated the Washington Consumer Protection Act, RCW 19.86, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.,* the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, *et seq.*, and the Magnuson-Moss Warranty Act, as alleged in this Complaint.

**D.  Typicality**

119.  The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs each purchased or leased a defective Class Vehicle, as did each member of the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of himself and all absent Class members.

**E.  Protecting the Interests of the Class Members**

120.  Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their  counsel has any interest which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

121.  A class action is the superior method for the fair and efficient

45

adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

122. Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

FIRST AMENDED CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION
### Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

**(Plaintiffs on behalf of the Nationwide Class or in the alternative the Florida, Tennessee, and Washington Sub-Classes)**

123.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

124.    Plaintiffs and members of the Classes are each a "consumer" as defined in 15 U.S.C. § 2301(3).

125.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

126.    The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

127.    15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiffs and Class members.

128.    The Defendant's sale of the defective Class Vehicles and its failure and/or refusal to repair the Class Vehicles' Valve Stem Seal Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

47

129.   Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

130.   As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damaged.

**SECOND CAUSE OF ACTION**
**Fraudulent Concealment**

**(Plaintiffs on behalf of the Nationwide Class or in the alternative the Florida, Tennessee, and Washington Sub-Classes)**

131.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

132.   By failing to disclose and concealing the defective nature of the Class Vehicles' valve stem seals and the resulting excess engine oil consumption from Plaintiffs and Class Members, Mazda concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

133.   Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

134.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles, including the defective engines

48

and valve stem seals, and/or the associated repair costs because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' engines;

    b.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that vehicles' engines have a dangerous safety defect until after they purchased the Class Vehicles; and

    c.    Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

135.    On information and belief, Mazda still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Valve Stem Seal Defect and the performance and quality of Class Vehicles.

136.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

137.    Plaintiffs and the Class relied on Defendant to disclose material information it knew, such as the existence of the Valve Stem Seal Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

138.    By failing to disclose the Valve Stem Seal Defect, Defendant knowingly

49

and intentionally concealed material facts and breached its duty not to do so.

139.    The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

140.    Had Plaintiffs and other Class Members known that the Class Vehicles' engines and valve stem seals were defective, they would not have purchased the Class Vehicles or would have paid less for them.

141.    Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, consume an excessive amount of engine oil in between oil changes, or suffer from premature engine damage and failures.  That is the reasonable and objective consumer expectation for vehicles.

142.    As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

143.    Accordingly, Mazda is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

144.    Mazda's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the

50

Class's rights and well-being, to enrich Mazda.  Mazda's conduct warrants an

assessment of punitive damages in an amount sufficient to deter such conduct in the

future, which amount is to be determined according to proof.

145.    Furthermore, as the intended and expected result of its fraud and

conscious wrongdoing, Mazda has profited and benefited from Plaintiffs' and Class

Members' purchase of Class Vehicles containing the Valve Stem Seal Defect.  Mazda

has voluntarily accepted and retained these profits and benefits with full knowledge

and awareness that, as a result of Mazda's misconduct alleged herein, Plaintiffs and

Class Members were not receiving vehicles of the quality, nature, fitness, or value that

had been represented by Mazda, and that a reasonable consumer would expect.

146.    Mazda has been unjustly enriched by its fraudulent, deceptive, and

otherwise unlawful conduct in connection with the sale and lease of Class Vehicles

and by withholding benefits from Plaintiffs and Class Members at the expense of

these parties.  Equity and good conscience militate against permitting Mazda to retain

these profits and benefits, and Mazda should be required to make restitution of its ill-

gotten gains resulting from the conduct alleged herein.

### THIRD CAUSE OF ACTION
### Unjust Enrichment

**(Plaintiffs on behalf of the Nationwide Class or in the alternative the Florida, Tennessee, and Washington Sub-Classes)**

147.    Plaintiffs incorporate by reference all allegations contained in this

Complaint as though fully stated herein.

51

148.   Mazda has long known that about the Valve Stem Seal Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

149.   As a result of its fraudulent acts and omissions related to the Valve Stem Seal Defect, Mazda obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

150.   Mazda appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Valve Stem Seal Defect, paid a higher price for their vehicles which actually had lower values.  Mazda also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

151.   It would be inequitable and unjust for Mazda to retain these wrongfully obtained profits.

152.   Mazda's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

153.   As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

154.   Plaintiffs does not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

155.   Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also

52

seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with the misleading information; compelling Defendant to provide Class members with adequate repairs and/or replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## FOURTH CAUSE OF ACTION
### Violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.*

### (Plaintiff Guthrie on behalf of the Washington Sub-Class)

156.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

157.   The Washington Consumer Protection Act, RCW 19.86.020 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

158.   Plaintiff Guthrie, Defendant, and the Washington Class Members are each "persons" under RCW 19.86.010(1).

159.   At all relevant times, Defendant has engaged in "trade" and "commerce" under RCW 19.86.010(2) by advertising, offering for sale, selling, leasing, and/or

53

distributing vehicles in the state of Washington.

160.    The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Washington Consumer Protection Act.

161.    By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiff Guthrie and Washington Class Members, Defendant violated the Washington Consumer Protection Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

162.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, affect the public interest, and impose a serious safety risk on the public.

163.    Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

164.    Defendant was under a duty to Plaintiff Guthrie and the Washington Class Members to disclose the defective nature of the Class Vehicles' engines and valve stem seals, the symptoms of such defects and/or the associated repair costs

54

because:

    a.    Defendant was in a superior position to know the true state of facts about the safety Valve Stem Seal Defect contained in the Class Vehicles;

    b.    Plaintiff Guthrie and the Washington Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a dangerous safety defect until after they purchased the Class Vehicles; and,

    c.    Defendant knew that Plaintiff Guthrie and the Washington Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

165. The facts concealed or not disclosed by Defendant to Plaintiff Guthrie and Washington Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

166. Plaintiff Guthrie and the Washington Class relied on Defendant to disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

167. By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

168. Moreover, Defendant's intentional concealment of and failure to disclose the Valve Stem Seal Defect took advantage of Plaintiff Guthrie and Class Members'

lack of knowledge, ability, and experience to a grossly unfair degree.

169.   The facts concealed or not disclosed by Defendant to Plaintiff Guthrie and the other Washington Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

170.   Had Plaintiff Guthrie and other Washington Class Members known that the Class Vehicles suffer from the Valve Steam Seal Defect, they would not have purchased the Class Vehicles or would have paid less for them.

171.   Plaintiff Guthrie and the other Washington Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure.  That is the reasonable and objective consumer expectation for vehicles.

172.   As a result of Defendant's misconduct, Plaintiff Guthrie and the other Washington Class Members have been harmed and have suffered actual and economic injuries and damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

173.   Plaintiff Guthrie has provided adequate notice to Defendant.

174.   Plaintiff Guthrie and the Washington Class should be awarded three times the amount of their economic damages because Defendant intentionally

FIRST AMENDED CLASS ACTION COMPLAINT

concealed and failed to disclose the defective nature of the Class Vehicles

## FIFTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to RCW 62A.2-313

### (Plaintiff Guthrie on behalf of the Washington Sub-Class)

175.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

176.   In connection with the sale or lease of the Class Vehicles to Plaintiff Guthrie and Washington Class Members, Mazda provided Plaintiff Guthrie and Washington Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiff Guthrie and Washington Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

177.   Plaintiff Guthrie and Washington Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

178.   The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

179.   Plaintiff Guthrie and the Washington Class Members submitted their

Vehicles for warranty repairs as referenced herein and within the relevant warranty periods.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Valve Stem Seal Defect under the vehicle's warranty as described herein.

180.   Plaintiff Guthrie and Washington Class Members have given Defendant reasonable opportunities to cure the Valve Stem Seal Defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

181.   As a result of said nonconformities, Plaintiff Guthrie and Washington Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

182.   Plaintiff Guthrie and Washington Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Guthrie's and Washington Class Members' acceptance of the Class Vehicles.

183.   Plaintiff Guthrie and Washington Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Valve Stem Seal Defect.

184.   As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Guthrie and Washington Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their

58

vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

### SIXTH CAUSE OF ACTION
**Violation of Florida Deceptive and Unfair Trade Practices Act,
F.S.A. § 501.201, *et seq.***

**(Plaintiffs Crain and Zelaya on behalf of the Florida Class)**

185.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

186.   Plaintiffs Crain and Zelaya and Florida Class Members are each an "interested party or person" and "consumer" as defined by F.S.A. 501.203(6) and (7) respectively.

187.   At all relevant times, Defendant has engaged in "Trade" and "Commerce" as defined by F.S.A. 501.203(8) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Florida, directly or indirectly affecting Florida citizens though that trade and commerce.

188.   The allegations set forth herein constitute false, misleading, unlawful or deceptive trade practice under F.S.A. 501.201, et seq.

189.   By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiffs Crain and Zelaya and Florida Class Members, Defendant violated the Florida Deceptive and Unfair Trade Practices Act, as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality,

59

or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

190. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

191. Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

192. Defendant was under a duty to Plaintiffs Crain and Zelaya and the Florida Class Members to disclose the defective nature of the Class Vehicles' engines and valve stem seals, the symptoms of such defects and/or the associated repair costs because:

    a.    Defendant was in a superior position to know the true state of facts about the Valve Stem Seal Defect contained in the Class Vehicles;

    b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

    c.    Plaintiffs Crain and Zelaya and the Florida Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a dangerous safety defect until after they purchased the Class

60

Vehicles; and

d.      Defendant knew that Plaintiffs Crain and Zelaya and the Florida Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

193.   The facts concealed or not disclosed by Defendant to Plaintiffs Crain and Zelaya and Florida Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

194.   Plaintiffs Crain and Zelaya and the Florida Class relied on Defendant to disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles and not to induce them into a transaction into which they would not have entered had the Defendant disclosed this information.

195.   By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

196.   Moreover, Defendant's intentional concealment of and failure to disclose the Valve Stem Seal Defect took advantage of Plaintiffs Crain and Zelaya and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.

197.   The facts concealed or not disclosed by Defendant to Plaintiffs Crain and Zelaya and the other Florida Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

61

FIRST AMENDED CLASS ACTION COMPLAINT

198.   Had Plaintiffs Crain and Zelaya and other Florida Class Members known that the Class Vehicles suffer from the Valve Steam Seal Defect, they would not have purchased the Class Vehicles or would have paid less for them.

199.   Plaintiffs Crain and Zelaya and the other Florida Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure.  That is the reasonable and objective consumer expectation for vehicles.

200.   As a result of Defendant's misconduct, Plaintiffs Crain and Zelaya and Florida Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Valve Stem Seal Defect.

201.   Plaintiffs Crain and Zelaya have each provided adequate notice to Defendant.

202.   Plaintiffs Crain and Zelaya and the Florida Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

FIRST AMENDED CLASS ACTION COMPLAINT

**SEVENTH CAUSE OF ACTION**

**Breach of Express Warranty Pursuant to F.S.A. § 672.313**

**(Plaintiffs Crain and Zelaya on behalf of the Florida Class)**

203.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

204.    In connection with the sale or lease of the Class Vehicles to Plaintiffs Crain and Zelaya and Florida Class Members, Mazda provided Plaintiffs Crain and Zelaya and Florida Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiffs Crain and Zelaya and Florida Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

205.    Plaintiffs Crain and Zelaya and Florida Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

206.    The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

207.    Plaintiffs Crain and Zelaya and Florida Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with

63

the terms of the express written warranty provided to each class member by failing to repair the Valve Stem Seal Defect under the vehicle's warranty within a reasonable period of time as described herein.

208.   Plaintiffs Crain and Zelaya and Florida Class Members have given Defendant reasonable opportunities to cure the Valve Stem Seal Defect plaguing, but Defendant has been unable and/or has refused to do so within a reasonable period of time.

209.   As a result of said nonconformities, Plaintiffs Crain and Zelaya and Florida Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

210.   Plaintiffs Crain and Zelaya and Florida Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs Crain and Zelaya and Florida Class Members' acceptance of the Class Vehicles.

211.   As a result of Defendant's breach of express warranties, Plaintiffs Crain and Zelaya and Florida Class Vehicle owners have been damaged.

**EIGHTH CAUSE OF ACTION**
**Violation of the Tennessee Consumer Protection Act,**
**Tenn. Code § 47-18-101, *et seq.***

**(Plaintiff Hinton on behalf of the Tennessee Class)**

212.   Plaintiffs incorporate by reference all allegations contained in this

64

Complaint as though fully stated herein.

213.    Plaintiff Hinton and the Tennessee Class Members are each "consumers" under Tenn. Code § 47-18-103(3).

214.    Plaintiff Hinton, the Tennessee Class Members, and Defendant are each "persons" under Tenn. Code § 47-18-103(14).

215.    The Class Vehicles are each "goods" under Tenn. Code § 47-18-103(8) as they are "tangible chattels leased, bought, or otherwise obtained for use by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity."

216.    At all relevant times, Defendant has engaged in "trade," "commerce" and "consumer transactions" under Tenn. Code § 47-18-103(20) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Tennessee, directly or indirectly affecting Tennessee citizens through that trade and commerce.

217.    The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, et seq.

218.    By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiff Hinton and the Tennessee Class Members, Defendant violated the Tennessee Consumer Protection Act, because, inter alia, Defendant represented that the Class Vehicles had characteristics and benefits

65

that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

219.  Defendant's unfair and deceptive acts and practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

220.  Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

221.  Defendant was under a duty to Plaintiff Hinton and the Tennessee Class Members to disclose the Valve Stem Seal Defect because:

a.  Defendant was in a superior position to know the true state of facts about the Valve Stem Seal Defect contained in the Class Vehicles;

d.  Plaintiff Hinton and the Tennessee Class Members could not reasonably have been expected to learn or that their vehicles' engines have a dangerous safety defect until after they purchased the Class Vehicles; and,

b.  Defendant knew that Plaintiff Hinton and the Tennessee Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

222.  The facts concealed or not disclosed by Defendant to Plaintiff Hinton and

66

the Tennessee Class Members s are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

223.   Plaintiff Hinton and the Tennessee Class Members relied on Defendant to disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

224.   By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

225.   Moreover, Defendant's intentional concealment of and failure to disclose the Valve Stem Seal Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Hinton and the Tennessee Class Members, that conduct took advantage of Plaintiff Hinton and the Tennessee Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Hinton and the Tennessee Class Members.

226.   The facts concealed or not disclosed by Defendant to Plaintiff Hinton and the Tennessee Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

227.   Had Plaintiff Hinton and the Tennessee Class Members known that the

67

Class Vehicles would suffer from the Valve Stem Seal Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

228.    Plaintiff Hinton and the Tennessee Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure.  That is the reasonable and objective consumer expectation for vehicles.

229.    As a result of Defendant's misconduct, Plaintiff Hinton and the Tennessee Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

230.    Plaintiff Hinton has provided adequate notice to Defendant.

231.    Plaintiff Hinton and the Tennessee Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

## NINTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Tenn. Code § 47-2-313

### (Plaintiff Hinton on behalf of the Tennessee Class)

232.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

68

233.   In connection with the sale or lease of the Class Vehicles to Plaintiff Hinton and Tennessee Class Members, Mazda provided Plaintiff Hinton and Tennessee Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiff Hinton and Tennessee Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

234.   Plaintiff Hinton and Tennessee Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

235.   The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

236.   Plaintiff Hinton and Tennessee Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Valve Stem Seal Defect under the vehicle's warranty within a reasonable period of time as described herein.

237.   Plaintiff Hinton and Tennessee Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has

69

FIRST AMENDED CLASS ACTION COMPLAINT

refused to do so within a reasonable time.

238.   As a result of said nonconformities, Plaintiff Hinton and Tennessee Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

239.   Plaintiff Hinton and Tennessee Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Hinton and Tennessee Class Members' acceptance of the Class Vehicles.

240.   Plaintiff Hinton and Tennessee Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Valve Stem Seal Defect.

241.   As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Hinton and Tennessee Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

70

FIRST AMENDED CLASS ACTION COMPLAINT

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendant as follows:

a. An order certifying the proposed Classes, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the Classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f. Reasonable attorneys' fees and costs;

g. Pre-judgment and post-judgment interest, as provided by law;

FIRST AMENDED CLASS ACTION COMPLAINT

h.  Plaintiffs demand that Defendant perform a recall and repair all Class Vehicles; and

i.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  July 18, 2022

By:  _/s/  Trinette G. Kent_
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiffs*

72