TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com
E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, and Lester Woo, *on behalf of themselves and all others similarly situated,* | Case No.:  8:22-cv-01055-DOC-DFM |
| | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| | **DEMAND FOR JURY TRIAL** |
| vs. | |
| Mazda Motor of America, Inc., | |
| Defendant. | |

For this Second Amended Complaint, Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, and Lester Woo, by undersigned counsel, state as follows:

## **INTRODUCTION**

1. Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya Anna Gilinets, Marcy Knysz, and Lester Woo, bring this lawsuit on behalf of themselves and a proposed class of past and present owners and lessees of defective 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Mazda Motor of America, Inc. ("Defendant" or "Mazda").

2. Plaintiffs and the Classes were damaged because the Class Vehicles contain defective valve stem seals that allow engine oil to leak into the Class Vehicles' combustion chamber (the "Valve Stem Seal Defect"), which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals, places the Class Vehicles at an increased risk of engine failure, and causes to damage to the Class Vehicles' engines.

3. Mazda has long known about the Defect; however, it has refused or otherwise been unable to repair the Defect in the Class Vehicles under Mazda's warranty within a reasonable period of time. Indeed, in an October 4, 2021, bulletin, Mazda recognized that the Class Vehicles consume an excessive amount of engine oil

2

in between oil changes and that "it is very likely that valve stem seal damage is causing oil to leak into the combustion chamber." However, Mazda merely directed its dealerships to "top off" the engine oil in response to Class Vehicle owner complaints – which merely addresses a symptom of the Defect rather than the cause of the Defect – and admitted that it does not yet have a "complete repair" for the defect.

4. On October 3, 2022, one year after its prior bulletin and six months after this lawsuit was initiated, Mazda issued another bulletin to its dealerships confirming Mazda's long-standing knowledge of the Valve Stem Seal Defect. Indeed, the bulletin confirms that Class Vehicles' excessive oil consumption is "due to damage of the valve seals on the exhaust side" and belatedly directs dealers to "[r]eplace the valve seals of the exhaust side with improved ones . . . ."

5. However, this complicated and invasive repair attempt is inadequate too. First, Class Vehicle owners continue to report that no repair attempts are made on their Class Vehicles following the release of the bulletin. Second, those owners who have gotten the repair have already complained that it does not alleviate their vehicle's oil consumption and has resulted in additional issues with the vehicle, including Plaintiff Woo whose vehicle continues to consume excessive engine oil post-repair attmept and Plaintiff Hinton's vehicle which lost power on the highway and needed to be towed back to the dealer for further repair attempts. Third, for the last two years the unrepaired valve stem seals and the resulting engine oil burning in the vehicles' combustion chambers has caused damage to the Class Vehicles' engines and other

3

vehicle systems, but the newest repair attempt from Mazda does not eliminate or undo the damage that has already been done to the Class Vehicles due to the Valve Stem Seal Defect.  Fourth, Class Vehicles are still worth less money because of the existence of the Valve Stem Seal Defect at the time of sale regardless of whether the above repair attempt is performed.

6.     As set forth below, Mazda knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Despite being notified of the Valve Stem Seal Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Mazda enthusiast websites), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Valve Stem Seal Defect, has not offered its customers a suitable repair for the Valve Stem Seal Defect, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to the Valve Stem Seal Defect.

7.     Further, Mazda has concealed the Valve Stem Seal Defect that is contained in every Class Vehicle, along with the associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.  The Valve Stem Seal Defect is a material defect that substantially impairs the vehicle's use and value and Plaintiffs would not have purchased the Class Vehicles, or would have paid substantially less for them, had Mazda disclosed the Defect to Plaintiffs at the time of sale.  However, not only did Mazda not disclose the

4

Defect to Plaintiffs or putative class members at the time of sale, but thereafter Mazda has claimed that Class Vehicles' engine oil consumption is purportedly "normal" even though it is the result of a defect within the Class Vehicles' engine.

8.    As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

9.    Plaintiffs have each given Mazda a reasonable opportunity to cure the Valve Stem Seal Defect in their vehicles, but Mazda has been unable to repair the vehicles within a reasonable amount of time.

10.    Mazda's conduct is in violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.,* the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* and 720 ILCS 295/1A, the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, and constitutes fraudulent concealment, unjust enrichment, and a breach of express and implied warranties and the Magnuson-Moss Warranty Act.

11.    Mazda has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale, as their vehicles continue to suffer from the unremedied Valve Stem Seal Defect.

5

12.     To remedy Mazda's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Mazda, as well as notification to class members about the Defect.

## **PARTIES**

13.     Plaintiff Gary Guthrie ("Mr. Guthrie") is an adult individual residing in Spokane, Washington.

14.     Plaintiff Stephanie Crain ("Ms. Crain") is an adult individual residing in Chicago, Illinois.

15.     Plaintiff Chad Hinton ("Mr. Hinton") is an adult individual residing in Gallatin, Tennessee.

16.     Plaintiff Julio Zelaya ("Mr. Zelaya") is an adult individual residing in Doral, Florida.

17.     Plaintiff Anna Gilinets ("Ms. Gilinets") is an adult individual residing in Claremont, California.

18.     Plaintiff Marcy Knysz ("Ms. Knysz") is an adult individual residing in Buffalo Grove, Illinois.

19.     Plaintiff Lester Woo ("Mr. Woo") is an adult individual residing in Seattle, Washington.

20.     Defendant Mazda Motor of America, Inc. ("Mazda" or "Defendant") is a California corporation with a principal place of business at 200 Spectrum Center Drive, Irvine, Orange County, California 92618,

6

21.    At all times herein mentioned, Mazda designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicle operated by Plaintiffs.  Mazda also reviews and analyzes warranty data submitted by Mazda's dealerships and authorized technicians in order to identify defect trends in vehicles.  Under Mazda's written warranties Class Vehicle owners are required to bring their vehicles to authorized Mazda dealerships for warranty repairs, and Mazda specifically dictates what warranty repairs such dealerships perform and how such repairs are performed by Mazda dealers.  Upon information and belief, Mazda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decide to audit the dealership.  Mazda uses this information to determine whether particular repairs are covered by an applicable Mazda warranty or are indicative of a pervasive defect.

22.    Mazda also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Valve Stem Seal Defect.

SECOND AMENDED CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over Mazda, and venue is proper in the

Superior Court for the County of Orange, because Mazda is headquartered and its

principal place of business is within Orange County.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

### I.    Gary Guthrie

24.     On June 7, 2021, Mr. Guthrie purchased a new 2021 Mazda CX-30

vehicle, Vehicle Identification Number 3MVDMBEY3MM260992 (hereafter the

"Guthrie Vehicle") from Foothill Autogroup ("Foothill"), an authorized Mazda

dealership located in Spokane, Washington.

25.     Prior to the purchase, Foothill assured Mr. Guthrie that the Guthrie

Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited

Warranty[1] and was free from defects of workmanship and that the car was safe and

reliable.

26.     Shortly after purchasing the Guthrie Vehicle, Mr. Guthrie experienced

the Valve Stem Seal Defect.

27.     Specifically, on or about March 16, 2022, approximately 4,000 miles

---

[1] Under Mazda's New-Vehicle Limited Warranty, "[t]he New-Vehicle Limited Warranty period for defects in materials and workmanship in all parts supplied by Mazda is 36 months or 36,000 miles, whichever comes first" and "The Powertrain Limited Warranty period for defects in materials and workmanship in the powertrain components supplied by Mazda is 60 months or 60,000 miles, whichever comes first." *See* https://www.mazdausa.com/owners/warranty (last visited April 8, 2022).

8

after the Guthrie Vehicle had its last oil change, Mr. Guthrie observed that the Guthrie Vehicle's "Low Engine Oil Level" indicator light illuminated and displayed on the vehicle's instrument cluster. Mr. Guthrie checked the Guthrie Vehicle's engine oil level with a dipstick and observed that the dipstick was "bone dry."

28. On March 18, 2022, Mr. Guthrie presented the Guthrie Vehicle to Foothill, complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals, and sought a repair. In response, Foothill inspected the Guthrie Vehicle, determined that there were no signs of an oil leakage, and confirmed that the Guthrie Vehicle had consumed too much engine oil in between oil changes. Nonetheless, the dealership advised Mr. Guthrie that pursuant to Mazda's Technical Service Bulletin No. 01-012/21, Mazda had not yet determined the root cause of the excess engine oil consumption, and there were no repairs available for the issue at that time. The dealer directed Mr. Guthrie to add additional engine oil to the Guthrie Vehicle whenever the low engine oil indicator light illuminated in between oil changes.

29. On June 21, 2022, approximately 3,300 miles after the Guthrie Vehicle's prior oil change, the low engine oil indicator light illuminated once again while Mr. Guthrie was driving the Guthrie Vehicle on the freeway between Spokane, Washington and Idaho:

9



30.     Notably, compared with the first time the vehicle's low engine oil light illuminated, the second occasion occurred approximately 1,000 miles sooner following the prior oil change, indicating that the rate of the Guthrie Vehicle's consumption of engine oil has already begun to increase exponentially.

31.     Mr. Guthrie thereafter drove off the freeway, parked his vehicle, checked the vehicle's oil level with a dipstick and observed the dipstick was nearly entirely dry.  He then added additional engine oil to his vehicle before returning to the freeway

10

and continuing his trip, to prevent the engine from failing.

32.    On June 22, 2022, Mr. Guthrie called Foothill and notified it that the Guthrie Vehicle's low engine oil indicator light had once again illuminated in between oil change intervals.  In response, the dealer told Mr. Guthrie that his vehicle's engine oil consumption was purportedly "normal" and the Class Vehicles "all do that."  The dealer further told Mr. Guthrie that he simply needed to add more engine oil to the vehicle until the low engine oil light was no longer illuminated and that there was no need for him to bring his vehicle to the dealer for an inspection or repair attempt.

33.    On July 8, 2022, Mr. Guthrie presented his vehicle to Foothill, complained once again about his vehicle's excessive engine oil consumption and low engine oil light illuminated, and requested a repair. In response, the dealer inspected the Guthrie Vehicle but did not attempt any repairs.  Instead, the dealer told Mr. Guthrie that all turbo engines burn engine oil and emphasized to him that his vehicle's engine oil consumption was purportedly "normal." The dealer also resisted providing Mr. Guthrie with a repair order documenting the dealer visit and only reluctantly provided one to him after he demanded such paperwork.

34.    Moreover, Mr. Guthrie provided the dealership with a copy of the 2021 Technical Service Bulletin No. 01-012/21 (discussed below) and noted that pursuant to the bulletin, Mazda had determined that the cause of his vehicle's oil consumption was likely the vehicle's valve stem seals, but that no repair was available when the bulletin was issued. He then asked the dealer whether any subsequent bulletins or

repairs were issued following the 2021 bulletin. In response, the dealer stated that it was not aware of any more recent technical service bulletins concerning the oil consumption issue, and that the dealer did not believe that Mazda would be providing it with a repair instruction regarding the issue in the near future. The dealer remarked that it nonetheless would like another bulletin because the dealer receives a "dozen" oil consumption complaints each day.

35.    To date, Mr. Guthrie has had to repeatedly purchase additional engine oil out-of-pocket and add it to his vehicle in between oil changes to prevent the vehicle's engine from failing. Indeed, Mr. Guthrie constantly drives with additional engine oil in his trunk in the event his low engine oil indicator light appears in between oil changes.

36.    Accordingly, unless and until the Guthrie Vehicle is repaired, Mr. Guthrie will have to continue to purchase additional engine oil and add it to his vehicle in between oil change intervals in order to prevent his vehicle's engine from failing.

37.    Further, Mr. Guthrie has had to miss work and lost wages in order to bring his vehicle to Mazda dealerships in an attempt to repair the Valve Stem Seal Defect.

38.    Mr. Guthrie, through his counsel, has sent a letter to Mazda, advising it that the Guthrie Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

12

39. The Guthrie Vehicle remains unrepaired to date.

40. At all times, Mr. Guthrie has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**II.    Stephanie Crain**

41. On March 5, 2021, Ms. Crain purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBDY6MM236851 (hereafter the "Crain Vehicle") from Sandy Sansing Mazda ("Sansing"), an authorized Mazda dealership located in Pensacola, Florida.

42. Prior to the purchase, Sansing assured Ms. Crain that the Crain Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and that the car was safe and reliable.

43. Shortly after purchasing the Crain Vehicle, Ms. Crain experienced the Valve Stem Seal Defect when her vehicle's low engine oil indicator light illuminated before she was due for her next oil change.

44. On June 30, 2021, when the Crain Vehicle's odometer read approximately 6,494 miles, Ms. Crain presented the Crain Vehicle to Sansing to perform an oil change and complained that the Crain Vehicle's low engine oil indicator light had previously illuminated in between oil change intervals. In response, the dealership did not attempt any repairs on the Crain Vehicle regarding the vehicle's oil consumption.

45. On or about May 23, 2022, Ms. Crain presented the Crain Vehicle to

13

Mazda Evanston, an authorized Mazda dealership located in Evanston, Illinois.  Ms. Crain complained that the Crain Vehicle's low engine oil indicator light again illuminated in between oil change intervals.  In response, the dealership inspected the vehicle and confirmed that the "vehicle came in with low oil, oil was to the tip of the dip stick."  However, the dealer claimed that the vehicle's low engine oil level may have been the result of the prior dealership not adding enough engine oil to the vehicle when performing an oil change.  The dealership additionally attributed the Crain Vehicle's low engine oil levels to the fact that the vehicle has a turbo engine and claimed that turbos consume more engine oil than vehicles without turbo engines. The dealership did not perform any repairs on the Crain Vehicle regarding the vehicle's engine oil consumption or the Valve Stem Seal Defect.

46.    Accordingly, unless and until the Crain Vehicle is repaired, Ms. Crain will have to purchase engine oil and add it to her vehicle in between oil change intervals in order to prevent her vehicle's engine from failing.

47.    Ms. Crain, through her counsel, has sent a letter to Mazda, advising it that the Crain Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

48.    The Crain Vehicle remains unrepaired to date.

49.    At all times, Ms. Crain has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

SECOND AMENDED CLASS ACTION COMPLAINT

### III.    Chad Hinton

50.    On October 23, 2021, Mr. Hinton purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBAY7MM308029 (hereafter the "Hinton Vehicle") from Wyatt-Johnson Mazda ("Wyatt-Johnson"), an authorized Mazda dealership located in Clarksville, Tennessee.

51.    Prior to the purchase, Wyatt-Johnson assured Mr. Hinton that the Hinton Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and that the car was safe and reliable.

52.    Shortly after purchasing the Hinton Vehicle, Mr. Hinton experienced the Valve Stem Seal Defect.

53.    Specifically, on or about June 1, 2022, Mr. Hinton observed that the Hinton Vehicle's "Low Engine Oil Level" indicator light illuminated and displayed on the vehicle's instrument cluster. Mr. Hinton checked the Hinton Vehicle's engine oil level with a dipstick and observed that the dipstick was dry.

54.    Mr. Hinton thereafter purchased engine oil and added it to his vehicle in between oil change intervals in order to prevent damage to the vehicle's engine or the engine failing.

55.    On June 16, 2022, Mr. Hinton presented his vehicle to Wyatt-Johnson for an oil change and complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals and that he had twice checked the oil

15

levels and confirmed they were low.  In response, the dealership stated that the Hinton Vehicle's oil consumption was purportedly "normal" and that his vehicle will "burn oil."  The dealership did not attempt any repairs on the vehicle regarding the engine oil consumption or the Valve Stem Seal Defect.

56.    Shortly after the oil change, Mr. Hinton checked his dipstick and confirmed that the dealership had overfilled his engine with oil during the June 16, 2022 oil change and the oil level was above the 'full' mark on the dipstick.

57.    Thereafter, Mr. Hinton has measured the Hinton Vehicle's oil consumption on two more occasions with a dipstick and confirmed that its engine continues to consume oil following the June 16, 2022 dealer visit.

58.    Accordingly, unless and until the Hinton Vehicle is repaired, Mr. Hinton will have to purchase additional engine oil and add it to his vehicle in between oil change intervals in order to prevent his vehicle's engine from failing.

59.    Mr. Hinton, through his counsel, has sent a letter to Mazda, advising it that the Hinton Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

60.    After Mr. Hinton was added to this lawsuit and in response to this litigation and counsel's demand letter, Mazda directed its dealer to attempt a repair on the Hinton Vehicle. Thus, on August 18, 2022, Wyatt Johnson disassembled the Hinton Vehicle's engine, replaced the cylinder heads and valve stem seals, and reassembled the engine.

SECOND AMENDED CLASS ACTION COMPLAINT

61.     The associated repair order confirmed that the Hinton Vehicle consumed excessive oil ("EXCESSIVE OIL CONSUMPTION VERIFIED CUSTOMERS CONCERN") and that "VALVE SEALS ARE ALLOWING OIL TO PASS THRU."

62.     However, within days after the above repair attempt, the Hinton Vehicle began experiencing a number of episodes where it was unable to maintain highway speed, was sluggish, hesitated and lost power. For instance on or about August 30, 2022, the vehicle was unable to maintain highway speeds when Mr. Hinton attempted to merge onto a freeway, forcing him to drive into an emergency lane to avoid colliding with another vehicle while merging. Later that day the vehicle lost power again while Hinton was driving up a steep incline.

63.     On September 2, 2022, the vehicle malfunctioned when Mr. Hinton was forced to press the gas pedal all the way to the vehicle floor in order to get the vehicle to sustain a speed of 35 mph, a number of warning lights illuminated, and a message appeared on the instrument cluster stating "Safety and Driver Support Systems Partially Disabled. Drive Safely."  The vehicle had to be towed back to the Mazda dealer, who inspected the vehicle, confirmed the vehicle experienced a "lack of power," was "sputtering," and the check engine light illuminated, and then attempted a repair by replacing a cracked spark plug.  It appears that the spark plug was cracked during the prior repair attempt.

64.     During the above repair attempts the dealership overfilled the Hinton Vehicle with approximately one additional quart of engine oil.  As a result, he cannot

17

accurately measure the rate of oil consumption.

65.    The Hinton Vehicle remains unrepaired to date.

66.    At all times, Mr. Hinton has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**IV.    Julio Zelaya**

67.    On December 10, 2021, Mr. Zelaya purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBDY7MM310276 (hereafter the "Zelaya Vehicle") from Ocean Mazda ("Ocean"), an authorized Mazda dealership located in Miami, Florida.

68.    Prior to the purchase, Ocean assured Mr. Zelaya that the Zelaya Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and that the car was safe and reliable.

69.    Shortly after purchasing the Zelaya Vehicle, Mr. Zelaya experienced the Valve Stem Seal Defect.

70.    Specifically, in March 2022, when the Zelaya Vehicle's mileage was approximately 4,700 miles, the "Low Engine Oil Level" indicator light illuminated and displayed on the vehicle's instrument cluster.

71.    On March 30, 2022, Mr. Zelaya presented the Zelaya Vehicle to Ocean, complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals, and sought a repair.  In response, Ocean told Mr. Zelaya that because his vehicle contains a turbo engine, it will consume engine oil.  As a result, the

18

dealership told Mr. Zelaya he would need to get his vehicle's oil changed more often to account for the vehicle's engine oil consumption. The dealership did not attempt any repairs on the Zelaya Vehicle regarding the complaints of engine oil consumption.

72.    On August 31, 2022, Mr. Zelaya once again presented his vehicle to Ocean,  complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals, and sought a repair regarding the Valve Stem Seal Defect.  In response, Ocean inspected the vehicle, confirmed there were no oil leaks, but did not attempt any repairs on the vehicle.

73.    Accordingly, unless and until the Zelaya Vehicle is repaired, Mr. Zelaya will have to continue to purchase additional engine oil and add it to his vehicle in between oil change intervals, and/or his oil changed more frequently, in order to prevent his vehicle's engine from failing.

74.    Mr. Zelaya, through his counsel, has sent a letter to Mazda, advising it that the Zelaya Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

75.    The Zelaya Vehicle remains unrepaired to date.

76.    At all times, Mr. Zelaya and his wife have driven the Zelaya Vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## V.    Anna Gilinets

77.     On August 29, 2021, Ms. Gilinets leased a new 2021 Mazda CX9 vehicle, Vehicle Identification Number JM3TCBDY0M0538744 (hereafter the

"Gilinets Vehicle") from CardinaleWay Mazda Corona, an authorized Mazda dealer in Coronoa, California ("CardinaleWay").

78.     Prior to the execution of the lease agreement, CardinaleWay assured Ms. Gilinets that the Gilinets Vehicle was accompanied by Mazda Motor of America, Inc.'s New Vehicle Limited Warranty and was free from defects of workmanship and the car was safe and reliable.

79.     Shortly after leasing the Gilinets Vehicle, Ms. Gilinets experienced the Valve Stem Seal Defect when her vehicle's low engine oil light illuminated when the vehicle's mileage was approximately 4,500 miles.

80.     On May 28, 2022, Ms. Gilinets presented her vehicle to CardinaleWay and complained about her vehicle's excessive oil consumption in between oil change intervals.  In response,  the dealership told Ms. Gilinets that her vehicle's oil consumption was allegedly "normal" and the result of the vehicle's turbo engine. No repair attempt was made.

81.     On August 23, 2022, Ms. Gilinets presented her vehicle to Mazda of Claremont, an authorized Mazda dealership located in Claremont, California, and complained about her vehicle's excessive engine oil consumption and that every 4,000 miles her vehicle displays the low engine oil level warning light.  In response, the dealership inspected the vehicle and confirmed that the vehicle's engine oil level was low and there were no leaks. However, the dealership did not attempt any repairs on the vehicle regarding the Valve Stem Seal Defect.

20

82.     Ms. Gilinets, through her counsel, has sent a letter to Mazda, advising it that the Gilinets Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

83.     The Gilinets Vehicle remains unrepaired to date.

84.     At all times, Ms. Gilinets has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**VI.     Marcy Knysz**

85.     On January 23, 2021, Ms. Knysz leased a new 2021 Mazda CX-9 vehicle, Vehicle Identification Number JM3TCBDY5M0510938 (hereafter the "Knysz Vehicle") from Napleton's Palatine Mazda ("Napleton's"), an authorized Mazda dealer in Palatine, Illinois.

86.     Prior to the purchase, Napleton's Mazda assured Ms. Knysz that the Knysz Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and the car was safe and reliable.

87.     On June 12, 2021, Ms. Knysz presented her Vehicle to Napleton's and complained that the low engine oil  indicator light illuminated and displayed on the vehicle's instrument cluster in between recommended oil change intervals. Napleton's performed an oil change on the Knysz vehicle but did not attempt a repair regarding the Valve Stem Seal Defect.

88.     On December 13, 2021, Ms. Knysz again presented her vehicle to

21

Napelton's and complained that the low engine oil indicator light illuminated in between oil change intervals. Napleton's performed an oil change on the Knysz vehicle but did not attempt any repairs regarding the Valve Stem Seal Defect.

89.    On May 17, 2022, Ms. Knysz presented her vehicle to Napleton's and complained that the low engine oil indicator light illuminated in between oil change intervals.  In response, the dealership did not attempt any repairs on the vehicle.

90.    On September 1, 2022, Ms. Knysz presented her vehicle to Napleton's and complained that her low engine oil light illuminated in between change intervals. In response, the dealer inspected the vehicle and confirmed that the engine oil level to was low and there were no leaks. However, the dealership did not attempt any repairs on the vehicle regarding the Valve Stem Seal Defect.

91.    Ms. Knysz, through her counsel, has sent a letter to Mazda, advising it that the Knysz Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

92.    The Knysz Vehicle remains unrepaired to date.

93.    At all times, Ms. Knysz has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**VII.    Lester Woo**

94.    On July 17, 2021, Mr. Woo purchased a new 2021 Mazda CX-30 vehicle, Vehicle Identification Number 3MVDMBEY6MM265362 (hereafter the "Woo Vehicle") from Lee Johnson Mazda of Seattle ("Lee Johnson"), an authorized Mazda

22

dealership located in Seattle, Washington.

95.     Prior to the purchase, Lee Johnson assured Mr. Woo that the Woo Vehicle was accompanied by Mazda Motor of America, Inc.'s New-Vehicle Limited Warranty and was free from defects of workmanship and that the car was safe and reliable.

96.     Shortly after purchasing the Woo Vehicle, Mr. Woo experienced the Valve Stem Seal Defect when his vehicle's low oil light illuminated before the next recommended oil change interval.

97.     On January 8, 2022, Mr. Woo presented his vehicle to Doug's Lynwood Mazda/Hyundai, an authorized Mazda dealership ("Doug's"), for an oil change and complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals.  In response, the dealership did not attempt any repairs on the vehicle regarding the engine oil consumption or the Valve Stem Seal Defect.

98.     Thereafter, the Woo Vehicle's low engine oil light illuminated once again in between oil change intervals.

99.     On April 19, 2022, Mr. Woo presented his vehicle to Doug's and complained that his vehicle's low engine oil indicator light illuminated in between oil change intervals.  In response, the dealership inspected the vehicle and confirmed the vehicle's engine oil level was low and there were no signs of any leaks.  However, the dealership merely added additional engine oil to the vehicle and did not attempt any repairs.

23

100.    Mr. Woo, through his counsel, has sent a letter to Mazda, advising it that the Woo Vehicle suffers from the Valve Stem Seal Defect and that Mazda has failed to repair the vehicle under Mazda's warranty.

101.    In response to counsel's demand letter, Mazda directed its dealer to attempt a repair on the Woo Vehicle. Thus, on July 29, 2022, Doug's disassembled the Woo Vehicle's engine, replaced the cylinder heads and valve stem seals, and reassembled the engine. The associated repair order confirmed that the Woo Vehicle consumed excessive oil due to the Valve Stem Seal Defect ("CUSTOMER REPORTS THAT THE VEHICLE IS HAVING OIL CONSUMPTION ISSUES. CAUSE: VALVE STEM SEAL CONCERN").

102.    However, following the above repair attempt, the Woo Vehicle continues to consume excess engine oil and the vehicle's low engine oil light has continued to illuminate in between oil change intervals. Indeed, the Woo Vehicle's mileage was 15,380 miles when the July 29, 2022 valve stem seal repair attempt was made and as of October 28, 2022, when the mileage was 20,051 miles, the low oil light illuminated once again :

SECOND AMENDED CLASS ACTION COMPLAINT



103.    The Woo Vehicle remains unrepaired to date.

104.    At all times, Mr. Woo has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## **FACTUAL ALLEGATIONS**

**The Valve Stem Seal Defect**

105.    On July 8, 2020, Mazda announced the release of its "Skyactiv-G 2.5T engine," noting that the engine "will deliver an impressive 250 horsepower and 320 lb-ft of torque with premium (93 octane) fuel or a solid 227 horsepower and 310 lb-ft

25

of torque with regular (87 octane) fuel."[2]

106.    The Class Vehicles all share the same exact Skyactiv-G 2.5T engine and Mazda began selling the Class Vehicles in late 2020.

107.    Engine oil is crucial to a vehicle's proper functioning because it acts as an essential lubricant for the moving parts in internal combustion engines.  The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, decreasing heat caused by friction and reducing wear.  Engine oil also has important cleaning and sealing functions and serves as an important medium for dissipating heat throughout the engine.  As a result, the Class Vehicles need the proper amount of engine oil in order for their Skyactiv-G 2.5T engine and its related parts to function safely.

108.    The valve stem seals in the Class Vehicles' identical Skyactiv-G 2.5T engines are supposed to prevent engine oil from contaminating the air/fuel mixture in the Class Vehicle's engine's combustion chamber and prevent intake and exhaust gases from contaminating the oil in the cylinder head and the rest of the engine.

109.    Further, valve stem seals within the engines are supposed to last the lifetime of the Class Vehicles.

110.    However, as a result of, *inter alia,* the materials Mazda used to

---

[2] *See* https://news.mazdausa.com/2020-07-08-2021-Mazda3-2-5-Turbo-Refined-Performance (last visited July 13, 2022); *see also, e.g.,* https://news.mazdausa.com/2020-09-17-2021-Mazda-CX-30-2-5-Turbo-Empowering-Performance (last visited July 13, 2022).

SECOND AMENDED CLASS ACTION COMPLAINT

manufacture the Class Vehicles' engine components and specifically the valve stem seals, and the way in which Mazda manufactured the Class Vehicles' engine components and valve stem seals, the Class Vehicles contain defective valve stem seals that cause engine oil to leak past the valve stem and into the Class Vehicles' engines' combustion chamber (the "Valve Stem Seal Defect" or the "Defect"). As a result of the Defect, the Class Vehicles consume an excessive amount of engine oil in between recommended oil change intervals. Moreover, the Defect causes damage to the Class Vehicles' engines and other components, which are more likely to prematurely fail and need replacement due to the Defect.

111. For instance, the defective valve stem seals in the Class Vehicles and the resulting engine oil burning in the vehicles' combustion chambers creates carbon deposits on the valves and piston crown and contaminates the spark plugs, causing the engines to lose power. The Defect can also cause the engine valves to fail to seal, and in turn a lack of compression and a poor running engine. In addition, the defective valve stem seals can cause excess exhaust gases in the crankcase, which result in damage to other vehicle systems.

112. On November 10, 2020 – almost immediately after Mazda began selling the Class Vehicles – Mazda acknowledged that some of the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Steam Seal Defect. Specifically, on that date, Mazda updated its "High Engine Oil Consumption" "M-Tips" Bulletin to its dealerships, M-Tips No.: MT-005/20, to include, *inter alia,* 2021

27

CX-5, 2021 CX-9, and 2021 Mazda6 vehicles, and noted that "Some customers may complain about high engine oil consumption."

113.   Mazda's inclusion of certain 2021 Class Vehicles in the above M-tip Bulletin establishes that prior to November 2020 Mazda had already determined that the Class Vehicles consume excess engine oil via sources not available to the general public or Plaintiff such as pre-release testing and early vehicle owner complaints made shortly after Mazda began selling the Class Vehicles.

114.   Further, the M-tip Bulletin notes that it supersedes a previously-issued bulletin that was released in October 2019 which applies to certain earlier Mazda models.  Thus, Mazda has been aware that its vehicles consume an excess amount of engine oil, and that owners have been complaining about the same, since at least 2019, well before it began selling the Class Vehicles.

115.   The above M-Tip Bulletin provides a process for Mazda dealerships to measure a vehicle's engine oil consumption.  Specifically, it directs Mazda dealers to measure a vehicle's engine oil consumption after driving 1,200 miles and states that "[n]o repair is necessary" where a vehicle consumes less than one liter (1.06 quarts) of engine oil within 1,200 miles.

116.   However, Mazda's Owner's Manual and Warranty advise the recommended oil service interval for Class Vehicles is the earlier of 10,000 miles or one year.  Thus, according to Mazda, a vehicle needs to consume more than 8 quarts of engine oil in between recommended oil change intervals in order to necessitate a

repair for excess oil consumption, and a vehicle that consumes, for instance, 7 quarts of engine oil in between oil changes is purportedly normal and within specifications. To the contrary, there is nothing normal or expected about this rate of oil consumption, as vehicles that consume less than 8 quarts of engine oil between recommended oil change intervals still suffer from Valve Stem Seal Defect and should be entitled to a repair, and upon information and belief the bulletin was designed by Mazda to minimize warranty repairs and associated costs to Mazda.

117.   Moreover, when Plaintiffs presented their vehicles to Mazda dealerships and complained about their vehicles' engine oil consumption, the Mazda dealerships did not offer to perform an oil consumption test.

118.   On October 4, 2021, Mazda issued Technical Service Bulletin No. 01-012/21, applicable to 2021 Mazda CX-30, CX-5, CX-9, Mazda3 and Mazda6 vehicles that were "produced before September 14, 2021," i.e., the Class Vehicles.  The bulletin notes that "Some vehicles may have a 'LOW ENGINE OIL LEVEL' warning message and a CHECK ENGINE light illuminated in the instrument cluster, along with DTC P250F:00 stored in memory. . . . Upon inspecting the engine oil level, the level is found to be low and there doesn't appear to be any trace of oil leakage in the engine compartment.  This concern usually occurs when the mileage reaches approximately 3,100 – 4,700 miles (5,000 - 7,500km) and may also occur again after replacing or topping off the engine oil."

119.   The October 4, 2021 bulletin further states that "[t]he root cause of this

concern has not been identified yet, therefore a repair procedure will be announced at a later date." However, at the same time, the bulletin acknowledges that "[s]ince this issue has been reported after a valve stem seal modification, *it is very likely that valve stem seal damage is causing oil to leak into the combustion chamber*." (emphasis supplied). Thus, prior to the release of this bulletin in October 2021 Mazda had already determined that Class Vehicles' oil consumption was linked to the Class Vehicles' valve stem seals contained within their identical engines.

120.    Mazda's above bulletin recognizes that all Class Vehicles share the same common Valve Stem Seal Defect, the bulletin applies to all Class Vehicles, and Mazda treats all Class Vehicles identically with respect to their engine oil consumption issues.

121.    Further, through the bulletin Mazda acknowledges that since it began selling the Class Vehicles owners have been reporting that their vehicles consume excess engine oil consumption. Upon information and belief, by late 2020 or early 2021 Mazda had already received enough oil consumption complaints from Class Vehicle owners such that Mazda identified the issue as an emerging trend, identified the issue as one of the most common Class Vehicle owner complaints, and determined that owners were complaining about the issue to such a degree that it needed to begin the months-long process of preparing and ultimately releasing a technical service bulletin to its dealers.

122.    Regarding a repair procedure, the bulletin directs dealers that they should

30

first "verify that the oil level is low" and if so, "verify that there is no oil leakage in the engine compartment." "If no oil leakage is found," the bulletin advises that dealer should "top off the engine oil to the FULL level as a temporary measure."

123.   The bulletin also directs dealers to minimize the severity of the Valve Stem Seal Defect to Class Vehicle owners by telling dealers to "[e]xplain the following to the customer: A small amount of the engine oil may be leaking into the combustion chamber, causing the oil consumption. Mazda has confirmed this oil leakage into the combustion chamber will not cause any immediate engine damage and the vehicle may be safely driven. The warning message and CHECK ENGINE light will go off by topping off the engine oil level. This is only a temporary repair and as soon as Mazda identifies the root cause, a complete repair procedure will be announced. Mazda will top off or replace the engine oil at no charge until the complete repair is provided." Notably, Mazda does not claim that engine oil leaking into the combustion chamber will not cause long term engine damage, but only that it purportedly "will not cause any immediate damage."

124.   On November 24, 2021, Mazda issued a revised version of Bulletin No. 01-012/21.  The bulletin was largely identical; however, it directs Mazda dealers that if the dealer inspects a vehicle and determines there is no oil leakage, the dealer should either "top off the engine oil to the FULL level as a temporary measure or replace the engine oil if service is due within 1000 miles or 30 days."  The bulletin continues to state that "[t]he root cause of this concern has not been identified yet,

31

therefore a repair procedure will be announced at a later date."

125.    The only instructions to dealers in the above bulletin – to 'top off' engine oil – merely addresses a symptom of the Valve Stem Seal Defect, not the actual cause. In the meantime, the unrepaired Valve Stem Seal continues to cause damage to the Class Vehicles, including a buildup of carbon deposits on the valves and piston crown and contamination of the spark plugs which can cause the engines to lose power; an increased risk of the engine valves failing to seal, resulting in a lack of compression and a poor running engine; and excess exhaust gasses in the crankcase resulting in damage to other vehicle systems.

126.    Other Class Vehicle owners, in addition to Plaintiffs, complain that they have not been provided with any repair attempts regarding the actual underlying cause of their vehicles' excess engine oil consumption, are told by dealers that Mazda does not yet have a "fix" for the issue, and are often falsely assured by dealers that the Class Vehicles' excess engine oil consumption is purportedly "normal." *See, e.g.*:

- NHTSA Complaint No. 11444769, December 22, 2021 (2021 Mazda CX-5): "Bought the car brand new in May 2021, did a first oil change at around 4K miles due to the fact the car uses conventional 5w-30 oil and not synthetic oil. At around 7k miles the low oil engine light came on. Checked the dipstick and it was low. Added a quart of oil to hold me over until the next available appointment. Dealer could not find any leaks, they completed a oil change again. I went in again at 11K for another oil change. Had no problems. A few days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. Both times I got a notification from Mazda connect services alerting me of these problems. (Please see attached) **I brought the car in on 12/22/21 and was told the car was low**

32

**on oil and nothing else could be done until Mazda comes up with a solution."**

- NHTSA Complaint No. 11451279, February 9, 2022 (2021 Mazda CX-30): "At about 3,605 miles, I received a low engine oil warning. The car is only 4 months old. **When i took the car to the dealer, apparently there is a TSB that was issued in October 2021 about the problem. I bought the car in November was not advised of this issue. At this time, it appears at this time Mazda is unable to determine the root cause**. It appears that I am to take the vehicle to the dealer every time I have this experience. I am worried about the potential impact and the lifespan of the engine."

- NHTSA Complaint No. 11466068, May 25, 2022 (2021 Mazda CX-30): "I have the 2.5 liter turbocharged engine in my CX-30. It currently has approximately 18,000 miles after a little over a year of ownership. So far I have had to put in 3 quarts of oil in that time. The engine/low oil indicator comes on about every 4,000 miles. When I check the oil, it shows that it is down a quart. **I have taken it in for regular service (oil and filter, tire rotation) twice now, and have brought this to the attention of the service advisor who tells me that this is normal for turbo engines.** I disagree with this assessment. I will bring it up again later this week when it goes in for its third service. No new car should consume oil at the rate this one does. I have also observed blue smoke from the exhaust on start-up. I owned another turbo Mazda model a few years ago that did not do this. I have found what appears to be a technical service bulletin from Mazda regarding all turbocharged 2021 models built prior to September 2021. (TSB-01-012-21) **My greatest concern is that this will only become worse and end up causing major damage to the engine and/or make the car unsafe to drive."**

- NHTSA Complaint No. 11467864, June 6, 2022 (2021 Mazda CX-5): "Low engine oil level light & status is coming on for our 2021 Mazda CX-5 turbo. It has 9115 miles and still 1300 miles away from needing oil change. **I called our dealership today & was informed we were the 2nd to call today with message. They provided no further info.** I have since found there are technical bulletins regarding this issue. Recalls need to be made & Mazda should be covering all repair costs for this."

- NHTSA Complaint No. 11471263, June 27, 2022 (2021 Mazda Mazda3): "Engine is consuming excessive oil. **Dealership states there is a TSB out**

33

**but the fix is to keep topping the oil off.** I would like an investigation to determine the root cause of the oil consumption on a new engine."

- NHTSA Complaint No. 11472739, July 7, 2022 (2021 Mazda CX-30): "My car is burning a quart of oil every 1500 miles. **I have taken it to the dealer three times. They say that they know about the problem but don't have a fix.** I am afraid that the engine could seize up during driving, causing a accident."

127.    However, as Consumer Reports has repeatedly noted when reporting on oil consumption issues in modern vehicles, engine oil consumption in newer vehicles like the consumption exhibited by Class Vehicles "isn't normal" and is "unacceptable."[3] Indeed, Consumer Reports "believes that people who drive modern cars shouldn't have to worry about running low on oil and having to routinely top it off between scheduled service visits."[4]

128.    Moreover, Class Vehicle owners complain that Mazda dealers overfill their vehicles with engine oil in order to address the Valve Stem Seal Defect:

- NHTSA Complaint No. 11472002, July 1, 2022 (2021 Mazda Mazda3): "My Mazda 3 2.5T has been burning oil in excess. The car has a total of 24,000 miles and has been serviced 3 times. I have had to add oil in between every service. The oil has been completely burned off by 4,000-5,000 miles. I have noticed that other people have been posting about the same issues online. **When talking to the dealership they state that they have noticed this issue with the 2.5T's but offer no fix and seem to overfill the engine oil to try and compensate."**

---

[3] *See* https://www.consumerreports.org/cro/magazine/2015/06/excessive-oil-consumption/index.htm (last visited July 14, 2022).

[4] *See* https://www.consumerreports.org/car-maintenance/some-newer-cars-can-burn-lots-of-oil-a1065338868/ (last visited July 14, 2022).

34

- On May 2, 2022, Class Vehicle owner complained "All the dealer will do is over fill the oil and hope for the best. I go from way over the top hole to right at the bottom hole at 4K mile."[5]

129.

130.    On October 3, 2022 – nearly a year after its prior bulletin and six months after this lawsuit was initiated – Mazda issued bulletin No. 01-011/22 which supersedes the above October 4, 2021 and November 24, 2021 bulletins, and applies to 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 Class Vehicles.  The bulletin confirms that Class Vehicles' excessive oil consumption is "due to damage of the valve seals on the exhaust side" and belatedly directs dealers to "[r]eplace the valve seals of the exhaust side with improved ones . . . ." The 53-page bulletin provides instructions for dealers to disassemble Class Vehicle engines in order to replace the valve stem seals and then re-assemble and install the engines back into the Class Vehicles.

131.    The above repair attempt is inadequate for several reasons.  First, those owners who have gotten the repair have already complained that it does not alleviate their vehicle's oil consumption and has resulted in additional issues with the vehicle.  For instance, following the above repair attempt Plaintiff Hinton's vehicle repeatedly lost power and eventually needed to be towed back to the dealer for further inspections and repairs.  In addition, Plaintiff Woo's vehicle continues to consume excessive engine oil and has already displayed the low engine oil light following the

---

[5] https://mazdas247.com/forum/t/2021-cx-9-burning-oil.123876289/page-7 (last visited July 13, 2022)

SECOND AMENDED CLASS ACTION COMPLAINT

above repair attempt.

132.    Second, after the above bulletin was issued on October 3, 2022, Class Vehicle owners continue to report that no repair attempts are made on their Class Vehicles and the valve stem seal repair is not yet available. *See, e.g.,*:

- NHTSA Complaint No. 11489693, October 18, 2022 (2021 Mazda Mazda6): "Vehicle displays low engine oil light about every 1,000 miles due to burning oil from faulty valve stem seals from factory assembly. Mazda has acknowledged the defect but plans to only refill engine oil. The defect could lead to possible injury due to low oil which could cause the engine to seize and cause sudden loss of power".

- NHTSA Complaint No. 11490413, October 22, 2022 (2021 Mazda CX-30): "The Low Oil Level light/sensor came on before it was time to get an oil change (the recommended 4600 miles). This is super dangerous as it can cause major engine issues. I took it to the dealership and the dealership stated 'they are having problems with these cars-they are burning too much oil so there is going to be a replacement valve once they have one made and you'll need to come back in to have it replaced -it will be a big job since it's part of the engine'."

133.    Third, for the last two years the unrepaired valve stem seals and the resulting engine oil burning in the vehicles' combustion chambers has caused damage to the Class Vehicles' engines and other vehicle systems.  As noted, this includes a buildup of carbon deposits on the valves and piston crown and contamination of the spark plugs; an increased risk of the engine valves failing to seal, resulting in a lack of compression and a poor running engine; and excess exhaust gasses in the crankcase resulting in damage to other vehicle systems.  However,  replacing the valve stem seals does not eliminate or address the above damage that has already been done to the Class Vehicles for the past several years due to the Valve Stem Seal Defect.

36

134.   Fourth, Class Vehicles were worth less money at the time of sale due to the undisclosed Valve Stem Seal Defect.  Given the intrusive and invasive nature of the newest repair attempt which involves taking apart and reassembling the Class Vehicles' engines – and which has already lead to post-repair issues for some Class Vehicle owners such as Plaintiffs Hinton and Woo – the vehicles continue to be worth less money because of the Valve Stem Seal Defect regardless of whether or not they have undergone the extensive engine repair attempt set forth in the above bulletin.

135.   While Mazda issued the above-referenced technical service bulletins to its dealers, those bulletins are provided to and intended for Mazda dealerships, not the public; the bulletins are not readily accessible to the public.

136.   Mazda had and has a duty to fully disclose the true nature of the Valve Stem Seal Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect is a material defect that substantially impairs the vehicle's use and value; because Mazda had and has exclusive knowledge or access to material facts about the Class Vehicles' defective valve stem seals that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members; and because Mazda has actively concealed the Valve Stem Seal Defect from its customers.  Because the Class Vehicles are defective, Mazda should repair or replace each of the Class Vehicles' valve stem seals free of charge.

SECOND AMENDED CLASS ACTION COMPLAINT

**Mazda's Knowledge of the Defect**

137.    Before Mazda sold Plaintiffs their Class Vehicle, Mazda was on notice that the Class Vehicles suffered from the Valve Stem Seal Defect; however, Mazda failed to disclose the existence of the defect to Plaintiffs or any other Class Vehicle owner.

138.    Indeed, Mazda issued the above-discussed M-Tips No.: MT-005/20 on November 10, 2020 – before Plaintiffs purchased their vehicles – acknowledging that the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Steam Seal Defect.  Given the time it takes Mazda to gather relevant data, prepare the bulletin and release it to its dealers, Mazda was thus aware of the Valve Stem Seal Defect months before it issued the bulletin if not earlier.  The same is true of Mazda's subsequent October 4, 2021, Technical Service Bulletin No. 01-012/21, which was released before Plaintiffs Hinton and Zelaya purchased their vehicles. Here too, given the time it takes Mazda to prepare and release the bulletin, the bulletin establishes that Mazda was aware of the Valve Stem Seal Defect well before October 2021 and before the Plaintiffs purchased their vehicles.

139.    Further, Mazda also became aware of the Valve Stem Seal Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Mazda's network of dealers and directly to Mazda, aggregate

38

warranty data compiled from Mazda's network of dealers, testing conducted by

Mazda in response to consumer complaints, and repair order and parts data received

by Mazda from Mazda's network of dealers.

140.    On information and belief, during the pre-release process of designing,

manufacturing, engineering, and performing durability testing on the Class Vehicles,

including the Class Vehicles' common Skyactiv-G 2.5T engine, which would have

likely occurred between 2019 and early 2020, before Mazda began selling the Class

Vehicles in the fall of 2020, Mazda necessarily would have gained comprehensive and

exclusive knowledge about the Class Vehicles' Skyactiv-G 2.5T engines and

specifically the valve stem seals: the types and properties of materials used to make

them, including their durability and whether those materials would weaken over time

regardless of wear and use; the basic engineering principles behind their construction;

and the cumulative and specific impacts on the valve stem seals and related engine

components caused by wear and use, the passage of time, and environmental factors.

141.    An adequate pre-release analysis of the design, engineering, and

manufacture of the Class Vehicles would have revealed to Mazda that the valve stem

seals were defective and allow engine oil to escape into the Class Vehicles' engines'

combustion chambers.  Thus, during the pre-release analysis stage of the Class

Vehicles, Mazda would have known that the Class Vehicles were defective.  Despite

that such testing on the Class Vehicles revealed the Valve Stem Seal Defect to Mazda,

Mazda failed to remedy the damages vehicles into production and selling them to the

39

public.

142.   Mazda also knew about the Valve Stem Seal Defect because numerous consumer complaints regarding excess engine oil consumption were made directly to Mazda.  The Valve Stem Seal Defect and the Class Vehicle's engine oil consumption occurs almost immediately after owners begin driving their vehicles and thus Class Vehicle owners began lodging complaints to Mazda and its authorized dealerships shortly after Mazda began selling the Class Vehicles in the fall of 2020.  The large number of complaints, and the consistency of their descriptions of the symptoms of the Defect, alerted Mazda to this serious Valve Stem Seal Defect affecting the Class Vehicles.  The full universe of complaints made directly to Mazda about the Valve Stem Seal Defect is information presently in the exclusive custody and control of Mazda and is not yet available to Plaintiffs prior to discovery.  However, upon information and belief, many Class Vehicle owners complained directly to Mazda and Mazda dealerships and service centers about their Vehicles' excessive engine oil consumption.

143.   Further, Mazda provides "Mazda Connected Services" and a MyMazda mobile application to Class Vehicles owners that, *inter alia,* notifies Class Vehicles owners when their vehicles need servicing.[6]  For instance, Plaintiff Guthrie's MyMazda mobile application alerted him that his engine oil level was low on June 21,

---

[6] https://www.mazdausa.com/siteassets/pdf/owners-optimized/optimized-connected-vehicle/enroll-in-mazda-connected-services.pdf (last visited July 13, 2022)

SECOND AMENDED CLASS ACTION COMPLAINT

2022:



144.    Other Class Vehicles owners have likewise reported that Mazda Connected Services have alerted them when their vehicles' low engine oil light indicator is illuminated. *See, e.g.*:

- NHTSA Complaint No. 11444769, December 22, 2021 (2021 Mazda CX-5): "Bought the car brand new in May 2021, did a first oil change at around 4K miles due to the fact the car uses conventional 5w-30 oil and not synthetic oil. At around 7k miles the low oil engine light came on. Checked the dipstick and it was low. Added a quart of oil to hold me over until the next available

SECOND AMENDED CLASS ACTION COMPLAINT

appointment. Dealer could not find any leaks, they completed a oil change again. I went in again at 11K for another oil change. Had no problems. A few days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. **Both times I got a notification from Mazda connect services alerting me of these problems**. (Please see attached) I brought the car in on 12/22/21 and was told the car was low on oil and nothing else could be done until Mazda comes up with a solution."

- NHTSA Complaint No. 11468396, June 9, 2022 (2021 Mazda CX-9): "I purchased this vehicle June 5 2021. The vehicle has approximately 9150 miles at this time. I changed the oil the first time at 3222 miles just because it was new and I wanted to have a starting point on oil changes. **The car has an app you load on your cell phone for messages. The first time I received a massage that the engine was low of oil was around 6700 miles. I checked it and it was low with at the add oil mark with 3500 miles driven. I received a second message from the app stating the oil was low. Again, I checked the oil and it was to the add oil level with 9014 miles or only been driven 2300 miles.** I have contacted Mazda and will take it to the dealership in a few days, but I am having to add and check the oil ever day or so. There seems to be an oil consumption issue with this engine."

145. Thus, Mazda itself receives and possesses real-time data of all instances where the Class Vehicles' low engine oil warning lights appear. The frequency and volume of such notifications alerted, or should have alerted, Mazda that the Class Vehicles consume excess engine oil as a result of the Valve Stem Seal Defect.

SECOND AMENDED CLASS ACTION COMPLAINT

**The NHTSA Complaints and Online Discussions of the Defect**

146.   Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Valve Stem Seal Defect.  Given how widespread the issue is and the fact that the Valve Stem Seal Defect often begins manifesting shortly after the purchase date, Class Vehicle owners have been complaining about the Valve Stem Seal Defect directly to Mazda since 2020 and have been posting such complaints online since 2021.

147.   Mazda regularly monitors online discussions of its vehicles, including the Class Vehicles, and thus upon information and belief Mazda had actual knowledge of the below complaints.  Further, the below complaints are merely representative of the complaints made to Mazda, do not reflect the entire universe of complaints, and Class Vehicle owners have complained directly to Mazda as well as its dealerships before the first online complaint cited below.

148.   For instance, on July 12, 2021, a 2021 Mazda3 owner wrote on a Mazda-enthusiast website, "I'm a few hundred kilometres from my very first oil change being due and received a Low Engine Oil warning in the dashboard on my 2.5T. Checked the dipstick a few times, oil was just barely past the minimum mark dot (not below the min dot). Dealer changed the oil and pulled & cleared the stored DTC P250 error. Oil up back up to the max dot. No leaks or other issues found. They said to keep an eye

SECOND AMENDED CLASS ACTION COMPLAINT

out on it and let them know if the error returns."[7]  In response, other vehicle owners reported experiencing similar oil consumption issues with their Class Vehicles and reporting the same to Mazda dealers.  *See id.*

149.  On September 27, 2021 a 2021 CX-9 vehicle owner complained on a Mazda-enthusiast website that "the low oil warning light came on" in between oil change intervals.[8]  The same owner noted that on October 2, 2021, that they had brought their vehicle to the dealership regarding their vehicle's oil consumption, and the dealer told the owner that it was purportedly "normal for a turbocharged car to consume 'a lot' of oil especially my engine was still new."[9]  Over the following months many other Class Vehicle owners reported experiencing the Valve Stem Seal Defect.

150.  On October 5, 2021, a 2021 CX-5 owner complained on a Mazda-enthusiast website, "I have a 2021 CX-5 bought in Nov. 2020, right now it has a little over 4500 miles on it.  Not long ago after driving for about an hour, I noticed my engine oil warning light came on and the app said I have low engine oil."[10]  In response, on October 13, 2021, another 2021 CX-5 owner complained that they "have

---

[7] https://www.mazda3revolution.com/threads/dtc-p250-error-code-low-engine-oil.243613/ (last visited April 8, 2022).

[8] https://mazdas247.com/forum/t/2021-cx-9-burning-oil.123876289/ (last visited April 8, 2022).

[9] https://mazdas247.com/forum/t/2021-cx-9-burning-oil.123876289/page-2 (last visited April 8, 2022).

[10] https://mazdas247.com/forum/t/low-engine-oil-warning-light-on-new-cx-5.123876329/ (last visited April 8, 2022).

44

the same issue, oil light came on right before my first oil change and then again 2 more time after that, now I am at almost 11,000 and when I went to the dealership, they opened a hot ticket with Mazda and did you know what their answer was: WE CAN'T FIX IT, you will have to drive to the dealership an top off oil every time you get that."[11] Over the following months many other Class Vehicle owners reported experiencing the Valve Stem Seal Defect.[12]

151.   Likewise, in or around October 2021, Class Vehicle owners complained on Reddit that they were experiencing the Valve Stem Seal Defect and had complained to Mazda dealers but were told there is nothing Mazda can do other than top off the vehicles with additional engine oil.[13]  One such owner complained, "I've got a 2021 Turbo with about 12,000 miles and just had the same issue.  Called the service desk and they said just top it off, it's a known issue but nothing they could do about it.  Thought it was strange as we've owned several turbo or supercharged cars that were driven much harder than an SUV w/o any issues."[14]

152.   Moreover, Class Vehicles owners have been complaining about Valve

---

[11] *See id.*

[12] *See e.g.,* https://mazdas247.com/forum/t/mazda-cx-5-and-other-models-oil-consumption-tsb-wtf.123876828/ (Mazda CX-5 owner complained, "Looks like I just started having this issue on my 21 CE AWD Turbo as soon as I hit 5k miles. The low oil light came on. More alarming is that I did my first oil change at 3,500 miles myself and put in 5.0 quarts so within 1,500 miles it consumed enough to trigger the light and when I checked the dipstick, oil is below the 2 dots about halfway.").

[13] https://www.reddit.com/r/CX5/comments/qczybb/any_one_else_with_the_25_turbo_having_oil/?utm_medium=android_app&utm_source=share (last visited April 8, 2022).
[14] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT

Stem Seal Defect to NHTSA.  The below example complaints, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Mazda actively monitored during the relevant time period, demonstrate that the Defect is widespread, that Class Vehicles owners have been regularly complaining about the Valve Stem Seal Defect since Mazda began selling the Class Vehicles (indeed the complaints note that some owners had previously complained to Mazda dealers about the issue prior to lodging NHTSA complaints) and that Mazda has known about the defect at all relevant times:

- NHTSA Complaint No. 11441650, November 24, 2021 (2021 Mazda CX-5): "On Nov 4th my Mazda CX5 alerted me to low engine oil level by illuminating dashboard symbol and app notification. I attached a file containing an explanation of the issue, emails directed to Mazda corporation and Napelton Mazda in Naperville IL. I also attached screenshots of the in app notification and the Mazda TSB which I had to find on my own because Mazda coporate and both the selling/servicing dealer would not acknowledge the oil burning issue."

- NHTSA Complaint No. 11444769, December 22, 2021 (2021 Mazda CX-5): "Bought the car brand new in May 2021, did a first oil change at around 4K miles due to the fact the car uses conventional 5w-30 oil and not synthetic oil. At around 7k miles the low oil engine light came on. Checked the dipstick and it was low. Added a quart of oil to hold me over until the next available appointment. Dealer could not find any leaks, they completed a oil change again. I went in again at 11K for another oil change. Had no problems. A few days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. Both times I got a notification from Mazda connect services alerting me of these problems. (Please see attached) I brought the car in on 12/22/21 and was told the car was low on oil and nothing else could be done until Mazda comes up with a solution."

SECOND AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11444904, December 24, 2021 (2021 Mazda CX-30): "Low engine oil light displayed at 7,030 miles. No leaks detected. Engine consuming oil burning in combustion chamber. Possible engine damage or failure if oil was not quickly refilled."

- NHTSA Complaint No. 11451279, February 9, 2022 (2021 Mazda CX-30): "At about 3,605 miles, I received a low engine oil warning. The car is only 4 months old. When i took the car to the dealer, apparently there is a TSB that was issued in October 2021 about the problem. I bought the car in November was not advised of this issue. At this time, it appears at this time Mazda is unable to determine the root cause. It appears that I am to take the vehicle to the dealer every time I have this experience. I am worried about the potential impact and the lifespan of the engine."

- NHTSA Complaint No. 11459502, April 4, 2022 (2021 Mazda CX-30): "The contact owns a 2021 Mazda CX-30. The contact stated that the low engine oil warning light was illuminated. The contact stated that the app used for alerting vehicle failure also notified the contact of the failure. The failure occurred twice. The dealer was contacted and informed her that it was a known issue however, there was no recall. The contact had not taken the vehicle to the dealer. The vehicle had not been diagnosed or repaired. The manufacturer was not made aware of the failure. The approximate failure mileage 3,100."

- NHTSA Complaint No. 11464803, May 16, 2022 (2021 Mazda CX-30): "Low engine oil after 4630 miles!"

- NHTSA Complaint No. 11466068, May 25, 2022 (2021 Mazda CX-30): "I have the 2.5 liter turbocharged engine in my CX-30. It currently has approximately 18,000 miles after a little over a year of ownership. So far I have had to put in 3 quarts of oil in that time. The engine/low oil indicator comes on about every 4,000 miles. When I check the oil, it shows that it is down a quart. I have taken it in for regular service (oil and filter, tire rotation) twice now, and have brought this to the attention of the service advisor who tells me that this is normal for turbo engines. I disagree with this assessment. I will bring it up again later this week when it goes in for its third service. No new car should consume oil at the rate this one does. I have also observed blue smoke from the exhaust on start-up. I owned another turbo Mazda model a few years ago that did not do this. I have found what appears to be a technical service bulletin from Mazda regarding all turbocharged 2021

models built prior to September 2021. (TSB-01-012-21) My greatest concern is that this will only become worse and end up causing major damage to the engine and/or make the car unsafe to drive."

- NHTSA Complaint No. 11466576, May 29, 2022 (2021 Mazda Mazda3): "Low engine oil warning between oil changes. Burned 3+ quarts between 5000 mile and 10,000 mile service."

- NHTSA Complaint No. 11467570, June 4, 2022 (2021 Mazda CX-30): "Low engine oil pressure light came on forcing me to stop driving the vehicle. Upon investigation, engine oil level was a full quart low of oil, despite no leaks and only having 8000 miles."

- NHTSA Complaint No. 11467878, June 6, 2022 (2021 Mazda CX-5): "Car is burning oil. The low oil level light has come on twice, requiring additional oil be poured into the engine between oil changes. Appears the car is burning oil."

- NHTSA Complaint No. 11467864, June 6, 2022 (2021 Mazda CX-5): "Low engine oil level light & status is coming on for our 2021 Mazda CX-5 turbo. It has 9115 miles and still 1300 miles away from needing oil change. I called our dealership today & was informed we were the 2nd to call today with message. They provided no further info. I have since found there are technical bulletins regarding this issue. Recalls need to be made & Mazda should be covering all repair costs for this."

- NHTSA Complaint No. 11468396, June 9, 2022 (2021 Mazda CX-9): "I purchased this vehicle June 5 2021. The vehicle has approximately 9150 miles at this time. I changed the oil the first time at 3222 miles just because it was new and I wanted to have a starting point on oil changes. The car has an app you load on your cell phone for messages. The first time I received a massage that the engine was low of oil was around 6700 miles. I checked it and it was low with at the add oil mark with 3500 miles driven. I received a second message from the app stating the oil was low. Again, I checked the oil and it was to the add oil level with 9014 miles or only been driven 2300 miles. I have contacted Mazda and will take it to the dealership in a few days, but I am having to add and check the oil ever day or so. There seems to be an oil consumption issue with this engine."

SECOND AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11468850, June 12, 2022 (2021 Mazda CX-30): "Randomly accelerated on its own; burns oil- low oil levels twice in 6 months; randomly says cruise control is available under 25 mph when car is traveling at highway speeds; the unlock and lock functions randomly fail; lift gate randomly opens; alarm system randomly goes off; TERRIBLE fuel economy (18-21 mpg)"

- NHTSA Complaint No. 11469501, June 15, 2022 (2021 Mazda CX-30): "Low engine oil light came on at 8990 miles. Bought vehicle brand new. Has occurred before with this same vehicle. Excessive oil consumption is a known issue with this make/model"

- NHTSA Complaint No. 11469500, June 15, 2022 (2021 Mazda CX-30): "Low engine oil light came on at 4600 miles. Brand new vehicle. Excessive consumption of oil known issue with this make/model"

- NHTSA Complaint No. 11469536, June 16, 2022 (2021 Mazda6): "The issue I am experiencing is one that many are in regards to the oil consumption. My check oil light came on prematurely in regards to the recommended scheduling for these sorts of vehicles, at around 3500 miles approximately. This is a vehicle that experienced this issue under 10k miles."

- NHTSA Complaint No. 11469667, June 16, 2022: "Every 4,000 miles my engine oil warming light comes. When the dealership checked my oil level, it was about a quart low."

- NHTSA Complaint No. 11470053, June 20, 2022 (2021 Mazda CX-30): "Driving home from work today I got a "low engine oil level" alert/warning. First time this has happened. I have approx. 15,500 miles on my vehicle and it was serviced on 3/22/22 (11,828 miles). That service included a full oil and filter change. I see it has been noted that there is an oil leak with this particular vehicle but Mazda has not been able to figure out what is causing it. Just wanted it to be reported"

- NHTSA Complaint No. 11471263, June 27, 2022 (2021 Mazda Mazda3): "Engine is consuming excessive oil. Dealership states there is a TSB out but the fix is to keep topping the oil off. I would like an investigation to determine the root cause of the oil consumption on a new engine."

49

SECOND AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11471507, June 29, 2022 (2021 Mazda Mazda3): "Excess oil consumption in engine. Low light came on around 5,000 miles and dipstick showed engine oil was at the minimum mark."

- NHTSA Complaint No. 11472002, July 1, 2022 (2021 Mazda Mazda3): "My Mazda 3 2.5T has been burning oil in excess. The car has a total of 24,000 miles and has been serviced 3 times. I have had to add oil in between every service. The oil has been completely burned off by 4,000-5,000 miles. I have noticed that other people have been posting about the same issues online. When talking to the dealership they state that they have noticed this issue with the 2.5T's but offer no fix and seem to overfill the engine oil to try and compensate."

- 

- NHTSA Complaint No. 11472485, July 6, 2022 (2021 Mazda Mazda6): "Low engine oil light came on at around 13,700. Last oil change was at 10,000 miles. Checked oil dipstick, oil level slightly below first marker hole."

- 

- NHTSA Complaint No. 11472739, July 7, 2022 (2021 Mazda CX-30): "My car is burning a quart of oil every 1500 miles. I have taken it to the dealer three times. They say that they know about the problem but don't have a fix. I am afraid that the engine could seize up during driving, causing a accident."

- NHTSA Complaint No. 11472913, July 8, 2022 (2021 Mazda CX-5): "On July 4th when car had only 10,300 miles driven on it, oil light came on. Oil level was down over 1.5 quarts. Car was not due for an oil change for another 1800 miles."

- NHTSA Complaint No. 11473433, July 11, 2022 (2021 Mazda CX-5): "July 6, 2021 Low oil light came on and I stopped to check oil and it was down 1quart. Then added oil. Miles on car 28,734. I always have oil changed every 5k miles and this was between oil changes. Happened 3200 miles into my next oil change. Mazda has a TSB out in reference to these engines and the TSB is TSB NO 01-012/21 Dated October 4, 2021. It states that Mazda is aware of the problem and as soon as they identify the root cause a complete repair will be made. I will be bringing vehicle into dealer for an oil comsumption test in the next 1500 miles when my oil change is due. The dealer does know there problems with these engines stated in the TSB. My safety and all others are good. On the Mazda Forum there are many complaints and I mean many complaints on this exact same issue I'm experiencing with this vehicle. People are extremely frustrated and getting

excuses that this is just normal for these engines to use a quart of oil every 3 or 4 k miles. I don't agree and this is not normal."

- 
- NHTSA Complaint No. 11474616, July 21, 2022 (2021 Mazda CX-9): "The low engine oil light is coming on every 3500 miles. When checking oil level it indeed is low and requires a quart of oil. There is an active TSB out as this is a known issue but no recall issued yet".

- NHTSA Complaint No. 11475161, July 21, 2022 (2021 Mazda CX-30): "Excessive oil consumption. I bought this vehicle new from a Mazda dealership, with factory warranty. The check engine oil light came on at approximately 6800 miles, 3750 miles after the first oil change. An additional quart of oil was added. I brought it back to Mazda to confirm no oil leaks, which they confirmed. They were made aware of the Mazda service bulletin for excessive oil consumption, which they acknowledged, but indicated they will monitor as there is no solution from the factory".

- NHTSA Complaint No. 11475740, July 25, 2022 (2021 Mazda CX-5): "Excessive oil consumption NEW 2021 MAZDA CX-5 CARBON ADDITION TURBO - At approximately 7000 miles the low oil light came on, I added oil and got an oil change 2/11/22. At 11000 miles got low engine oil light had to add a full quart on 7/20/22. There are no oil leaks or obvious damage anywhere. I contacted the dealer who stated that they recommend oil changes at 5000 miles though the manual states 7500. If oil is being blown through a gasket or seal it will potentially foul the o2 and emissions sensor, the cylinders, etc. and ruin the engine or cause catastrophic failure."

- NHTSA Complaint No. 11475856, July 26, 2022 (2021 Mazda CX-30): "low oil indicator keeps coming on at 3k miles and 8k miles. some times the oil is slightly low. The manual says to sop driving immediately, but that is not always possible".

- NHTSA Complaint No. 11476654, July 30, 2022 (2021 Mazda CX-30): "I have just about 8800 miles on my Mazda CX-30 Turbo after a year and 5 months. Suddenly had my low oil engine light come on. I pulled over and the oil is barely on the tip of the oil stick. My last oil change, which was also my first, was completed at 4937 miles from the Mazda dealership".

SECOND AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11476871, August 1, 2022 (2021 Mazda CX-5): "Excessive oil consumption. After 3,000 miles driving, need to add a quart of oil as 'oil low' light comes on. Vehicle is 1 year old, and this happened at 3,700 miles on the odometer. Has happened after every oil change at around 3,700-4,200 miles driven".

- NHTSA Complaint No. 11477241, August 2, 2022 (2021 Mazda Mazda3): "At around 3600 Miles my Mazda which I had for only a couple of months displayed a low engine oil light which required a visit to the dealership.This was under normal driving conditions".

- NHTSA Complaint No. 11477445, August 3, 2022 (2021 Mazda CX-30): "The car has been reporting low engine oil numerous times between oil changes".

- NHTSA Complaint No. 11477544, August 4, 2022 (2021 Mazda CX-5): "The contact owns a 2021 Mazda CX-5. The contact stated that the vehicle was consuming an excessive amount of engine oil. The contact stated that after driving for 1,000 miles the vehicle needed an oil change. The oil level warning light would be illuminated. The contact stated that after the vehicle was taken to the dealer the contact was informed that the engine was a quart low on engine oil. The manufacturer was made aware of the failure. The approximate failure mileage was 4,000".

- NHTSA Complaint No. 11477567, August 4, 2022 (2021 Mazda CX-5): "Oil burning and leaking as well after only 14,500 miles. I see there is a Class Action lawsuit filed against Mazda in late May of 2022 regarding faulty oil stem seals that cause oil to leak into the combustion chamber which will eventually cause O2 sensors to fail, catalytic convertors and engine valve failure. Dealer acted like they never knew about this issue and initially told me it was "normal" while the engine breaks in to burn oil. They attributed the "leak" to a faulty oil filter they put on during my recent oil change on July 8. Ridiculous that a brand-new car burns and leaks oil. Massive cover up by Mazda and a recall should be demanded. Apparently, they either do not want to spend 1000's of dollars in recalls or they do not have a fix. Either way, not owning up to this is a travesty and injustice!"

- NHTSA Complaint No. 11477820, August 5, 2022 (2021 Mazda CX-30): "Engine is consuming/burning oil. I have needed to add 1 qt of oil every 3-4k miles, since purchased new. Car now has 25,000 miles and I have added

52

SECOND AMENDED CLASS ACTION COMPLAINT

oil 6 times. Ive called the dealer(Classic Mazda in Mentor Ohio) and they insist this is normal and there is no issue with the engine. Yet, I read on the internet that this is a known problem".

- NHTSA Complaint No. 11477904, August 6, 2022 (2021 Mazda CX-5): "Oil consumption issue with the 2.5T motor. Engine is burning oil at an accelerated rate".

- NHTSA Complaint No. 11477960, August 6, 2022 (2021 Mazda CX-5): "My check oil light has come on 3 times in between my first and 2nd oil changes. Added a total of 1 1/2 quarts between the 3 oil changes. Made the dealership aware of this last week at 2nd oil change. They've begun to monitor my mileage with my oil consumption and I'll go in every 500 miles so they can document".

- NHTSA Complaint No. 11478038, August 7, 2022 (2021 Mazda CX-30): "Oil warning light came in at 5,500 miles. Dealer says they know the engine consumes oil".

- NHTSA Complaint No. 11478909, August 11, 2022 (2021 Mazda CX-5): "Excess oil consumption. Manufacturer recommended oil change interval is 7,500 miles. At 3500 miles a low oil warning light came on and I had to add oil. I changed my oil as recommended at 7500 miles. At 11,000 miles the warning light came on and I had to add oil once again. I am currently just shy of 15,000 miles and I'm getting my oil changed tomorrow. I've read that there is a known valve stem seal issue with these 2021 turbo engines that is causing this. I'm worried that there may be a catastrophic engine failure that could cause me to crash".

- NHTSA Complaint No. 11479891, August 18, 2022 (2021 Mazda CX-5): "Excessive oil consumption on brand new vehicle 1qt after 3800 miles".

- NHTSA Complaint No. 11479972, August 18, 2022 (2021 Mazda CX-30): "engine oil low light coming on within 3000 miles of oil change".

- NHTSA Complaint No. 11480401, August 21, 2022 (2021 Mazda CX-30): "Low engine oil light came on after 3 months of driving. I know this is a common issue on the turbo model, yet there has not been a recall".

SECOND AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11480446, August 21, 2022 (2021 Mazda CX-5): "Engine burns about 1 quart of oil every 5000 miles since new".

- NHTSA Complaint No. 11480499, August 22, 2022 (2021 Mazda CX-30): "Losing/burning oil with no leaking - less than 8,000 miles. Mazda has issued a service bulletin on the issue but offers no actual repair solution. Could be dangerous if engine seizes while in operation".

- NHTSA Complaint No. 11480568, August 22, 2022 (2021 Mazda Mazda3): "The engine is burning oil. Oil and filter were changed at 5000 miles. At about 9000 miles, the engine oil level light came on. Topped off with oil and took to dealer, they confirmed no oil leaks and changed the oil".

- NHTSA Complaint No. 11481480, August 26, 2022 (2021 Mazda CX-5): "Low oil light keeps coming on before it's due. Went to dealer and they gave me a notice of a bulletin. 01-012/21. It states there is an issue where the engine leaks oil faster and could eventually cause engineer damage. They are asking us to come in more frequently for oil changes or to top off. Unknown what the fix is and it's been on multiple new Mazda vehicle types".

- NHTSA Complaint No. 11481621, August 28, 2022 (2021 Mazda CX-5): "Motor using excessive amount of oil. Vehicle has just turned 20,000 miles. Uses a quart of oil every 1500 miles or so."

- NHTSA Complaint No. 11481799, August 29, 2022 (2021 Mazda CX-5): "Car purchased new in 2021. Uses 1quart oil every 3,000 miles. Checked at dealer and assured of no leaks. Service bulletin issued by Mazda acknowledges problem probably due to faulty valve stem seals, but no resolution offerree for clients except "stop by for a quart of oil whenever light comes on!"."

- NHTSA Complaint No. 11481799, August 29, 2022 (2021 Mazda CX-5): "Engine oil consumption - around 2000 miles after oil change".

- NHTSA Complaint No. 11481982, August 30, 2022 (2021 Mazda CX-9): "Massive oil consumption. Uses 1 quart or more of engine oil at around 3,000 miles after oil change. Low oil light comes on..."

SECOND AMENDED CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11482253, August 31, 2022 (2021 Mazda CX-5): "Engine oil light indicated low oil level at 6000 miles. Dealer states there is a TSB on this issue but no repair process is available."

- NHTSA Complaint No. 11480703, September 5, 2022 (2021 Mazda CX-30): "Purchased this car on Saturday August 13th from a dealer. Last weekend on the 20th the low engine level warning came on. We checked the oil and it was at the lowest dot on the dipstick. We added one quart of oil. This car isn't even due for an oil change it shouldn't be losing any oil".

- NHTSA Complaint No. 11482944, September 5, 2022 (2021 Mazda CX-30): "Identified low oil level with 5,500 miles on the odemeter. No leak detected. The car has been babied; no accidents or undercarriage damage".

- NHTSA Complaint No. 11483004, September 6, 2022 (2021 Mazda CX-5): "Vehicle has had excessive oil consumption. Engine consumes approximately one quart of oil every 4k miles or so with normal driving not spirited. Vehicle has no visible signs of outward leaks. First oil change was at 5030 miles with approximately 5.2 quarts of Castrol edge full synthetic oil and a Purolator boss oil filter PLB14612. Vehicle currently has 9352 miles. I have not let it get to a point where oil light comes on, but it has been to the quart low dot on the stick twice so far. This should not be normal. This has not been confirmed by a dealer or independent service center as I maintain the oil checks and oil changes myself. Tailpipes do have black soot inside but is not greasy or oily. I haven't noticed a lot of smoke from tailpipes just a small bit of whitish vapor that quickly dissipates when my wife pulls it out of the driveway and starts off down the road that I contribute to normal condensation, but I nor she can see tailpipes when we are driving a longer distance of course. I haven't smelled oil burn or seen any leaks on driveway, but the oil is going somewhere. I have seen a TSB from Mazda about possible valve stem seal problems with my VIN number. I hope Mazda will resolve this within my warranty as oil consumption can cause other major engine component damage down the road i.e., catalytic convertor, oxygen sensors, carbon deposits, etc".

- NHTSA Complaint No. 11483862, September 11, 2022 (2021 Mazda CX-5): "Low oil light came on 4500 miles after oil change. Engine used nearly 2 quarts of oil quarl in that distance. Engine burning excessive amount of oil. No oil leaks. Burning oil internally. Reported to dealer".

55

- NHTSA Complaint No. 11484945, September 17, 2022 (2021 Mazda CX-30): "Continuous oil loss from engine. No leaks but oil level diminishes and warning lights come on monthly".

- NHTSA Complaint No. 11485117, September 18, 2022 (2021 Mazda CX-5): "Detected slight odor of burning oil while highway driving, mileage approximately 8,650. Three days later "low oil level" warning light lit up, mileage 8928. Allowed car to rest and checked oil level manually. Oil level was slightly above the minimum required. No signs of oil on garage floor".

- NHTSA Complaint No. 11485224, September 19, 2022 (2021 Mazda Mazda3): "After roughly 2,000 miles of driving, the low oil light comes on. The engine is burning oil. Mazda has issued a TSB on it, but they have taken no action to fix the issue. Right now they just top off the oil".

- NHTSA Complaint No. 11485228, September 19, 2022 (2021 Mazda Mazda6): "The engine oil low light has illuminated multiple times. I verified that there is no external engine oil leak. I have added oil and driven it for a couple thousand miles and the light is now on again. The car is brand new and should not be burning oil. Its a known issue as Mazda has a service bulletin but no fix for it. This is the bulletin number TSB-01-012/21."

- NHTSA Complaint No. 11486085, September 23, 2022 (2021 Mazda CX-30): "Low Engine Oil displayed on dashboard after only a couple thousand miles/four months from last oil change service. Known issue with this year/model for a year (https://static.nhtsa.gov/odi/tsbs/2021/MC-10203724-0001.pdf), but no recall or fix has been offered other than topping off or changing the oil. The dealer did top off the oil for free as the notice says".

- NHTSA Complaint No. 11488125, October 6, 2022 (2021 Mazda CX-30): "Purchased Mazda CX-30 Turbo car new March 31, 2021, in Jan 2022 low oil light came on with only 5,000 miles. Dealer noted it was 1 qt low. Just prior to reaching 10,000 miles the low oil light came on again. This car is burning oil with normal driving; primarily from rural area into town 15 min away or freeway driving. This creates an unsafe situation with parts and engine failure".

- NHTSA Complaint No. 11489086, October 13, 2022 (2021 Mazda CX-5): "My car appears to consuming oil excessively. I bought this car new in March of 2021 at I have had to top off my oil between oil changes at almost every

56

single oil change since I have owned it. The car only has 33900 miles on it and usually about two months in from my oil change the check oil light comes on and the dipstick shows the oil at the lower end of the dipstick. I have purchased oil on my own and have had to have the dealer top it off. After topped off it will usually make it fine until my next oil change but a brand new car should not be burning oil like this and I was told they have known about a valve stem defect since September of 2021 but still have not done a recall or have a fix for it".

- NHTSA Complaint No. 11489693, October 18, 2022 (2021 Mazda Mazda6): "Vehicle displays low engine oil light about every 1,000 miles due to burning oil from faulty valve stem seals from factory assembly. Mazda has acknowledged the defect but plans to only refill engine oil. The defect could lead to possible injury due to low oil which could cause the engine to seize and cause sudden loss of power".

- NHTSA Complaint No. 11489931, October 19, 2022 (2021 Mazda CX-5): "Excessive oil consumption. Confirmed by the dealer."

- NHTSA Complaint No. 11490237, October 20, 2022 (2021 Mazda CX-9): "1000 miles before first ever oil change was needed (according to window sticker provided by Mazda) the low engine oil light came on. The oil was low and needed to be topped off and brought directly to dealer for oil change. The same thing happened again 1300 miles before second oil change was required. It became obvious that the brand new vehicle was burning oil for some reason. The dealership tried to tell us that it was because the car was a turbo. We weren't buying it and told them we wanted it looked at. After brining it into the dealer they mentioned that Mazda had a bulletin for a valve seal fix that might help it stop burning oil. So they admitted that yes it was burning oil. After googling the bulletin I realized that our vehicle is having the same problems that many others with 2021 Mazdas (certain production period) are having. There is currently no recall however there is proof that these problems are damaging our vehicle, putting my wife and children at risk every time they get in the car and Mazda is doing nothing about it. There is also proof that these gases from the burnt oil are damaging other engine systems further increasing the likelihood of an engine failure. Down the road. Chances are this damage is already done, despite this valve seal repair".

- NHTSA Complaint No. 11490284, October 21, 2022 (2021 Mazda CX-5): "Car is consuming oil since new and requiring additional oil to be added

57

before oil changes. There was a TSB created by Mazda a year ago (TSB # 01-012/21) however there is no fix. I am concerned with the potential for damage to other engine systems aside from the reported issue with the valve stem seals resulting in undrivability and premature engine problems due to oil leaking past the valve stem seals".

- NHTSA Complaint No. 11490413, October 22, 2022 (2021 Mazda CX-30): "The Low Oil Level light/sensor came on before it was time to get an oil change (the recommended 4600 miles). This is super dangerous as it can cause major engine issues. I took it to the dealership and the dealership stated "they are having problems with these cars-they are burning too much oil so there is going to be a replacement valve once they have one made and you'll need to come back in to have it replaced -it will be a big job since it's part of the engine".

153.   Although Mazda was aware of the widespread nature of the Valve Stem Seal Defect in the Class Vehicles, Mazda has failed to take adequate steps to notify all Class Vehicles owners of the Defect and provide relief.

154.   Customers have reported the Valve Stem Seal Defect in the Class Vehicles to Mazda directly and through its dealers.  Defendant is fully aware of the Valve Stem Seal Defect contained in the Class Vehicles.  Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendant:

      a.  failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Valve Stem Seal Defect;

58

b.  failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their valve stem seals were not in good working order, were defective, and were not fit for their intended purpose; and

c.  failed to disclose and/or actively concealed the fact that the Class Vehicles and valve stem seals were defective, despite the fact that Defendant learned of the Valve Stem Seal Defect by at least early 2020.

155.    Defendant has deprived Class Members of the benefit of their bargain, exposed them all to the Valve Stem Seal Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Valve Stem Seal Defect contained in the Class Vehicles.

156.    Defendant has not recalled the Class Vehicles to repair the Valve Stem Seal Defect, has not offered to its customers a suitable repair or replacement of parts related to the Valve Stem Seal Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Valve Stem Seal Defect.

157.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

158.    As a result of the Valve Stem Seal Defect, the value of the Class Vehicles has diminished, including, without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that their vehicles will not contain serious defects with the vehicles' engines and that they will not need to add

additional engine oil to their vehicles in between recommended oil change intervals in order to avoid engine failure.  Plaintiffs and Class Members further expect and assume that Mazda will not sell or lease vehicles with known material defects, such as the Valve Stem Seal Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that Mazda would fail to disclose the Valve Stem Seal Defect to them, and then fail to repair the Defect within a reasonable period of time under Mazda's warranty.

**CLASS ACTION ALLEGATIONS**

**A.  The Classes**

159.   Plaintiffs bring this action on behalf of themselves and the following classes:

> **Nationwide Class:** All persons or entities in the United States who are current or former owners and/or lessees of a 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicle.

> **California Sub-Class:** All persons or entities who purchased or leased any 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicle in the State of California (the "California Class")

> **Florida Sub-Class:** All persons or entities who purchased or leased any 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicle in the State of Florida (the "Florida Class")

SECOND AMENDED CLASS ACTION COMPLAINT

**Illinois Sub-Class:** All persons or entities who purchased or leased any 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicle in the State of Illinois (the "Illinois Class")

**Washington Sub-Class:** All persons or entities who purchased or leased any 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicle in the State of Washington (the "Washington Class")

**Tennessee Sub-Class:** All persons or entities who purchased or leased any 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 vehicle in the State of Tennessee (the "Tennessee Class")

160.   Defendant and its employees or agents are excluded from the Classes.

## B. Numerosity

161.   Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout California, Illinois, Florida, Tennessee and Washington.

## C. Common Questions of Law and Fact

162.   There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

a.     whether the Class Vehicles suffer from the Valve Stem Seal Defect;

61

b.    whether the Valve Stem Seal Defect constitutes a material defect that substantially impairs the vehicle's use and value;

c.    whether Defendant knows about the Valve Stem Seal Defect and, if so, how long Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' valve stem seals constitutes a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles, including their defective valve stem seals and the vehicles' resulting excess consumption of engine oil, to Plaintiffs and the other Class Members;

f.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.    whether Defendant knew or reasonably should have known of the Valve Stem Seal Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.    Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and whether Defendant violated the Washington Consumer Protection Act, RCW 19.86, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.,* the Tennessee

62

Consumer Protection Act, Tenn. Code § 47-18-101, *et seq.*, the California

Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*; and the

Magnuson-Moss Warranty Act, as alleged in this Complaint.

### D.  **Typicality**

163.  The Plaintiffs' claims are typical of the claims of the Classes since

Plaintiffs each purchased or leased a defective Class Vehicle, as did each member of

the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained

economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are

advancing the same claims and legal theories on behalf of himself and all absent Class

members.

### E.  **Protecting the Interests of the Class Members**

164.  Plaintiffs will fairly and adequately protect the interests of the Class and

have retained counsel experienced in handling class actions and claims involving

unlawful business practices.  Neither Plaintiffs nor their  counsel has any interest

which might cause them not to vigorously pursue this action.

### F.  **Proceeding Via Class Action is Superior and Advisable**

165.  A class action is the superior method for the fair and efficient

adjudication of this controversy.  The injury suffered by each individual Class

member is relatively small in comparison to the burden and expense of individual

prosecution of the complex and extensive litigation necessitated by Defendant's

conduct.  It would be virtually impossible for members of the Class individually to

63

redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

166.   Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION
### Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

**(Plaintiffs on behalf of the Nationwide Class or in the alternative the California, Florida, Illinois, Tennessee, and Washington Sub-Classes)**

167.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

168.   Plaintiffs and members of the Classes are each a "consumer" as defined in 15 U.S.C. § 2301(3).

64

169.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

170.    The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

171.    15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiffs and Class members.

172.    The Defendant's sale of the defective Class Vehicles and its failure and/or refusal to repair the Class Vehicles' Valve Stem Seal Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

173.    Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

174.    As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damaged.

SECOND AMENDED CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
### Fraudulent Concealment

**(Plaintiffs on behalf of the Nationwide Class or in the alternative the California, Florida, Illinois, Tennessee, and Washington Sub-Classes)**

175.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

176.   By failing to disclose and concealing the defective nature of the Class Vehicles' valve stem seals and the resulting excess engine oil consumption from Plaintiffs and Class Members, Mazda concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

177.   Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

178.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles, including the defective engines and valve stem seals, and/or the associated repair costs because:

a.   Defendant was in a superior position to know the true state of facts about the material Vale Stem Seal Defect contained in the Class Vehicles' engines;

b.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that vehicles' engines have a defect until after they

66

purchased the Class Vehicles; and

c.    Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

179.   On information and belief, Mazda still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Valve Stem Seal Defect and the performance and quality of Class Vehicles.

180.   The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

181.   Plaintiffs and the Class relied on Defendant to disclose material information it knew, such as the existence of the Valve Stem Seal Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

182.   By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

183.   The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

67

184.   Had Plaintiffs and other Class Members known that the Class Vehicles' engines and valve stem seals were defective, they would not have purchased the Class Vehicles or would have paid less for them.

185.   Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, consume an excessive amount of engine oil in between oil changes, or suffer from premature engine damage and failures.  That is the reasonable and objective consumer expectation for vehicles.

186.   As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

187.   Accordingly, Mazda is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

188.   Mazda's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Mazda.  Mazda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

189.   Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Mazda has profited and benefited from Plaintiffs' and Class

Members' purchase of Class Vehicles containing the Valve Stem Seal Defect. Mazda has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Mazda's misconduct alleged herein, Plaintiffs and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Mazda, and that a reasonable consumer would expect.

190.    Mazda has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Mazda to retain these profits and benefits, and Mazda should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

### THIRD CAUSE OF ACTION
### Unjust Enrichment

### (Plaintiffs on behalf of the Nationwide Class or in the alternative the California, Florida, Illinois, Tennessee, and Washington Sub-Classes)

191.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

192.    Mazda has long known that about the Valve Stem Seal Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

193.    As a result of its fraudulent acts and omissions related to the Valve Stem Seal Defect, Mazda obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

69

194.    Mazda appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Valve Stem Seal Defect, paid a higher price for their vehicles which actually had lower values.  Mazda also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

195.    It would be inequitable and unjust for Mazda to retain these wrongfully obtained profits.

196.    Mazda's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

197.    As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

198.    Plaintiffs does not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

199.    Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with the misleading information; compelling Defendant to provide Class members with adequate repairs and/or replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its

70

warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## FOURTH CAUSE OF ACTION
### Violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.*

### (Plaintiffs Guthrie and Woo on behalf of the Washington Sub-Class)

200.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

201.   The Washington Consumer Protection Act, RCW 19.86.020 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

202.   Plaintiffs Guthrie and Woo, Defendant, and the Washington Class Members are each "persons" under RCW 19.86.010(1).

203.   At all relevant times, Defendant has engaged in "trade" and "commerce" under RCW 19.86.010(2) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the state of Washington.

204.   The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Washington Consumer Protection Act.

205.   By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiff Guthrie and Washington Class

71

Members, Defendant violated the Washington Consumer Protection Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

206.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and affect the public interest.

207.    Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

208.    Defendant was under a duty to Plaintiffs Guthrie and Woo and the Washington Class Members to disclose the defective nature of the Class Vehicles' engines and valve stem seals, the symptoms of such defects and/or the associated repair costs because:

   a.    Defendant was in a superior position to know the true state of facts about the material Valve Stem Seal Defect contained in the Class Vehicles;

   b.    Plaintiffs Guthrie and Woo and the Washington Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a material defect that substantially impairs the vehicle's use

72

and value until after they purchased the Class Vehicles; and,

c.    Defendant knew that Plaintiffs Guthrie and Woo and the Washington Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

209.    The facts concealed or not disclosed by Defendant to Plaintiffs Guthrie and Woo and Washington Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

210.    Plaintiffs Guthrie and Woo and the Washington Class relied on Defendant to disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

211.    By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

212.    Moreover, Defendant's intentional concealment of and failure to disclose the Valve Stem Seal Defect took advantage of Plaintiffs Guthrie and Woo and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.

213.    The facts concealed or not disclosed by Defendant to Plaintiffs Guthrie and Woo and the other Washington Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

73

214.   Had Plaintiffs Guthrie and Woo and other Washington Class Members known that the Class Vehicles suffer from the Valve Steam Seal Defect, they would not have purchased the Class Vehicles or would have paid less for them.

215.   Plaintiffs Guthrie and Woo and the other Washington Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure.  That is the reasonable and objective consumer expectation for vehicles.

216.   As a result of Defendant's misconduct, Plaintiffs Guthrie and Woo and the other Washington Class Members have been harmed and have suffered actual and economic injuries and damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

217.   Plaintiffs Guthrie and Woo has provided adequate notice to Defendant.

218.   Plaintiffs Guthrie and Woo and the Washington Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles

## FIFTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to RCW 62A.2-313

### (Plaintiffs Guthrie and Woo on behalf of the Washington Sub-Class)

219.   Plaintiffs incorporate by reference all allegations contained in this

74

Complaint as though fully stated herein.

220.    In connection with the sale or lease of the Class Vehicles to Plaintiffs Guthrie and Woo and Washington Class Members, Mazda provided Plaintiffs Guthrie and Woo and Washington Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiffs Guthrie and Woo and Washington Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

221.    Plaintiffs Guthrie and Woo and Washington Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

222.    The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

223.    Plaintiffs Guthrie and Woo and the Washington Class Members submitted their Vehicles for warranty repairs as referenced herein and within the relevant warranty periods.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Valve Stem Seal Defect under the vehicle's warranty as described herein.

75

224.   Plaintiffs Guthrie and Woo and Washington Class Members have given Defendant reasonable opportunities to cure the Valve Stem Seal Defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

225.   As a result of said nonconformities, Plaintiffs Guthrie and Woo and Washington Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

226.   Plaintiffs Guthrie and Woo and Washington Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs Guthrie and Woo's and Washington Class Members' acceptance of the Class Vehicles.

227.   Plaintiffs Guthrie and Woo and Washington Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Valve Stem Seal Defect.

228.   As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiffs Guthrie and Woo and Washington Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

76

# SIXTH CAUSE OF ACTION
## Violation of Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.*

### (Plaintiffs Crain and Zelaya on behalf of the Florida Class)

229.  Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

230.  Plaintiffs Crain and Zelaya and Florida Class Members are each an "interested party or person" and "consumer" as defined by F.S.A. 501.203(6) and (7) respectively.

231.  At all relevant times, Defendant has engaged in "Trade" and "Commerce" as defined by F.S.A. 501.203(8) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Florida, directly or indirectly affecting Florida citizens though that trade and commerce.

232.  The allegations set forth herein constitute false, misleading, unlawful or deceptive trade practice under F.S.A. 501.201, et seq.

233.  By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiffs Crain and Zelaya and Florida Class Members, Defendant violated the Florida Deceptive and Unfair Trade Practices Act, as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

77

234.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

235.   Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

236.   Defendant was under a duty to Plaintiffs Crain and Zelaya and the Florida Class Members to disclose the defective nature of the Class Vehicles' engines and valve stem seals, the symptoms of such defects and/or the associated repair costs because:

   a.   Defendant was in a superior position to know the true state of facts about the Valve Stem Seal Defect contained in the Class Vehicles;

   b.   Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

   c.   Plaintiffs Crain and Zelaya and the Florida Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a material defect that substantially impairs the vehicle's use and value until after they purchased the Class Vehicles; and

   d.   Defendant knew that Plaintiffs Crain and Zelaya and the Florida Class

78

Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

237.    The facts concealed or not disclosed by Defendant to Plaintiffs Crain and Zelaya and Florida Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

238.    Plaintiffs Crain and Zelaya and the Florida Class relied on Defendant to disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles and not to induce them into a transaction into which they would not have entered had the Defendant disclosed this information.

239.    By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

240.    Moreover, Defendant's intentional concealment of and failure to disclose the Valve Stem Seal Defect took advantage of Plaintiffs Crain and Zelaya and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.

241.    The facts concealed or not disclosed by Defendant to Plaintiffs Crain and Zelaya and the other Florida Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

242.    Had Plaintiffs Crain and Zelaya and other Florida Class Members known that the Class Vehicles suffer from the Valve Steam Seal Defect, they would not have

79

purchased the Class Vehicles or would have paid less for them.

243.   Plaintiffs Crain and Zelaya and the other Florida Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure.  That is the reasonable and objective consumer expectation for vehicles.

244.   As a result of Defendant's misconduct, Plaintiffs Crain and Zelaya and Florida Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Valve Stem Seal Defect.

245.   Plaintiffs Crain and Zelaya have each provided adequate notice to Defendant.

246.   Plaintiffs Crain and Zelaya and the Florida Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

## SEVENTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to F.S.A. § 672.313

### (Plaintiffs Crain and Zelaya on behalf of the Florida Class)

247.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

80

SECOND AMENDED CLASS ACTION COMPLAINT

248.   In connection with the sale or lease of the Class Vehicles to Plaintiffs Crain and Zelaya and Florida Class Members, Mazda provided Plaintiffs Crain and Zelaya and Florida Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiffs Crain and Zelaya and Florida Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

249.   Plaintiffs Crain and Zelaya and Florida Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

250.   The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

251.   Plaintiffs Crain and Zelaya and Florida Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Valve Stem Seal Defect under the vehicle's warranty within a reasonable period of time as described herein.

252.   Plaintiffs Crain and Zelaya and Florida Class Members have given Defendant reasonable opportunities to cure the Valve Stem Seal Defect plaguing, but

Defendant has been unable and/or has refused to do so within a reasonable period of time.

253.    As a result of said nonconformities, Plaintiffs Crain and Zelaya and Florida Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

254.    Plaintiffs Crain and Zelaya and Florida Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs Crain and Zelaya and Florida Class Members' acceptance of the Class Vehicles.

255.    As a result of Defendant's breach of express warranties, Plaintiffs Crain and Zelaya and Florida Class Vehicle owners have been damaged.

## EIGHTH CAUSE OF ACTION
### Violation of the Tennessee Consumer Protection Act,
### Tenn. Code § 47-18-101, *et seq.*

### (Plaintiff Hinton on behalf of the Tennessee Class)

256.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

257.    Plaintiff Hinton and the Tennessee Class Members are each "consumers" under Tenn. Code § 47-18-103(3).

258.    Plaintiff Hinton, the Tennessee Class Members, and Defendant are each "persons" under Tenn. Code § 47-18-103(14).

82

259.   The Class Vehicles are each "goods" under Tenn. Code § 47-18-103(8) as they are "tangible chattels leased, bought, or otherwise obtained for use by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity."

260.   At all relevant times, Defendant has engaged in "trade," "commerce" and "consumer transactions" under Tenn. Code § 47-18-103(20) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Tennessee, directly or indirectly affecting Tennessee citizens through that trade and commerce.

261.   The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, et seq.

262.   By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiff Hinton and the Tennessee Class Members, Defendant violated the Tennessee Consumer Protection Act, because, inter alia, Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

263.   Defendant's unfair and deceptive acts and practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion

83

of the purchasing public.

264.    Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

265.    Defendant was under a duty to Plaintiff Hinton and the Tennessee Class Members to disclose the Valve Stem Seal Defect because:

a.    Defendant was in a superior position to know the true state of facts about the Valve Stem Seal Defect contained in the Class Vehicles;

b.    Plaintiff Hinton and the Tennessee Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a material defect  that substantially impairs the vehicle's use and value until after they purchased the Class Vehicles; and,

c.    Defendant knew that Plaintiff Hinton and the Tennessee Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

266.    The facts concealed or not disclosed by Defendant to Plaintiff Hinton and the Tennessee Class Members s are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

267.    Plaintiff Hinton and the Tennessee Class Members relied on Defendant to

84

disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

268. By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

269. Moreover, Defendant's intentional concealment of and failure to disclose the Valve Stem Seal Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Hinton and the Tennessee Class Members, that conduct took advantage of Plaintiff Hinton and the Tennessee Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Hinton and the Tennessee Class Members.

270. The facts concealed or not disclosed by Defendant to Plaintiff Hinton and the Tennessee Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

271. Had Plaintiff Hinton and the Tennessee Class Members known that the Class Vehicles would suffer from the Valve Stem Seal Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

272. Plaintiff Hinton and the Tennessee Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Valve Stem Seal

85

Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure. That is the reasonable and objective consumer expectation for vehicles.

273. As a result of Defendant's misconduct, Plaintiff Hinton and the Tennessee Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

274. Plaintiff Hinton has provided adequate notice to Defendant.

275. Plaintiff Hinton and the Tennessee Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

## NINTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Tenn. Code § 47-2-313

### (Plaintiff Hinton on behalf of the Tennessee Class)

276. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

277. In connection with the sale or lease of the Class Vehicles to Plaintiff Hinton and Tennessee Class Members, Mazda provided Plaintiff Hinton and Tennessee Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000

86

miles in service, whichever comes first.  In addition, Mazda provided Plaintiff Hinton and Tennessee Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

278.   Plaintiff Hinton and Tennessee Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

279.   The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

280.   Plaintiff Hinton and Tennessee Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Valve Stem Seal Defect under the vehicle's warranty within a reasonable period of time as described herein.

281.   Plaintiff Hinton and Tennessee Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

282.   As a result of said nonconformities, Plaintiff Hinton and Tennessee Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

283.   Plaintiff Hinton and Tennessee Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Hinton and Tennessee Class Members' acceptance of the Class Vehicles.

284.   Plaintiff Hinton and Tennessee Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Valve Stem Seal Defect.

285.   As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Hinton and Tennessee Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## TENTH CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act,**
**Cal. Civil Code §§ 1750, *et seq.***
**(Plaintiff Gilinets on behalf of the California Class)**

286.   Plaintiffs incorporate by reference all of the above paragraphs of this complaint as though fully stated herein.

287.   The California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq. ("CLRA") prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for

88

personal, family, or household purposes.  The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection. Cal. Civil Code § 1760.

288.    Defendant is a "person" as defined in Cal. Civil Code § 1761(c).

289.    Plaintiff Gilinets and the California Class Members are "consumers" as defined in Cal. Civil Code § 1761(d).

290.    The Class Vehicles constitute "goods" and "services," as defined by Cal. Civ. Code § 1761(a) and (b).

291.    Plaintiff Gilinets and California Class Members' purchases or leases of the Class Vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

292.    Plaintiff Gilinets and California Class Members purchased or leased the Class Vehicles for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

293.    Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the conduct at issue occurred in this District.

294.    Defendant violated California Civil Code § 1770(a)(5), (7), (14), and (16) when it sold or leased Plaintiff Gilinets and California Class Members the Class Vehicles with knowledge that they contained the Valve Stem Seal Defect and knowingly concealed said defects from Plaintiff Gilinets and California Class Members with the intent that they rely upon Defendant's concealment.

295.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

296.   Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

297.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective.  The existence of the Valve Stem Seal Defect, which manifests in all or substantially all of the Class Vehicles, is material in that a reasonable person would have considered it to be important in deciding whether or not to purchase the Class Vehicles.

298.   In purchasing or leasing the Class Vehicles, Plaintiff Gilinets and Class Members were deceived by Defendant's failure to disclose the Valve Stem Seal Defect.

299.   Defendant owed Plaintiff Gilinets and California Class Members a duty to disclose the defective nature of the Class Vehicles' engines and valve stem seals, the symptoms of such defects and/or the associated repair costs because:

a.   Defendant was in a superior position to know the true state of facts about the Valve Stem Seal Defect contained in the Class Vehicles;

b.   Defendant knew that the Class Vehicles suffered from an inherent defect,

90

were defectively manufactured, and were not suitable for their intended use;

c.   Plaintiff Gilinets and the California Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a material defect that substantially impairs the vehicle's use and value until after they purchased the Class Vehicles; and

d.   Defendant knew that Plaintiff Gilinets and the California Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

300.   Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with the intent to mislead Plaintiff Gilinets and Class Members.

301.   Plaintiff Gilinets and Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

302.   Plaintiff Gilinets and Class Members were unaware of the Valve Stem Seal Defect at the time of sale and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

303.   Plaintiff Gilinets and Class Members are reasonable consumers who do not expect their vehicles to suffer from the Valve Stem Seal Defect.

91

304.    The facts Defendant concealed from or failed to disclose to Plaintiff Gilinets and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles.  Had Plaintiff Gilinets and Class Members known that the Class Vehicles suffered from the Valve Stem Seal Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.

305.    Defendant continued to conceal the defective nature of the Class Vehicles even after the Class Members began to report problems.

306.    Defendant's conduct was and is likely to deceive consumers.

307.    Defendant's acts, conduct and practices were unlawful, in that they constituted:

        a.  Violations of the California Consumer Legal Remedies Act;

        b.  Violations of the Song-Beverly Consumer Warranty Act; and

        c.  Violations of the express warranty provisions of California Commercial Code section 2313.

308.    By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

309.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

310.    As a direct and proximate result of Defendant's unfair and deceptive

92

practices, Plaintiff Gilinets and Class Members have suffered and will continue to suffer actual damages.

311.   The Class Vehicles are worth less with the Valve Stem Seal Defect.

312.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiff Gilinets and Class Members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

313.   Further, Plaintiff Gilinets seeks an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money Plaintiff Gilinets and Class Members paid for the Class Vehicles and/or restitutionary disgorgement of profits from Defendant.  Plaintiffs also seek attorneys' fees and costs under Cal Code Civ. Proc. § 1021.5.

## TWELFTH CAUSE OF ACTION
### Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*
### (Plaintiff Gilinets on behalf of the California Class)

314.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

315.   Defendant is a merchant with respect to motor vehicles.

316.   The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Gilinets and Class Members.

317.   An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

93

318.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Gilinets and the California class members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Valve Stem Seal Defect that can result in unpredictable engine oil consumption, damage to the vehicle including engine failure and can make driving unreasonably unreliable and dangerous.

319.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### THIRTEENTH CAUSE OF ACTION
### Breach of Express Warranty under Cal. Comm. Code § 2313
### (Plaintiff Gilinets on behalf of the California Class)

320.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

321.    In connection with the sale or lease of the Class Vehicles to Plaintiff Gilinets and members of the Class, Defendant provided Plaintiff Plaintiff Gilinets and

94

Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiff Gilinets and California Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

322.   Plaintiff Gilinets and Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

323.   The Class Vehicles' defective engines, including the defective valve steam seals, are covered by Mazda's New Vehicle Limited Warranty and its Powertrain Limited Warranty.

324.   Defendant breached these express warranties in that the Class Vehicles suffer from the above-described Valve Stem Seal Defect, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Gilinets and Class Members, but Defendant has failed to repair the Defect under its warranty within a reasonable period of time.

325.   Plaintiff Gilinets and Class Members have given Defendant reasonable opportunities to cure said defects under Defendant's warranty, but Defendant has failed or refused to repair the Defect within a reasonable period of time.

326.   As a result of said nonconformities, Plaintiff Gilinets and Class Members

cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

327.    Plaintiff Gilinets and California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

328.    As a result of Defendant's breach of express warranties, Plaintiff Gilinets and Class Members have been damaged.

## FOURTEENTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Song-Beverly Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2, *et seq.*
### (Plaintiff Gilinets on behalf of the California Class)

329.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

330.    Plaintiff Gilinets and California Class Members are each a "buyer" as defined in Cal. Civ. Code § 1791(b).

331.    Defendant is a "manufacturer" as defined in Cal. Civ. Code § 1791(j).

332.    The Class Vehicles are each a "consumer good" as defined in Cal. Civ. Code § 1791(a).

333.    Cal. Civ. Code § 1794 provides a cause of action for any consumer who is damaged by the failure of a manufacturer to comply with an express warranty.

334.    In connection with the sale or lease of the Class Vehicles to Plaintiff Gilinets and Class Members, Defendant provided Plaintiff Gilinets and Class

SECOND AMENDED CLASS ACTION COMPLAINT

Members with express warranties within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

335.    Plaintiff Gilinets and California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

336.    Plaintiff Gilinets and Class Members have given Defendant reasonable opportunities to cure the Valve Stem Seal Defect in their vehicles, but Defendant has been unable to do so within a reasonable time.

337.    As a result of said nonconformities, Plaintiff Gilinets and Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

338.    Plaintiff Gilinets and Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Gilinets and Class Members' acceptance of the Class Vehicles.

339.    Plaintiff Gilinets and Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the Class Vehicles suffered from the Valve Stem Seal Defect.

340.    As a result of Defendant's breach of express warranties, Plaintiff Gilinets and California Class Members have been damaged.

97

## FIFTEENTH CAUSE OF ACTION
### Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 ILCS 505/1, ET SEQ. and 720 ILCS 295/1A)
### (Plaintiff Knysz on behalf of the Illinois Class)

341.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

342.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

343.   Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

344.   Plaintiff Knysz and Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

345.   The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices.

346.   By failing to disclose and concealing the defective nature of the Class Vehicles' engines and valve stem seals from Plaintiff Knysz and Illinois Class Members, Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular

98

standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

347.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

348.   Defendant knew that the Class Vehicles' engines, and specifically the valve stem seals, suffered from an inherent defect, were defectively manufactured or made, would become damaged and fail prematurely in the course of vehicles' ordinary use, and were not suitable for their intended use.

349.   Defendant was under a duty to Plaintiff Knysz and the Illinois Class Members to disclose the defective nature of the Class Vehicles' engines and valve stem seals, the symptoms of such defects and/or the associated repair costs because:

a.   Defendant was in a superior position to know the true state of facts about the Valve Stem Seal Defect contained in the Class Vehicles;

b.   Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

c.   Plaintiff Knysz and the Illinois Class Members could not reasonably have been expected to learn or discover that their vehicles' engines have a material defect that substantially impairs the vehicle's use and value and until after they purchased the Class Vehicles; and

99

d.    Defendant knew that Plaintiff Knysz and the Illinois Class Members could not reasonably have been expected to learn about or discover the Valve Stem Seal Defect.

350.    The facts concealed or not disclosed by Defendant to Plaintiffs Knysz and Illinois Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

351.    Plaintiff Knysz and the Illinois Class relied on Defendant to disclose material information it knew, such as the defective nature of the engines and valve stem seals in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

352.    By failing to disclose the Valve Stem Seal Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

353.    The facts concealed or not disclosed by Defendant to Plaintiff Knysz and the Illinois Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

354.    Had Plaintiff Knysz and Illinois Class Members known that the Class Vehicles suffer from the Valve Steam Seal Defect, they would not have purchased the Class Vehicles or would have paid less for them.

355.    Plaintiff Knysz and the Illinois Class Members are reasonable consumers

who do not expect that their vehicles will suffer from a Valve Stem Seal Defect, do not expect that they will have to add quarts of engine oil to their vehicles in between recommended oil change intervals, and do not expect their vehicles will experience premature engine damage and failure.  That is the reasonable and objective consumer expectation for vehicles and their engines.

356.   As a result of Defendant's misconduct, Plaintiff Knysz and the Illinois Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Valve Stem Seal Defect.

357.   Plaintiff Knysz has provided adequate notice to Defendant.

358.   Plaintiff Knysz and the Illinois Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

**SIXTEENTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability Pursuant to**
**810 ILCS §§ 5/2-314 and 5/2A-212**
**(Plaintiff Knysz on behalf of the Illinois Class)**

359.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

360.   Defendant was at all relevant times a "merchant" with respect to motor vehicles under 810 ILCS §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

SECOND AMENDED CLASS ACTION COMPLAINT

361.    The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS §§ 5/2-105(1) and 5/2A-103(1)(h).

362.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 ILCS §§ 28-2-314 and 28-12-212.

363.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

364.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Knysz and the Illinois class members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Valve Stem Seal Defect that can result in unpredictable engine oil consumption, damage to the vehicle including engine failure and can make driving unreasonably unreliable and dangerous.

365.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable

102

quality and fit for such use.

## SEVENTEENTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to 810 Ill. Comp. Stat. Ann. 5/2-313
### (Plaintiff Knysz on behalf of the Illinois Class)

366.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

367.   In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Knysz and the Illinois class members with a New Vehicle Limited Warranty, under which it agreed to repair or replace defective components within the first 36 months or 36,000 miles in service, whichever comes first.  In addition, Mazda provided Plaintiff Knysz and Illinois Class Members with a Powertrain Limited Warranty, under which it agreed to repair or replace defective powertrain components within the first 60 months or 60,000 miles, whichever comes first.

368.   Plaintiff Knysz and the Illinois Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

369.   Plaintiff Knysz and the Illinois Class members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Valve Stem Seal Defect under the vehicle's warranty within a reasonable period of time as described herein.

370.   Plaintiff Knysz and the Illinois Class members have given Defendant

reasonable opportunities to cure the Valve Stem Seal Defect plaguing, but Defendant has been unable and/or has refused to do so within a reasonable period of time.

371.   As a result of said nonconformities, Plaintiff Knysz and the Illinois Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

372.   Plaintiff Knysz and the Illinois Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

373.   As a result of Defendant's breach of express warranties, Plaintiff Knysz and Illinois Class Vehicle owners have been damaged.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendant as follows:

a.   An order certifying the proposed Classes, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

b.   An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.   An order awarding Plaintiffs and the Classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f. Reasonable attorneys' fees and costs;

g. Pre-judgment and post-judgment interest, as provided by law;

h. Plaintiffs demand that Defendant perform a recall and repair all Class Vehicles; and

i. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  October 31, 2022

By:  _/s/  Trinette G. Kent_
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiffs*

SECOND AMENDED CLASS ACTION COMPLAINT