# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| FRANCIS J. FARINA, | | |
| | Plaintiff, | Civil Action No.  3:23-cv-00050 |
| vs. | | |
| MAZDA MOTOR OF AMERICA, INC. and KEFFER MAZDA, | | |
| | Defendants. | |

**Brief in Support of Joint Motion to Dismiss, Stay, or Transfer on behalf of Defendants Mazda Motor of America, Inc. d/b/a Mazda North American Operations & Lake Norman Auto Mall, LLC d/b/a Keffer Mazda**

## Introduction

Plaintiff Francis J. Farina brought this putative class action on behalf of himself and a putative class of current and former owners and lessees of 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicles (the Subject Vehicles), against defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations (MNAO) and defendant Lake Norman Auto Mall, LLC d/b/a Keffer Mazda (Keffer Mazda), on behalf of itself and a putative defendant class of similarly situated Mazda dealerships—i.e., a "defendant class action." (Dkt. 29 (First Am. Compl. (FAC)) ¶¶ 1, 107.) Plaintiff has alleged various causes of action arising out of an alleged defect in his vehicle and the Subject Vehicles, which Plaintiff claims causes them to consume an excessive amount of engine oil. (*Id*. ¶ 2.) Through this action, Plaintiff seeks to represent a nationwide class. (*Id*. ¶¶ 93–94.)

1

Plaintiff's is the third such putative class-action complaint brought based on the same alleged defect in the same vehicles on behalf of the same putative class.[1] Because the first-filed and substantially similar class-action matter *Gary Guthrie et al. v. Mazda Motor of America, Inc.*, Case No. 8:22-cv-01055-DOC-DFM has been underway in the United States District Court for the Central District of California before the Honorable David O. Carter, District Judge, for over a year—with a motion to dismiss filed, argued, and under advisement before that court, and with a mediation session having taken place—Defendants move to dismiss or stay this action until *Guthrie* is fully litigated or otherwise resolved.[2] (*Guthrie* Dkt. 1, 1-1, 46, 56.) Alternatively, Defendants respectfully request the Court exercise its discretion and transfer this action to the

---

[1] In accordance with Federal Rule of Evidence 201, Defendants respectfully request the Court take judicial notice of the documents referenced and attached as exhibits to this brief, an index of which is also attached as Exhibit 1. Rule 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under Rule 201, courts "may take judicial notice at any stage of the proceeding," *Rodgers v. Waste Indus., Inc.*, No. No. 4:12-cv-294-FL, 2013 WL 4460265, at *4 (E.D.N.C. Aug, 19, 2013) (citing Fed. R. Evid. 201(d)), and "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Id.* (quoting *Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)). Exhibits 2–4 and 8–12 are true and correct copies of filings in *Gary Guthrie, et al. v. Mazda Motor of America, Inc.*, No. 8:22-cv-01055-DOC-DFM (C.D. Cal.) ("*Guthrie*"), currently pending before the Honorable David O. Carter in the U.S. District Court for the Central District of California. Exhibits 5–7 are true and correct copies of filings or docket entries in *Brian Heinz v. Mazda Motor of America, Inc.*, No 2:22-cv-02058-TLN-CKD (E.D. Cal.) ("*Heinz*"), currently pending before the Honorable Troy L. Nunley of the Eastern District of California.

[2] In the second-filed class action, *Heinz*, MNAO has similarly moved to dismiss or stay the proceedings, or, in the alternative, to transfer venue to the Central District of California with *Guthrie*. (*Heinz* Dkt. 9.) The parties have fully briefed the motion and the Court has ordered it submitted, dispensing with oral arguments. (*Heinz* Dkt. 14.) The *Heinz* plaintiff opposed dismissal or stay, but consented to transfer of *Heinz* to the *Guthrie* court, thus making it likely that at a minimum, *Heinz* will be transferred to and joined with *Guthrie* before the latter court. (*Heinz* Dkt. 9 at 2.) MNAO will keep the Court apprised of the status of the proceedings there.

2

Central District of California for potential consolidation and resolution of his claims with the

*Guthrie* matter.[3]

---

[3] Defendants respectfully and preemptively submit they should not be considered to be in default by pursuing exclusively a motion under the first-to-file rule. In contrast to Plaintiff's arguments in support of his motion to amend, first-to-file motions are timely and proper filings that courts may and should consider pre-answer. Motions under the first-to-file rule are in a category of preliminary motions involving matters of judicial administration, which "lie[] in the inherent power of a court to regulate actions pending before it." Wright & Miller, Fed. Pract. & Proc. § 1360 (3d ed. 2022) (describing preliminary motions not enumerated in Rule 12(b) that courts routinely nevertheless hear, including motions to dismiss or stay based on the pendency of a similar action, and collecting cases).

Moreover, under Rule 55, default is appropriate only where a party "has failed to plead *or otherwise defend*" against the action. District courts reject contentions that a first-to-file—or other such preliminary—motion is an insufficient response that warrants entry of default. Rather, courts have recognized that—though not within the purview of Rule 12—such motions are nevertheless a "timely and proper" response. *Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C-06-6613-cw, 2007 WL 484789, at *5 (N.D. Cal. Feb. 9, 2007) (recognizing that a first-to-file motion is not a Rule 12 response but determining that default was not appropriate because the motion was a "timely and proper filing"); *Kamparri Trading Ltd. v. Match.com, LLC*, No 12-23573-CIV, 2012 WL 12865851, at *1–2 (S.D. Fla. Dec. 12, 2012) (same); *Dixon v. Falcon Heights Condo. Assoc.*, No. 1:12-cv-00439, 2012 WL 13047783, at *1 (same); *P.S.I. Nordic Track, Inc. v. Great Tan, Inc.*, 686 F. Supp. 738 (D. Minn. 1987) (same); *Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, No. 10-cv-1, 2010 WL 11632755 (E.D.N.Y. Aug. 12, 2010) (stating that defendant's first-to-file motion stayed its obligation to file responsive pleading, but, even if that were not the case, default was still not appropriate); *see also Smith v. Pay-Fone Sys., Inc.*, 627 F. Supp. 121, 122–23 (N.D. Ga. 1985) (determining default not appropriate in the face of a motion to stay pending arbitration, which, though not a Rule 12 response, is of the type traditionally entertained by courts pre-answer).

Although Defendants are filing a contemporaneous motion under Rule 12, they do so only out of an abundance of caution and only given Plaintiff's prior inaccurate and flawed assertion of default. Nonetheless, Defendants respectfully submit this Court can and should decide the instant motion first. This motion is directed to the Court's inherent power to control the action before it. Should the Court grant any relief under this motion, Defendants Rule 12 motion will either be rendered moot or deferred (in the event of dismissal or stay), or, in the event of transfer, be better directed to the transferee court, as is customary under the first-to-file rule. *See, e.g.*, *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 905–06 (N.D. Oh. 1999) (transferring action and deferring to first-to-filed court for resolution on all pending motions).

Additionally, in filing this motion, Defendants do not waive their rights to revise their substantive pleadings to assert any defenses that may be available to them upon disposition of the present motion. Defendants respectfully submit that in the interest of efficiency and judicial economy, this matter would be best served by having the instant motion heard and decided first, prior to

3

This action should be dismissed, stayed, or, alternatively, transferred, pursuant to the well-recognized "first-to-file" rule. *E.g.*, *U.S. Airways, Inc. v. U.S. Airline Pilots Ass'n*, No. 3:11-CV-371-RJC-DCK, 2011 WL 3627698, at *1 (W.D.N.C. Aug. 17, 2011). *Guthrie* was filed in the Central District of California more than 11 months ago (April 2022)—well before this action was filed in late January 2023. (*Guthrie* Dkt. 1, 1-1.) The *Guthrie* plaintiffs allege substantially overlapping claims and facts against the same defendant (MNAO) on behalf of the same putative "nationwide" class comprised of owners and lessors of the same models and model years of vehicles. (FAC ¶¶ 93–94; *Guthrie* Dkt. 39, ¶ 58.)

In addition, while the *Farina* action names an additional defendant (and putative defendant class), the addition of defendants in a second action is not fatal to the application of the first-to-file rule. *E.g.*, *Blackwell v. Midland Credit Mgmt.*, No. 2:18-cv-2205-RMG, 2018 WL 4963166, at *3 (D.S.C. Oct. 15, 2018). Furthermore, a motion to dismiss is presently pending before the *Guthrie* court in the California court, on which a hearing was held on January 30, 2023, with the motion taken under advisement. (*Guthrie* Dkt. 56.) However, the *Guthrie* court has entered a scheduling order (*Guthrie* Dkt. 57), along with an order sending the parties to mediation (*Guthrie* Dkt. 58), which took place on May 1, 2023. The Court should therefore dismiss or stay this action in favor of *Guthrie*, which would prevent inconsistent rulings on substantially similar issues, as

---

considering more substantive motions addressed to the sufficiency of pleadings or the merits. *See* Fed. R. Civ. P. 12(h)(2) (a 12(b)(6) defense is preserved even if not raised until trial); *see e.g.*, *Brown v. Trustees of Bos. Univ.*, 891 F.2d 337, 357 (1st Cir. 1989) (explaining that a Rule 12(b)(6) defense is not waived before trial and collecting cases); *see also, e.g.*, *Troche v. Bimbo Foods Bakeries Dist., Inc.*, No. 3:11-cv-234-RJC-DSC, 2011 WL 3565054 (W.D.N.C. Aug. 12, 2011); *Lamkin v. Mordina Props. Weight Parcel, LLC*, 440 Fed. App'x 604, 607–08 (10th Cir. 2011) ("[R]equiring a party to . . . formally and substantively *engag[e] in the merits of the litigation*[] in order to enforce its right *not to litigate* is a non-sequitur."); *Green Tea Fin. Corp.-Al. v. Randolph*, 531 U.S. 79, 83 (2000).

well as avoid unnecessary duplication of effort and waste of party and court resources. Alternatively, for similar reasons, transfer (in lieu of dismissal or a stay) would be appropriate.

For these reasons, as set forth more fully below, the Court should dismiss or stay this action under the "first to file" rule, or alternatively transfer this action to the Central District of California with *Guthrie* (and possibly *Heinz*).

## Factual Background

### A. The first-filed *Guthrie* action

The *Guthrie* action was filed in the Superior Court of California, Orange County on April 19, 2022, and removed to the Central District on May 25, 2022, under Case No. 8:22-cv-01055-DOC-DFM (*Guthrie*, Dkt. 1, 1-1.) The *Guthrie* plaintiffs filed a First Amended Complaint on July 18, 2022, and MNAO moved to dismiss that iteration of the complaint on August 15, 2022. (*Guthrie*, Dkt. 14, 18.)  The currently operative Second Amended Complaint (SAC) was filed on October 31, 2022, against MNAO on behalf of the individual plaintiffs and a putative class of past and present purchasers and lessees of 2021 and 2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021 and 2022 Mazda3, and 2021 Mazda6 models (the *Guthrie* Subject Vehicles). (*Guthrie* Dkt. 39, ¶ 1.)

The *Guthrie* Plaintiffs alleged various causes of action arising out of an alleged defect in the vehicles, including claims for breach of implied and express warranty under the Magnuson-Moss Warranty Act (MMWA) (nationwide), fraudulent concealment (nationwide), and unjust enrichment (nationwide), and claims under various states' consumer protection statutes.[4] (*Guthrie*

---

[4] The claims alleged in *Guthrie* SAC include (1) breach of express and implied warranties under the MMWA, 15 U.S.C. § 2301; (2) fraudulent concealment; (3) unjust enrichment; (4) violation of Washington's Consumer Protection Act, Wash Rev. Code § 19.86; (5) breach of express warranty under Washington state law, Wash. Rev. Code § 62A.2-313; (6) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201; (7) breach of express

5

Dkt. 39 ¶¶ 167–373.) These claims are based entirely on the underlying factual allegations that (1) the *Guthrie* Subject Vehicles "contain defective valve stem seals that allow engine oil to leak . . . , which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals, places the Class Vehicles at an increased risk of engine failure, and causes to [*sic*] damages to the Class Vehicles' engines"; (2) MNAO "has long known" about the defect, but has refused to provide an adequate repair; (3) MNAO has concealed the defect from class members both at the time of sale and repair and thereafter. (*Id.* ¶¶ 2, 3,7.)

## B. The second-filed *Heinz* action

On November 15, 2022, Brian Heinz filed a second putative class action against MNAO on behalf of past and present purchasers and lessees of the same 2021 vehicle models defined as the *Guthrie* Subject Vehicles. (*Heinz* Dkt. 1 ¶¶ 47, 56–99.) Like in *Guthrie*, the *Heinz* complaint asserted putative nationwide and California sub-class claims for breach of express warranty, fraudulent concealment, unjust enrichment, and violations of consumer protection statutes. (*Id.*) The *Heinz* complaint alleged—similarly to *Guthrie*—that (1) the same 2021 vehicles contained a defect with the valve stem seal which caused them to "consume an excessive amount of engine oil under normal operation," which "may cause their engines to unexpectedly fail while in operation"; (2) Mazda has known about the defect but has failed to provide an adequate repair; and (3) Mazda

---

warranty under Florida state law, Fla. Stat. Ann. § 672.313; (8) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101; (9) breach of express warranty under Tennessee state law, Tenn. Code Ann. § 47-2-313; (10) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750; (11) breach of implied warranty under the Song Beverly Warranty Act, Cal. Civ. Code § 1792; (12) breach of express warranty under the California Commercial Code, Cal. Comm. Code § 2313; (13) breach of express warranty under the Song Beverly Warranty Act, Cal. Civ. Code § 1793; (14) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 and 720 Ill. Comp. Stat. 295/1A; (15) breach of implied warranty of merchantability under Illinois law, 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212; and (16) breach of express warranty under Illinois law, 810 Ill. Comp. Stat. 5/2-313. (*Guthrie* Dkt. 39 ¶¶ 167–373.)

concealed the defect from class members at the time of sale and repair. (*Id.* ¶¶ 2–4.) Both the *Guthrie*

and *Heinz* complaints named MNAO as defendant, involved the same putative class vehicles,

referred to the same Technical Service Bulletins (TSBs) issued by MNAO, and sought damages,

statutory and civil penalties, as well as attorneys' fees and costs, among other forms of relief.

### C.  The third-filed *Farina* action

On January 28, 2023, Plaintiff Farina filed a third class action against MNAO. Plaintiff

Farina's original complaint alleged three causes of action: an MMWA breach of warranty claim

based on his vehicle's New Vehicle Limited Warranty (NVLW); a claim for "civil conspiracy";

and a claim for declaratory judgment. (Dkt. 1 at 16–19.) Defendants initially jointly moved to

dismiss, stay, or transfer the action on March 24, 2023 pursuant to the first-to-file rule (Dkt. 20),

but Plaintiff subsequently filed the currently operative First Amended Complaint ("FAC") on May

2, 2023. (FAC.) Plaintiff's FAC revised his MMWA claim to be based on his vehicle's emissions

warranties and added previously-promised[5] Clean Air Act claims. (FAC ¶¶ 122–35, 137).

The FAC is brought on behalf of past and present purchasers and lessees of 2021 Mazda3,

2021 Mazda6, 2021 CX-30, 2021 CX-5, and 2021 CX-9 models—in other words, the same putative

vehicle class as in *Guthrie* and *Heinz*. (FAC ¶ 1.) Like in *Guthrie*, the *Farina* FAC asserts putative

nationwide class claims for breach of implied and express warranty under the MMWA (FAC ¶¶

93–94, 136–46), and the *Guthrie* class vehicles entirely subsume the putative class vehicles in the

*Farina* FAC. (*Compare Guthrie* SAC, Dkt. 39 ¶ 1, *with* FAC ¶ 1.)

There are three variations between the *Farina* FAC and the *Guthrie* complaint (and the

*Heinz* complaint). First, the *Farina* FAC now alleges MMWA breach of warranty claims based on

---

[5] Plaintiff's initial complaint asserted his intention to amend his complaint to bring claims pursuant
to the Clean Air Act's citizen-suit provision following the lapse of the mandatory notice-period
requirements thereunder. (Dkt. 1 at 6 n.1.) *See* 42 U.S.C. § 7604(a) & (b).

the vehicles' emissions warranties, rather than the general NVLW.  (FAC ¶¶ 137.) Second, the *Farina* FAC adds as an additional defendant Plaintiff Farina's dealer, Keffer Mazda, and seeks to certify a defendant-dealership class of all Mazda dealers nationwide. (FAC ¶ 107.)  Third, the *Farina* FAC asserts three additional bases for relief: "civil conspiracy," declaratory judgment, and claims under the Clean Air Act, 42 U.S.C. § 7401 *et seq*. (FAC 22–24.)

However, under every additional theory—as well as the claims under the MMWA— Plaintiff Farina's claims are based entirely on the same core underlying factual allegations as those presented in *Guthrie* (and *Heinz*): that (1) the Subject Vehicles "contain defective valve stem seals" that cause excessive engine oil consumption, which places the Class Vehicles at an increased risk of engine failure, and causes damage to the putative class vehicles; (2) MNAO has "long known" about the defect, but has purportedly refused to provide an adequate repair; and (3) MNAO concealed the alleged defect and its effects from class members both at the time of sale and repair and thereafter. (FAC ¶¶ 2, 5, 11.)

The *Farina* FAC only *adds* allegations with respect to the same underlying factual issues, *e.g.*, that the defendant class of dealerships had "conspire[d]" to conceal the alleged defect at the behest of MNAO and has also refused to provide a repair in the Subject Vehicles, that the alleged defect violates additional warranties, or that MNAO has failed to report the alleged defect as required under the Clean Air Act. (FAC ¶¶ 11, 105, 122–35, 137, 144.)

8

## Legal Argument

**I.     The Court should dismiss or stay, or, alternatively, transfer this action under the first-to-file rule.**

Dismissal, stay, or transfer of this action is appropriate and should be granted under the well-established "first-to-file" rule as recognized in this Circuit. *U.S. Airways, Inc. v. U.S. Airline Pilots Ass'n*, No. 3:11-CV-371-RJC-DCK, 2011 WL 3627698, at *1 (W.D.N.C. Aug. 17, 2011) (observing that "the Fourth Circuit generally adheres to the 'first-filed' rule" (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 594–95 (4th Cir. 2004))).

Under the first-to-file rule, a district court may dismiss, stay, or transfer a suit when a similar lawsuit has been filed and is pending in a federal forum. *E.g.*, *Troche v. Bimbo Foods Bakeries Dist., Inc.*, No. 3:11-cv-234-RJC-DSC, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011) ("If the first-filed rule applies, a district court must dismiss, stay, or transfer a later-filed lawsuit in deference to the earlier filed action."); *Jean-Francois v. Smithfield Foods, Inc.*, No. 7:22-cv-63-D, 2022 WL 17813139, at *2 (E.D.N.C. Dec. 19, 2022) (analyzing when an action is "pending" for purposes of the first-to-file rule); *also Celgard, LLC v. Shenzhen Senior Tech. Material Co., Ltd.*, No. 3:20-cv-130-GCM, WL 2021 WL 1936235, at *2 (W.D.N.C. May 13, 2021) (noting that under this Circuit's first-to-file rule, "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed" (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982))).

Though the application of the first-to-file rule in the Fourth Circuit is discretionary and not "mechanical[]", the "rule exists to promote efficient use of judicial resources and it should be applied in a manner serving sound judicial administration." *Troche*, 2011 WL 3565054, at *3 (quoting *United States v. Brick*, No. 87-7310, 1988 WL 33796, at *1 (4th Cir. Apr. 11, 1988));

*Gibbs v. Stinson*, 421 F. Supp. 3d 267, 286 (E.D. Va. 2019) (quoting *Victaulic Co. v. E. Indus. Supplies, Inc.*, No. 6:13-01939-JMC, 2013 WL 6388761, at *3 (D.S.C. Dec. 6, 2013)). Thus, where the rule is applicable, "the first suit should have priority, absent [a] showing of balance of convenience in favor of the second action." *Gibbs*, 421 F. Supp. 3d at 286 (quoting *Volvo Const. Equip. N. Am., Inc.*, 386 F.3d at 594–95).

Given its roots in judicial economy, this and other circuits have recognized that the rule is particularly applicable to class actions—i.e., "the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith." *Hilton v. Apple Inc.*, No. C-13-2167, 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013). Indeed, this and other Fourth Circuit district courts have recognized that the first-to-file rule is particularly appropriate in the context of competing pre-certification class actions and analogous Fair Labor Standards Act collective actions, "which threaten to present overlapping classes, multiple attempts at certification in two different courts, and complicated settlement negotiations." *Troche*, 2011 WL 3565054, at *2 (quoting *Ortiz v. Panera Bread Co.*, No. 1:10-cv-1424, 2011 WL 3353432, at * 2 (E.D. Va. Aug. 2, 2011)); *Blackwell v. Midland Credit Mgmt., Inc.*, No. 2:18-cv-2205-RMG, 2018 WL 4963166 (D.S.C. Oct. 15, 2018) (recognizing that the first-to-file rule is particularly applicable to class actions in the pre-certification phase). Given the importance of these policies, some Fourth Circuit district courts have acknowledged the Ninth Circuit's caution that the rule "should not be disregarded lightly." *E.g.*, *Meyers v. GC Servs. LP*, No. 3:09-1242, 2010 WL 11583546, at *1 (S.D.W.V. Mar. 18, 2010) (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738 (9th Cir. 1979)).

Fourth Circuit courts apply a two-step inquiry to determine if the first-to-file rule applies. First, courts determine if the actions are sufficiently similar, *e.g.*, *Victaulic Co.*, 2013 WL 6388761,

at *3, looking to three factors: (1) the chronology of the filings; (2) the similarity of the parties; and (3) the similarity of the issues at stake, *e.g.*, *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003).

Second, if the court determines the actions are sufficiently similar, it then determines if an equitable exception nevertheless applies to bar its applying the rule, *e.g.*, *Victaulic Co.*, 2013 WL 6388761, at *3—namely, the Fourth Circuit determines whether, where the first-to-file rule otherwise applies, the "balance of convenience" nevertheless counsels against its application. *U.S. Airways, Inc.*, 2011 WL 3627698, at *3 (citing *Volvo Const. Equip. N. Am., Inc.*, 386 F.3d at 594–95.

Here, all three factors in step one support that the actions are sufficiently similar to warrant stay or dismissal of the action, or, in the alternative, transfer.[6] Moreover, no exception applies under step two. Accordingly, the Court should dismiss or stay the action, or, in the alternative, transfer it to the Central District of California along with the fist-filed *Guthrie* action (and possibly *Heinz*).

A.   ***Guthrie* was filed first.**

To start, the chronology of the two—indeed, three—actions favors dismissal, stay, or transfer of the *Farina* action. *Guthrie* was filed over nine months before *Farina*. Indeed, the chronology in this action reflects that the application of the first-to-file rule would not be merely mechanical—the *Guthrie* action is significantly further along in litigation, whereas the instant matter is in its infancy. In *Guthrie*, MNAO has already filed two motions to dismiss, following multiple amendments to the complaint, with the second motion to dismiss having been fully briefed

---

[6] Courts in the Fourth Circuit routinely transfer later-filed actions under the first-to-file rule. *E.g.*, *Troche*, 2011 WL 3565054 at *4.

and argued on January 30, 2023. *Cf. Harris v. McDonnell*, No. 5:13-cv-00077, 2013 WL 5720355, at *4–5 (W.D. Va. Oct. 18, 2013) (declining to apply the first-to-file rule where the first-filed action was filed mere weeks before the later-filed action and noting that the Fourth Circuit rejects such a rigid application of the rule and also considers how far each case has progressed).

Moreover, the *Guthrie* court has already issued a scheduling order, setting dates for discovery and trial, and has ordered the parties to mediation. As to the latter, the parties in *Guthrie* have already engaged in mediation on May 1, 2023.

As these facts show, *Guthrie* was not only first filed by many months, but is also substantially advanced, weighing in favor of dismissal, stay, or transfer of this *Farina* action.

### B.      The parties are substantially similar.

The substantial-similarity-of-the-parties factor also favors a dismissal or stay (or transfer, in the alternative). Courts agree that the first-to-file rule does not require an exact match between the identities of the parties—rather, there need be only "substantial similarity." *E.g., Blackwell*, 2018 WL 4963166, at *3. Indeed, dozens of courts have recognized that the addition or omission of defendants does not defeat applying the rule. *Id.* (collecting cases). Moreover, in a class action, "the classes, and not the class representatives, are compared." *Id.* Here, Plaintiff seeks to represent a class of individuals that is entirely subsumed by the putative class in the *Guthrie* matter against the same manufacturer defendant, MNAO.

The fact that Plaintiff in *Farina* has added as a defendant his dealer Keffer Mazda (individually or on behalf of similarly situated dealerships) also should not defeat applying the rule. Keffer Mazda and MNAO's alleged liability would be intertwined; that is, the factual basis that Plaintiff alleges would give rise to MNAO's liability would—at least according to Plaintiff— also give rise to Keffer Mazda's. *Cf., e.g., Moore Elec. & Mech. Constr., Inc. v. SIS, LLC*, No.

12

6:15-cv-00021, 2015 WL 6159473 (W.D. Va. Oct. 20, 2015) (finding sufficient party similarity where later-filed action added a separate entity as a second defendant, whose contractual liability to the plaintiff was intertwined with the initial, mutual defendant).

Defendants nevertheless anticipate Plaintiff will oppose this motion in part based on his putative defendant class of Mazda dealers purportedly materially distinguishing his action from *Guthrie*. It does not. First, Plaintiff's quixotic unicorn hunt in the form of a putative defendant class is no different than any other second-filed action that adds or drops a party for a patina of uniqueness. *See Bell v. Brocket*, 922 F.3d 502, 504 & n.1 (4th Cir. 2019) (stating that "[d]efendant class actions are so rare they have been compared to 'unicorns'," and explaining that "the inherent risks of such proceedings are likely the reason for their rareness" (quoting *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002))). Second, his putative defendant class is patently unworkable—each of Plaintiff's proposed common questions is, on its face, a highly individualized inquiry that would have to be addressed not only on a dealer-by-dealer basis across 544 dealers, but on a class member-by-class member basis as to each of their interactions with each of their respective dealers. (*See* FAC ¶ 110 (*e.g.*, "was relevant, material information about the defect withheld at the time of sale").) And, if anything, Plaintiff's defendant class allegations, amplify the applicability of the first-to-file rule, given that Plaintiff seeks to both separately adjudicate his putative defendant class allegations while substantially *duplicating* litigation of his and the *Guthrie* action's putative plaintiffs' class allegations.

Thus, this factor weighs heavily in favor of dismissal or stay: MNAO is a defendant in both parties, the putative plaintiff's class substantially overlaps with that in *Guthrie*, and the additional defendant Keffer Mazda's interests in this matter are—based on Plaintiff's allegations—substantially intertwined with that of MNAO.

13

**C.      The issues at stake in *Farina* are substantially similar to those in *Guthrie*.**

This factor, like the analysis of the parties, does not require total identicality; rather, "substantial similarity" is enough, with courts looking to the underlying facts that give rise to the claims and consistently holding that the presence of additional but related state-law claims does not defeat application of the first-to-file rule. *E.g.*, *Troche*, 2011 WL 3565054, at *3 (recognizing that "presence of additional but related claims does not mean that the cases are so dissimilar as to avoid application of the first-filed rule," and instead analyzing the "central issues" in each); *see also, e.g.*, *Family Dollar Stores v. Overseas Direct Import Co., Ltd.*, No. 2:10-cv-278, 2011 WL 148264, at *2 (W.D.N.C. Jan. 2011) (reiterating the Fourth Circuit's statement that the first-to-file rule applies where "'the same factual issues' provide the basis for each suit" (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982))).

Here, *Farina* Plaintiff's claims arise from the same factual basis that gives rise to the claims in *Guthrie*. *Farina* Plaintiff, like the *Guthrie* plaintiffs, claims his vehicle and his putative class vehicles contain a valve stem seal defect, that MNAO has known about the defect and failed to provide an adequate repair, and that MNAO has concealed the defect. Plaintiff *Farina*, like the *Guthrie* plaintiffs, cites to and relies on the same Mazda technical documents concerning the alleged defect, including the same "M-Tips" and technical service bulletins. And like the *Guthrie* plaintiffs, Plaintiff here primarily alleges breach of implied and express warranties under the MMWA. Though Plaintiff *Farina* now newly alleges breach of emissions warranties, the factual issues underlying that breach are the same as those raised in the *Guthrie* complaint (which, like Plaintiff *Farina*'s original complaint, alleged violations of the vehicles' NVLW). Plaintiff *Farina*'s emissions and emissions warranty allegations stem entirely from the same core facts and claims alleged in the *Guthrie* actions: the same alleged defect, the same alleged concealment, and

14

the same alleged failure to repair. Accordingly, the litigation of Plaintiff's claims necessarily requires substantial duplication of litigation of the same underlying facts and issues already underway in *Guthrie*.

For the same reasons, *Farina* Plaintiff's additional claims—including his newly alleged Clean Air Act claims—do not prevent the application of the first-filed rule. *Farina* Plaintiff's additional claims are based on the same facts that underlie his MMWA claim and, by extension, the facts that underlie the claims in *Guthrie*. Plaintiff's claims that Defendants "conspired" to conceal the defect from consumers or failed to complete CAA reports in response to it stem from the same core factual questions at issue in the *Guthrie* action. They are entirely based on the same alleged defect and the same alleged concealment thereof—i.e., Farina merely asserts additional causes of action based on the same underlying alleged defect, not any different or additional alleged defect.[7] Allowing these two cases—which promise to involve duplicative and complex discovery, motions, and trial proceedings—to proceed separately "would be the 'epitome of judicial waste' and would be contrary to the policies underlying the first-filed rule." *Troche*, 2011 WL 3565054, at *3 (quoting *Charlotte-Mecklenburg Hosp. Auth. v. Facility Wizard Software, Inc.*, No. 3:08-cv-00463-FDW, 2008 WL 5115281, at *1 (W.D.N.C. Dec. 4, 2008)).

In short, this factor again weighs heavily in favor of application of the rule. And, once again, to the extent Plaintiff *Farina* raises claims not asserted in the *Guthrie* action, those claims could be adequately litigated in the Central District, favoring at least transfer of this action.

---

[7] Though the Court need not wade into the merits of Plaintiff's claims to resolve the instant motion in Defendants' favor, it is worth pointing out—as stated more fully in Defendants' concurrently filed Rule 12(b)(6) Motion to Dismiss—that any unique flair Plaintiff's CAA claims bring to distinguish the instant action from *Guthrie* is illusory. Plaintiff's claims are improper under that act's citizen suit provision and properly subject to dismissal.

**D.      No equitable exceptions apply.**

The Fourth Circuit recognizes that, even where applicable, the first-to-file rule should not
be applied where the "balance of convenience" tips in favor of allowing the later-filed action to
proceed. *U.S. Airways, Inc.*, 2011 WL 3627698, at *3 (citing *Volvo Const. Equip. N. Am., Inc,* 386
F.3d at 594–95). Some district courts in this Circuit have also recognized that "other special
circumstances" could have the same affect, such as forum shopping, anticipatory filing, bad-faith
filing, or a first-filing in the midst of settlement negotiations. *E.g.*, *Cree, Inc. v. Watchfire Signs,
LLC*, No. 1:20-cv-00198, 2020 WL 7043868, at *2, *3 (M.D.N.C. Dec. 1, 2020). Neither category
of equitable exceptions applies.

**1.      The "balance of convenience" weighs in favor of dismissal, stay, or transfer.**

In weighing the "balance of convenience," courts look to the balance of interests applied
to determine whether the convenience of the parties and interests of justice would justify transfer
of venue under 28 U.S.C. § 1404(a).[8] *E.g.*, *Cree, Inc.*, 2020 WL 7043868, at *5—namely:

(1)      the plaintiff's choice of forum;

(2)      relative ease of access to sources of proof;

(3)      availability of compulsory process for attendance of unwilling witnesses,
         and the cost of obtaining attendance of willing and unwilling witnesses;

(4)      possibility of a view of the premises, if appropriate;

---

[8] In *Duke Energy Fla., Inc. v. Westinghouse Elec. Co.*, No. 3:14–cv–00141, 2014 WL 2572960, at
*5 (W.D.N.C. June 19, 2014), Judge Cogburn analyzed this exception to the first-to-file rule as a
question of whether to transfer under 28 U.S.C. § 1404(a). However, MNAO respectfully submits
that while the balance of convenience under the first-to-file analysis includes factors from the
§ 1404(a) analysis, the two bases for transfer remain analytically and elementally distinct; that is,
under the first-to-file rule, the Court's inherent discretion to dismiss, stay, or transfer is distinct
from its discretion to transfer under 28 U.S.C. § 1404(a). *E.g.*, *U.S. Airways, Inc.*, 2011 WL
3627698, at *1 ("Courts applying the first-filed rule will dismiss, stay, or transfer a later-filed
lawsuit in deference to the earlier-filed action." (citing *Allied-Gen Nuclear Servs. v.
Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982))); *also id.* at *3 ("The factors
the Court is to consider under this [balance of convenience] inquiry are 'essentially the same as
those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a.'"
(quoting *Employers Ins. of Wasau v. Fox Ent. Gr., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008))).

(5)     enforceability of a judgment if one is obtained;

(6)     relative advantage and obstacles to a fair trial;

(7)     other practical problems that make a trial easy, expeditious, and inexpensive;

(8)     administrative difficulties of court congestion;

(9)     local interest in having localized controversies settled at home;

(10)    appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and

(11)    avoidance of unnecessary problems with conflicts of laws.

*Id.* Application of these factors to this case reveals that the "balance of convenience" favors dismissal, stay, or transfer.

Preliminarily, not all of the factors are relevant, making them neutral to the Court's determination—for example, there is no premises to view, and there is no question of the transferee court's ability to enforce potential judgments or to conduct a fair trial.

Meanwhile, of the relevant factors, the majority overwhelmingly weigh in favor of applying the first-to-file rule. Factors (2), (3), (7), (8)—factors of convenience and judicial economy—favor application of the first-to-file rule, given the pendency of ongoing litigation already underway in California.

First, the Central District is the most convenient for the majority of the parties and witnesses. Though Plaintiff and Keffer Mazda reside in this district, MNAO's headquarters, officers, North American Customer Experience Center, Research and Development Center, and Western Region Offices are all located in the Central District. Given the substantial similarity between both complaints, the expert witnesses and MNAO employees that Plaintiffs would call in *Guthrie* are likely the same individuals as those in *Farina*. Failing to apply the first-to-file rule would require those witnesses to travel outside of the Central District forum—and well across the country—only to provide duplicative testimony on the same issues. Moreover, the *Guthrie* court

17

has already set a trial date for 2024, which belies any concerns with court congestion, and further

weighs in MNAO's favor on factors (7) and (8).

Second, this Court may be unable to compel attendance of many relevant non-party

witnesses central the litigation's issues and theories of liability as alleged by Plaintiff. To the extent

Plaintiff and possible class members wish to subpoena the testimony of any former employees or

current non-officer employees of MNAO, the Eastern District could not compel the attendance or

testimony of these witnesses at trial if they are more than 100 miles from the courthouse. Fed. R.

Civ. P. 45(c)(1), (d)(3); *E.I. Du Pont de Nemours & Co. v. McDermid Printing Solutions, LLC*,

No. 1:10-mc-39, 2012 WL 733831, at *1–2 (M.D.N.C. Mar. 6, 2012).

Third, relevant documents and evidence related to the central issues in this case—namely

the alleged defect and MNAO's alleged knowledge and handling of it—are predominately located

in the Central District, and not in North Carolina. Although Plaintiff's own records and Keffer

Mazda's records are presumably located in this District, those would be minimal, comprising

mainly if exclusively the sales and service history materials, while the remaining documents and

other evidence related to Plaintiff's allegations would overwhelmingly be located in the Central

District. *See, e.g.*, *Dacar v. Saybolt*, No. 7:10-cv-00012-F, 2011 WL 223877, at *7 (E.D.N.C. Jan.

24, 2011) (recognizing that "electronic communication and data storage" diminished the weight

of this factor, but still concluding it weighed "slightly in favor" of transfer where proposed

transferee district was "the single most likely source of relevant documents").

Of the remaining factors that Plaintiff Farina could argue support him, such support is

illusory. For example, a plaintiff's forum choice is generally not lightly disregarded. *E.g.*, *Cree,*

*Inc.*, 2020 WL 7043868, at *5 ("the plaintiff's choice of forum generally is entitled to respect and

deference and should rarely be disturbed"). However, any deference given to this choice "is

18

proportionate to the relation between the forum and the cause of action." *Speed Trac Tech., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008).

Here, *Farina* Plaintiff's *individual* causes of action potentially have a relationship to this forum, in that he resides here, purchased his vehicle here, and experienced his alleged issues here. But Plaintiff also purports to bring this case as a class representative on behalf of a putative nationwide class. In evaluating the factors under § 1404(a), courts have recognized that in class actions, "the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claims." *Byerson v. Equifax Info. Servs. LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006).[9]

Moreover, the facts that allegedly gave rise to both *Farina* Plaintiff's and the putative class's alleged harm primarily occurred through decisions at MNAO, which is headquartered in the Central District of California. And although Plaintiff has named a local defendant, even this should be accorded less weight because Plaintiff has named that defendant *also* on behalf of a *national* class.

In other words, based on *Farina* Plaintiff's allegations and framing of his own complaint, his putative class action is not "at home" here, and there is no attendant local interest in having any localized controversy settled here. And to the extent Plaintiff Farina were to argue any local controversy, any such issues would be as to his individual claims only and would be overwhelmed by (1) the class litigation generally; and (2) the litigation of the central issues in this case, which,

---

[9] In *Byerson*, the court determined the plaintiffs' choice of forum was not materially diminished by being a class action, but based that on the finding that the chosen forum was amenable to inexpensive discovery and trial and also was home to key non-party witnesses, which is not the case here.

as Plaintiff alleges, will center on MNAO's operational decisions, made in California. (*E.g.*, FAC ¶¶ 47–53.)

In short, the balance of convenience favors applying the first-to-file rule.

### E. No other exception applies to bar the first-to-file rule.

Fourth Circuit district courts have sometimes recognized that "special circumstances" can prevent application of the first-to-file rule, including where the first-filed action involved forum shopping, anticipatory filing or a "race to the courthouse" filing, bad-faith filing, or filing in the midst of settlement negotiations. *E.g.*, *Cree, Inc.*, 2020 WL 7043868, at *2, 3. None of these exceptions apply.

The *Guthrie* plaintiff was not "forum shopping" by filing against MNAO in its home district. Nor are there any facts to support any claim of anticipatory filing or a "race to the courthouse" where *Guthrie* was filed over 9 months before *Farina*. *E.g.*, *Cree, Inc*., 2020 WL 7043868, at *4 ("[T]here can be no race to the courthouse when only one party is running."). There is likewise nothing to support any claim of bad-faith filing, nor that Plaintiff Farina was involved in any settlement negotiations when *Guthrie* was filed.

Because (1) all three factors and the balance of convenience weigh heavily in favor of applying the first-to-file rule, and (2) no equitable exceptions apply, dismissal or stay of this action is appropriate under the first-to-file rule.

### II. This court has broad discretion to stay the action.

Beyond the first-to-file rule, to the extent the Court is not inclined to dismiss under that rule, this Court can and should exercise its inherent authority to stay these proceedings. Indeed, the Supreme Court has long recognized a federal court's power to stay a case "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also, e.g.*, *Maryland v. Univ. Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013).

When determining whether to stay an action, courts must "weigh the competing interests to maintain an even balance" and ensure that the circumstances justifying the stay "clear[ly] and convincing[ly]" outweigh "potential harm to the party against whom it is operative." Fourth Circuit courts have identified three factors relevant to this inquiry: "(1) the interests of judicial economy, (2) the hardship and equity to the moving party in the absence of a stay, and (3) the potential prejudice to the non-moving party in event of a stay." *Paxton v. Jacob Law Gr., PLLC*, No. 5:21-cv-00102-KDB-DSC, 2022 WL 1164912, at *2 (W.D.N.C. Mar. 3, 2022). The balance of these factors favors a stay over transfer.

*First*, Plaintiff will not be harmed by a stay. This action was filed on January 28, 2023—well after the plaintiffs in *Guthrie* filed their second amendment complaint—and is in its infancy. (*Guthrie* Dkt. 39.) Nearly all this action's underlying factual assertions are already being litigated in *Guthrie*, including on behalf of a putative class that would include Plaintiff Farina. *Id.* And a stay does not risk depriving Plaintiff of his "day in court." Indeed, the issues Plaintiff raises here are likely to be resolved sooner in *Guthrie* than here since the proceedings in *Guthrie* are farther along with a scheduling order. (*Guthrie*, Dkt. 46.)

*Second*, the Court can and should order a stay based upon the hardship and inequity that MNAO would face by having to expend time and expenses defending claims that are largely if not entirely duplicative in separate venues. *See CIP Constr. Co. v. Western Sur. Co.*, No. 1:18-cv-00058, 2018 WL 350832 at *9 (M.D.N.C. July 20, 2018) (granting stay pending resolution of arbitration in recognition that the effects of duplicative litigation on judicial economy and potential prejudice to the defendant warranted it). MNAO would suffer significant hardship and inequity

were it required to litigate duplicative claims on behalf of the same putative class—involving the same putative class vehicles—in two different fora, a process that would result in significant expense and inconvenience and bear a risk of conflicting outcomes across a host of issues. The balance of the inequities thus falls on MNAO in the absence of a stay.

*Third*, the interests of judicial economy favor a stay, which would "avoid duplicative litigation" and "prevent[] the same set of facts from being litigated in two separate forums." *Allstate Ins. Co. v. Hemingway Homes LLC*, No. 12-cv-00744-AW, 2012 WL 4748089, at *3 (D. Md. Oct. 3, 2012) (granting stay pending arbitration); *also CIP Constr. Co.*, 2018 WL 350832 at * 9. And—as set forth above—there is substantial overlap between the claims here and in *Guthrie*.

Moreover, even if *Guthrie* does not resolve every question of fact and law in Plaintiff's action, at a minimum, resolution in *Guthrie* would substantially settle many and simplify the rest. *Cf. Landis*, 299 U.S. at 256 (noting that judicial economy is served, in the context of a stay pending appellate decision, even where the decision "may not settle every question of fact and law . . . but in all likelihood it will settle many and simplify them all"); *see also, supra*, Sections III.A.2 and III.A.3. In this litigation, the Court will be called upon to separately answer many of the same substantive questions already at issue in *Guthrie*. Even if the claims are not identical, disentangling the deeply intertwined issues to isolate and litigate any allegedly distinct claims would require the Court and the parties to engage in the very inefficiencies this motion seeks to avoid. Accordingly, judicial economy and overall efficiency favor a stay (or, if the Court finds appropriate, a dismissal), given that resolution of the earlier-filed action will resolve the issues in this case, or at the very least, significantly narrow the scope of *Farina* Plaintiff's claims.

### Conclusion

Based on the foregoing, Defendants respectfully request this Court dismiss or stay this action pursuant to the first-to-file rule and under its broad discretion. Alternatively, Defendants respectfully asks the Court to transfer this action to the District Court for the Central District of California for potential consolidation with *Guthrie*.

Respectfully submitted this 16th day of May, 2023.

/s/Evan M. Sauda
Evan M. Sauda, N.C. Bar No. 32915
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 S. College Street, 23rd Floor
Charlotte, North Carolina 28202
T: (704) 417-3000
F: (704) 377-4814
Email: evan.sauda@nelsonmullins.com

Robert L. Wise, Admitted *Pro Hac Vice*
Danielle Gibbons, Admitted *Pro Hac Vice*
NELSON MULLINS RILEY & SCARBOROUGH LLP
901 East Byrd Street, Suite 1650
Richmond, Virginia 23219
T: 804.533.2900
F: 804.616.4129
Email: Robert.Wise@nelsonmullins.com
Email: Danielle.Gibbons@nelsonmullins.com

*Counsel for Mazda Motor of America, Inc. d/b/a Mazda North American Operations & Lake Norman Auto Mall, LLC d/b/a Keffer Mazda*

/s/Jeremy A. Kosin
Jeremy A. Kosin, N.C. Bar No. 36116
Kenneth B. Rotenstreich, N.C. Bar No. 14293
TEAGUE ROTENSTREICH STANALAND FOX &
HOLT PLLC
Post Office Box 1898
Greensboro, North Carolina 27402-1898
T: (336) 272-4810
F: (336) 272-2448
Email: jak@trslaw.com
Email: kbr@trslaw.com

*Counsel for Lake Norman Auto Mall, LLC d/b/a
Keffer Mazda*