TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (admitted *pro hac vice*)
Stephen Taylor (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com
E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, Lester Woo, and Amy Bradshaw, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>Mazda Motor of America, Inc.,<br><br>Defendant. | Case No.: 8:22-cv-01055-DOC-DFM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      February 26, 2024<br>Judge:     Hon. David O. Carter<br>Time:      8:30 a.m.<br>Courtroom: 10A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 26, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable David O. Carter, District Judge of the United States District Court for the Central District of California, in Courtroom 10A, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 90012, Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, Lester Woo, and Amy Bradshaw ("Plaintiffs") will, and hereby do move for an order of the Court to:

1. Preliminarily approve the Parties' Class Action Settlement Agreement;

2. Conditionally certify the proposed Settlement Class under Rule 23(b)(3);

3. Appoint Plaintiffs as Class Representatives;

4. Appoint Lemberg Law, LLC as Class Counsel;

5. Order dissemination of the Notice to the Class pursuant to the notice plan set forth in the Settlement Agreement (the "Settlement," the "Settlement Agreement" or "S.A."); and

6. Schedule a Final Fairness hearing, in accordance with the deadlines set forth in the Settlement Agreement and the Proposed Preliminary Approval Order, no earlier than 135 days after the Court grants preliminary approval.

This Motion is based on this notice; the accompanying memorandum of points and authorities; the declarations from JND Legal Administration, and from Sergei Lemberg, Stephen Taylor and Joshua Markovits; and the exhibits attached hereto (including the Settlement Agreement); and all other papers filed and proceedings had in this Action.

This unopposed motion is made following the conference of counsel pursuant to L.R. 7-3, which took place several times over the last several months, including on January 12, 2024. While Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("MNAO") does not oppose this Motion, consistent with the

1

2

Settlement Agreement, MNAO does not admit any liability or concede that the proposed Class Vehicles are defective.

3

4

DATED: January 19, 2024

5

By: __/s/  Sergei Lemberg_____

6

Trinette G. Kent

TRINETTE G. KENT (State Bar No. 222020)

7

Lemberg Law, LLC

8

1100 West Town & Country Rd.
Suite 1250

9

Orange, California 92868
Telephone: (480) 247-9644

10

Facsimile: (480) 717-4781

11

E-mail: tkent@lemberglaw.com

12

Sergei Lemberg (admitted *pro hac vice*)

13

Stephen Taylor (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)

14

Lemberg Law, LLC

15

43 Danbury Road
Wilton, CT 06897

16

Telephone: (203) 653-2250

17

Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com

18

E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs and Interim Class*

19

*Counsel*

20

21

22

23

24

25

26

# **TABLE OF CONTENTS**

**Table of Authorities** ............................................................................................. V

**Introduction** ....................................................................................................... 1

**Background on the Valve Stem Seal Defect and Mazda's Repair** ...................... 3

**Procedural History** ............................................................................................ 6

**Terms of the Settlement** ..................................................................................... 9

**Argument** ........................................................................................................ 12

    I.    The Settlement Agreement should be Preliminarily Approved ............... 12

        1.    The Settlement Agreement is the Result of Engaged, Arm's-Length Negotiations Overseen by an Experienced Mediator ............ 14

        2.    There are No Obvious Deficiencies to the Settlement Agreement ........................................................................................ 15

        3.    The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class or Class Representatives ............................................................................... 16

        4.    The Settlement Falls Within the Range of Possible Approval ...................................................................................... 16

            a.    The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation .................................................................. 17

            b.    The Risk of Maintaining Class Action Status Through Trial ................................................................... 18

            c.    The Amount and Type of Relief Offered in Settlement ........................................................................ 19

            d.    The Extent of Discovery Completed and the Stage of the Proceedings ................................................ 20

            e.    The Experience and Views of Counsel .............................. 21

            f.    The Reaction of Class Members ....................................... 21

    II.    The Settlement Class Should be Sertified ................................................ 21

        1.    Numerosity is Satisfied ................................................................. 22

        2.    Commonality is Satisfied ............................................................... 23

        3.    Typicality is Satisfied..................................................................... 23

4.    Adequacy of Representation is Satisfied ............................................24

5.    Common Questions of Law and Fact Predominate ...........................24

6.    Superiority is Satisfied .......................................................................25

III.   The Proposed Notice and Notice Plan are Reasonable ............................26

**Schedule of Proceedings and Deadlines**................................................................28

**Conclusion** ................................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Altamirano v. Shaw Indus., Inc.*,
2015 WL 4512372 (N.D. Cal. July 24, 2015) ............................................16

*Amchem Prods.*, *Inc. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231 (1997) ........................................ 21, 24, 25

*Asghari v. Volkswagen Grp. of Am., Inc.,*
2015 WL 12732462 (C.D. Cal. May 29, 2015)..........................................19

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ....................................................................21

*Cal. Rural Legal Assistance, Inc. v. Legal Servs.* Corp.,
917 F.2d 1171 (9th Cir.  1990) ..................................................................23

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................12

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ..............................................20

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
2017 WL 13988162 (E.D. Cal. Apr. 19, 2017) ................................... 13, 16

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326, 100 S. Ct. 1166 (1980) .......................................................25

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................................................................18

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir.  2012) ..................................................................23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................ 23, 24

*In re AMF Bowling*,
334 F. Supp. 2d 462 (S.D.N.Y. 2004) .......................................................14

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009).............................................................22

*In re High-Tech Employee Antitrust Litig.*,
2013 WL 632881 (N.D. Cal. Oct. 30, 2013) .............................................13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................................................................15

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................18

*In re WorldCom, Inc. ERISA Litig.*,
2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ...........................................14

*Kearney v. Hyundai Motor Am.*,
2012 WL 13049699 (C.D. Cal. Dec. 17, 2012)........................................27

*Kulesa v. PC Cleaner, Inc.*,
2014 WL 12581769 (C.D. Cal. Feb. 10, 2014) ........................................14

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ...................................................................16

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ...........................................................17, 20

*Malta v. Fed. Home Loan Mortg. Corp.*,
2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ..............................................23

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ...................................................................18

*Mendoza v. Hyundai Motor Co., Ltd.*,
2017 WL 342059 (N.D. Cal. Jan. 23, 2017).............................................19

*Moreno v. Pretium Packaging, L.L.C.*,
2021 WL 3673845 (C.D. Cal. Aug. 6, 2021) ...........................................17

*Navarrete v. Sprint United Mgmt. Co.*,
2021 WL 4352903 (C.D. Cal. Mar. 2, 2021)......................................21, 27

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998)..............................................................22

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) ...................................................................23

*Patrick v. Volkswagen Grp. of Am.*,
2021 WL 3616105 (C.D. Cal. Mar. 10, 2021)..........................................26

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, 105 S. Ct. 2965 (1985) .....................................................26

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010)..............................................................26

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................14

*Satchell v. Fed. Exp. Corp.*,

2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)..............................................14

*Shahbazian v. Fast Auto Loans, Inc.*,
2019 WL 8955420 (C.D. Cal. June 20, 2019)...........................................17

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......................................................................27

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).....................................................................................25

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .........................................14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 131 S. Ct. 2541 (2011) .......................................................22

*West v. Circle K Stores, Inc.*,
2006 WL 1652598 (E.D. Cal. June 13, 2006) ..........................................15

*West Virginia v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970) .............................................................18

*Wolin v. Jaguar Land Rover N. Am.*,
*LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................................... 23, 24, 25

*Yaeger v. Subaru of Am., Inc.*,
2016 WL 4541861 (D.N.J. Aug. 31, 2016) ..............................................19

*Zakikhani v. Hyundai Motor Co.*,
2023 WL 4544774 (C.D. Cal., May 5, 2023) ...........................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ........................................................................................3

Fed. R. Civ. P. 23(b)(3) ...................................................................................3

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................3

**RULES**

Fed. R. Civ. P. 23(e) ......................................................................................17

**TREATISES**

4 Newberg on Class Actions § 11.41 (4th ed. 2002).................................13

Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) .14

Manual for Complex Litig. § 13:13 (5th ed.) .............................................13

Manual for Complex Litigation § 21.632 (4th ed.) ...................................21

Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, Lester Woo, and Amy Bradshaw ("Plaintiffs"), hereby submit this memorandum of points and authorities in support of their motion for preliminary approval of their Class Action Settlement Agreement.[1]

## INTRODUCTION

After nearly two years of hard-fought litigation—including multiple motions to dismiss, discovery, and hearings before this Court— and mediation with the aid of Hon. Dickran M. Tevrizian (Ret.) of JAMS, the Parties achieved a settlement that provides substantial repair, warranty benefits, and reimbursement to over 86,000 Class Members who purchased or leased 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 Class Vehicles ("Class Vehicles" or "Settlement Class Vehicles") containing Skyactiv-G 2.5T engines which can contain defective valve stem seals which cause excessive engine oil consumption (the alleged "Valve Stem Seal Defect").[2]

First, the Settlement provides that Class Vehicles that have manifested an oil consumption issue are entitled to a repair of the defect in the form of a redesigned valve stem seal.  There are over 50,000 vehicles that have manifested an oil consumption issue and as a result of this litigation and Settlement, Defendant Mazda Motor of

---

[1] The executed Settlement Agreement is attached hereto as <u>Exhibit A</u>.  Appended to the Settlement Agreement and incorporated therein are the following exhibits:

<u>Exhibit 1</u> – the "Claim Form"

<u>Exhibit 2</u> – the "Final Order and Judgment"

<u>Exhibit 3</u> – the "Preliminary Approval Order"

<u>Exhibit 4</u> – the "Class Notice", included therein is the long form class notice and template of the postcard notice.

[2] While Defendant MNAO does not oppose this Motion, consistent with the Settlement Agreement, MNAO does not admit any liability or concede that the proposed Class Vehicles are defective.

America, Inc. d/b/a Mazda North American Operations ("Defendant," "Mazda" or "MNAO") will replace the valve stem seals of any Class Vehicle which has experienced excessive oil consumption (e.g., the vehicle's low engine oil light has illuminated before the recommended oil change interval, or the owner or dealer refilled their engine oil before Mazda's recommended oil change interval, or the vehicle fails a free oil consumption test). Following preliminary approval, Mazda will issue an updated Technical Service Bulletin to its authorized dealerships authorizing these repairs immediately in accordance with the terms of the Parties' settlement. The Class Notice mailed to Class Vehicle owners and lessees will notify members about this repair and direct them to obtain it. Further, Mazda dealers will notify owners and lessees about their entitlement to the repair when servicing Class Vehicles for any reason. The value of the Repair Program to the Settlement Class is $46,413,916. (Report of Susan K. Thompson & Brian S. Repucci of Hemming Morse, LLC (Lemberg Decl. Ex. B and the "HM Report") ¶¶ 28-35).

Second, the Settlement extends the Mazda Powertrain Limited Warranties for all 86,116 Settlement Class Vehicles, whether an oil consumption issue has occurred or not, to 84 months/84,000 miles, from the earlier of 60 months/60,000 miles. The extended warranties cover any defect in materials and workmanship in the powertrain components supplied by Mazda, not just the valve stem seals at issue in this case. The value of the warranty extension to the Settlement Class is $58,836,174. (HM Report ¶¶ 24-27).

Third, through the Settlement, Mazda will fully reimburse Settlement Class Members who submit approved claims for out-of-pocket costs for oil and oil changes incurred before the normal oil change interval.

Moreover, Defendant will separately pay attorneys' fees and costs and service awards to the Class Representatives as awarded by the Court, so that these ancillary costs of the Settlement will not dilute any of the benefits available to the Class.

Plaintiffs now present the terms of the Settlement for the Court's preliminary approval. Plaintiffs ask that the Court enter the Proposed Preliminary Approval Order attached to this motion to (i) conditionally certify the Settlement Class for purposes of settlement; (ii) appoint Plaintiffs as the Settlement Class Representatives; (iii) appoint Lemberg Law, LLC, as Class Counsel; (iv) preliminarily approve the terms of the Settlement Agreement; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)); and (vi) schedule a Final Fairness hearing in accordance with the deadlines proposed in the Settlement Agreement.

The Settlement Agreement was arrived through arm's-length negotiations by experienced counsel and after extensive discovery. The Settlement Agreement does not provide preferential treatment to any subset of the Settlement Class. The Settlement Class exceeds the certification requirements of Fed. R. Civ. P. 23(a) and (b)(3) and the Settlement Class is more than adequately represented by Class Counsel. Moreover, the proposed Settlement provides substantial benefits to Class Members, while avoiding the considerable risks and costs of protracted litigation. The Settlement falls well within the range of fair, reasonable and adequate so as to support provisional certification of the Classes and the provision of notice to Class Members. Accordingly, Plaintiffs respectfully request that this Court grant their unopposed Motion for Preliminary Approval of the Class Action Settlement.

### BACKGROUND ON THE VALVE STEM SEAL DEFECT AND MAZDA'S REPAIR

Plaintiffs allege that Class Vehicles have defective valve stem seals in their uniform Skyactiv-G 2.5T turbo engines that causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals. (Dkt. No. 84 ("TAC") ¶¶ 2, 114-120).

The alleged defect was caused by an October 2020 design change to the exhaust valve seals in the impacted Class Vehicles' engines where Mazda had "changed the lip of the seal." Ward Tr.[3]  8:12-25, 9:7-15, 12:8-22.  As a result of the design change, when Mazda installed the Class Vehicles' exhaust valve seals "they were susceptible to getting scratched" "as they went over the tip of the exhaust valve stem" and those scratches increased the Class Vehicles' oil consumption. *Id.* Mazda asserts that by July 2021 it "confirm[ed] that the design change had caused the oil consumption to increase." *Id.* at Tr. 20:4-8

The redesigned valve stem seals were installed in the approximately 86,000 Class Vehicles and were manufactured between October 2020 and September 2021 (for Mexican-produced Mazda3 and CX-30 vehicles, the defective parts were used through June 2022). Ward Tr. 23:5-8, 42:8-43:14.

Plaintiffs allege that Mazda learned about the Valve Stem Defect from multiple sources and had pre-sale knowledge of the Defect. TAC ¶¶ 146-162.  Among those sources were reports from Mazda Connected Services alerting Mazda that Class Vehicles' low engine oil lights illuminated and a diagnostic trouble code (DTC) was recorded. *Id.* ¶¶ 152-154.  By default, Class Vehicles are registered with "Mazda Connected Services" pursuant to which the Class Vehicles have a telematics control unit (TCU) which recorded certain vehicle data DTC's and transfer the data to Mazda Corporation's servers in Japan. Ward Tr. 15:20-16:3, 19:13-16. Thus, every time a Class Vehicle was more than one quart low of oil, the low engine oil light illuminated and for Class Vehicles with Mazda Connected Services, a DTC was recorded and sent to Mazda Corporation along with the associated Vehicle Identification Number (VIN), mileage, date and time. *Id.* at Tr. 16:21-18:9, 28:11-16. According to Mazda, it began

---

[3] "Ward Tr." refers to excerpts from the deposition transcript of Jerry Ward, Senior Manager for Product Quality at MNAO, attached as <u>Exhibit A</u> to the Declaration of Sergei Lemberg.

receiving Mazda Connected Services reports of the Class Vehicles' low engine oil lights illuminating in or around May 2021. *Id.* Tr. 19:24-20:3.

Plaintiffs also allege, and Mazda has confirmed, that Mazda separately learned about the Defect via complaints from Mazda dealerships and owners who submitted complaints via Mazda customer hotlines. TAC ¶¶ 148, 151; Ward Tr. 24:17-25:12.

In October and November 2021, Mazda issued technical service bulletin No. 01-012/21 to its dealerships that acknowledged the Class Vehicles' oil consumption issues but told the dealers to top off engine oil in Class Vehicles in between oil changes. TAC ¶¶ 127-134. Thus, when the Complaint and First Amended Class Action Complaint were filed in April and July 2022, Mazda was not repairing the defect.

In October 2022, six months after Plaintiffs initiated this action, Mazda issued a 53-page technical service bulletin to its dealers providing for a repair where dealerships could install redesigned valve stem seals only for vehicles that had current, as in the day the repair was attempted, low oil. TAC ¶ 139. This repair was performed with "a special tool that [Mazda Corporation] developed specific to be able to perform this repair" to install the redesigned part. Ward Tr. 44:1-9. Because the engine remained in the vehicle during the repair, it is a "more streamlined and simple process for technicians to be able to perform" and a "much better experience for [Mazda] customers and much shorter downtime of the vehicle to be able to perform that repair." *Id.*

Plaintiffs subsequently confirmed with Mazda that the repair is effective and dramatically reduces the Class Vehicles' oil consumption issues. Following the implementation of the redesigned parts, Mazda has tracked the effectiveness of the repair by comparing how often the low engine oil light appeared for unrepaired vehicles and repaired vehicles. Ward. Tr. 53:9-54:10. While at least 68% of Class Vehicles with the original parts had their low engine oil light appear before they were due for oil changes, that figure has plummeted to approximately 12.9% for vehicles that have obtained the redesigned part. (Lemberg Decl. ¶ 12). The latter figure is consistent with

the rate of oil consumption for non-defective subject vehicles with 2.5L turbocharged engines. Ward Tr. 60:14-61:9, 61:18-24, 68:25-69:6. Moreover, as more repairs are completed, it is expected that the figure will continue to decline. Ward Tr. 67:15-19.

Under the Settlement, Mazda will provide this Valve Stem Seal repair to *all* affected Class Vehicles with a history of oil consumption issues without the need to show their vehicles' engine oil level is currently low.[4] Additionally, as part of the Settlement, Mazda dealers are directed to tell Class Vehicle owners unprompted that "they are eligible to receive a replacement of the affected valve stem seals" when servicing the vehicles for any reason for the year following initiation of the program if the Engine Oil Level Waning Light has illuminated with Diagnostic Trouble Code ("DTC") P250F:00, signifying low engine oil level, before the regular oil change interval of 7,500 miles or 1 year, or Class Vehicles enrolled with the Mazda Connected Services MyMazda mobile application have recorded a "Low Engine Oil Level" alert in the application before the regular oil change interval of 7,500 miles or 1 year. *Settlement Agreement*, Art. II(A)(2)&(4).

## PROCEDURAL HISTORY

Prior to initiating this action, Class Counsel conducted an extensive pre-suit investigation which included analyzing the cause of Class Vehicles' oil consumption, consulting with an automotive expert, identifying the Defect and the affected Class Vehicle models, interviewing Class Vehicle owners and lessees, reviewing documents

---

[4] Specifically, under the current version of the TSB Mazda directs its dealers to "Confirm with the oil level gauge that the engine oil has actually decreased. If the engine oil has NOT decreased, this TSB is not applicable." However, as part of the Settlement the repair will be available to all Class Vehicles regardless of their vehicle's current oil level. To wit, the updated TSB will inform dealerships that: "The technician should perform the repair (replace the affected valve stem seals) if DTC P250F:00 is stored in the memory/occurred before the regular oil change interval of 7,500 miles or 1 year even if the engine oil level is not low or decreased at the time of the technician's inspection of the vehicle."

published by Mazda and made available to NHTSA, investigating additional vehicle owner complaints, and analyzing potential legal claims. (Lemberg Decl. ¶ 10).

On April 18, 2022, Plaintiff Gary Guthrie – a Washington purchaser of a 2021 Mazda CX-30 who alleges he was not made aware of the Defect at the time of sale and was initially denied repairs regarding the Defect – filed a Class Action Complaint in the Superior Court of the State of California, County of Orange, against Mazda, bringing fraudulent concealment, unjust enrichment, consumer protection and breach of warranty claims on behalf of himself and nationwide and Washington classes of purchases and lessees of 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicles. (Dkt. No. 1-1).

On May 25, 2022, Mazda removed the state case to this Court (Dkt. No. 1) and then moved to dismiss the Complaint for failure to state a claim on July 7, 2022. (Dkt. No. 12).

On July 18, 2022, Plaintiffs filed a First Amended Class Action Complaint which added Plaintiffs Stephanie Crain, Chad Hinton and Julio Zelaya, and Florida and Tennessee state classes and claims in addition to the nationwide and Washington classes and claims. (Dkt. No. 14 ("FAC")).  When the FAC was filed, Mazda was not repairing the defect and was instructing Mazda dealers to top off engine oil in the Class Vehicles between oil changes. *Id.* ¶¶ 80-88.

Mazda again moved to dismiss the FAC for failure to state a claim on August 15, 2022. (Dkt. No. 18). Plaintiffs opposed the motion to dismiss the FAC on September 26, 2022. (Dkt. No. 23).

On October 3, 2022, the Parties filed their Rule 26(f) Report. (Dkt. No. 28).

On October 17, 2022, the Court held a hearing on Mazda's motion to dismiss the FAC and ordered the Plaintiffs to file a Second Amended Class Action Complaint. (Dkt. No. 36).

On October 31, 2023, Plaintiffs filed a Second Amended Class Action Complaint ("SAC") which added Plaintiffs Anna Gilinets, Marcy Knysz and Lester Woo, and

California and Illinois state classes and claims in addition to the nationwide and Florida, Tennessee and Washington classes. (Dkt. No. 39).

Mazda moved to dismiss the SAC for failure to state a claim on December 2, 2022. (Dkt. No. 46). Plaintiffs opposed the motion to dismiss on January 11, 2023. (Dkt. No. 51).

On January 16, 2023, the Parties filed an updated Rule 26(f) Report. (Dkt. No. 53).

On January 26, 2023, Plaintiffs moved for appointment of Lemberg Law, LLC as interim Class Counsel (Dkt. No. 55) which the Court granted on April 7, 2023 (Dkt. No. 66). On the same day, Plaintiffs also moved to intervene and to stay *Heinz v. Mazda Motor of America, Inc.,* a later-filed case originally filed in the Eastern District of California which raises substantially similar claims based on the same Defect. 2:23-cv-05420-DOC-DFM (ECF No. 10). *Heinz* was subsequently transferred to this Court and stayed pending resolution of this action.

On January 30, 2023, the Court held a Scheduling Conference and hearing on Mazda's motion to dismiss the SAC and took the motion under submission. (Dkt. No. 56).

On February 1, 2023, the Court entered the Scheduling Order. (Dkt. No. 57).

The Parties then engaged in discovery. Plaintiffs served interrogatories and requests for the production of documents on Mazda regarding the individual and class claims and the requirements of Rule 23. (Lemberg Decl. ¶ 11). Plaintiffs received extensive document productions from Defendant and repeatedly conferred with Defendant regarding the scope of its production and need for additional discovery. Plaintiffs later conducted a Rule 30(b)(6) deposition of Defendant regarding the merits, class issues, and the efficacy of the redesigned valve stem seals. *Id.*

On May 1, 2023, the Parties attended an in-person mediation before Hon. Dickran M. Tevrizian (Ret.) of JAMS. (Lemberg Decl. ¶ 13). The mediation was productive and following additional negotiations under the guidance of Judge

Tevrizian, a settlement in principle as to the benefits for the Class was reached, which was subsequently memorialized in a term sheet and the Settlement. *Id*.

On November 21, 2023, Plaintiffs filed a Third Amended Class Action Complaint ("TAC"), the operative complaint, which added Plaintiff Amy Bradshaw and North Carolina state class and claims in addition to the nationwide and for California, Florida, Illinois Tennessee and Washington classes. (Dkt. No. 84). Mazda filed its Answer on December 5, 2023. (Dkt. No. 86).

## **TERMS OF THE SETTLEMENT**

The Settlement Class is:

All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I(P) of the Agreement, in the United States of America, including the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

*See Settlement Agreement*, Art. I(Q).[5]

Settlement Class Vehicles are the following model year and model Mazda vehicles equipped with a 2.5L turbocharged engine and valve stem seals within the impacted VIN production range:

- Model Year 2021 Mazda3 (Japan built)
- Model Year 2021 & 2022 Mazda3 (Mexico built)
- Model Year 2021 & 2022 CX-30 (Mexico built)

---

[5] Excluded from the Settlement Class are (a) anyone claiming personal injury, property damage and/or subrogation; (b) all Judges, court staff, and/or mediators or arbitrators who have presided over the Action and their spouses; (c) all current employees, officers, directors, agents and representatives of Defendant, and their family members; (d) any affiliate, parent or subsidiary of Defendant and any entity in which Defendant has a controlling interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendant or any Released Parties from any Released Claims, and (k) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class. *Settlement Agreement*, Art. I(Q).

- Model Year 2021 Mazda6
- Model Year 2021 CX5
- Model Year 2021 CX9

*Settlement Agreement*, Art. I(P).

There are approximately 86,116 Settlement Class Vehicles. (Lemberg Decl. Decl. ¶ 12).

1. Repair Program

As part of the Settlement, MNAO will institute a Repair Program (the "Repair Program" or "Program") to repair Settlement Class Vehicles and replace qualifying vehicles' valve stem seals with non-defective parts. *Settlement Agreement*, Art. II(A). The Program will commence after the Court grants preliminary approval of the Settlement, and will last for the entirety of Class Vehicles' extended Powertrain Limited Warranty period of 84 months or 84,000 miles, whichever comes first (discussed below). *Id.* Art. II(A)(6-7).

Under the Program, any Class Vehicle that has excessive oil consumption as shown by one of the following will automatically qualify for the repair: (1) the Engine Oil Level Waning Light has illuminated with Diagnostic Trouble Code ("DTC") P250F:00, signifying low engine oil level, before the regular oil change interval of 7,500 miles or 1 year; (2) Class Vehicles enrolled with the Mazda Connected Services MyMazda mobile application have recorded a "Low Engine Oil Level" alert in the application before the regular oil change interval of 7,500 miles or 1 year; or (3) documented previous refilling of oil (either by a dealer or service station or the customer) before the engine oil level warning light came on in between regular oil change interval of 7,500 miles or 1 year (documented proof can include but is not limited to repair orders or invoices from dealers or service stations or a receipt for the purchase of engine oil). *Settlement Agreement*, Art. II(A)(2).

Based on data produced by Mazda, 58,789 Settlement Class Vehicles, or approximately 68% of all Class Vehicles, have had their Low Engine Oil Level light

illuminate before the regular oil change interval and thereby qualify. (Lemberg Decl. ¶ 12).

For those vehicles that cannot show prior excessive oil consumption by any of the above means, an oil consumption test can be performed at an MNAO authorized dealer and at MNAO's cost. *Settlement Agreement*, Art. II(A)(2).

MNAO will provide a loaner vehicle to any Class Vehicle owner or lessee during the period of an evaluation or repair under the Program, subject to availability. *Settlement Agreement*, Art. II(A)(5).

Moreover, Class Vehicle owners will be made aware of the Program via multiple means.  In addition to the Class Notice that will be mailed to Class Members setting forth the benefits under the Settlement, during the initial one-year period after the Program begins, MNAO authorized dealers servicing Class Vehicles for any reason will check whether DTC P250F:00 code is stored in the vehicle memory, and if so, will advise the Class Vehicle owner or lessee if they are eligible to receive replacement valve stem seals under the Program. *Settlement Agreement*, Art. II(A)(4).

Plaintiffs retained Hemming Morse, LLC, to provide an expert opinion of the value of the benefits to the various settlement components.  The total value of the Repair portion of the settlement is at least $46,413, 916. (HM Report ¶¶ 28-35).  The value of the free oil consumption tests, assuming 27,327 Settlement Class Members need one, is $4,645,590. (HM Report ¶¶ 36-41). MNAO does not endorse these valuations and reserves the right to assert its own valuations should the need arise.

2. Powertrain Limited Warranty Extension

The Settlement Agreement provides Settlement Class Members with a warranty extension which expands the coverage period for the Powertrain Limited Warranties by an additional 24 months or 20,000 miles, from the earlier of 60 months or 60,000 miles to 84 months or 84,000 miles. *Settlement Agreement*, Art. I(S), II(B).  The extended Powertrain Limited Warranty will cover defects in materials and workmanship for any powertrain component; it is not limited to repairs arising from the defective Valve Stem

Seals. *Id.*, Art. II(B)(1-2). The extended warranty is also fully transferable to subsequent owners or lessees of Class Vehicles. *Id.*, Art. II(B)(4). The value of the warranty extension to the Settlement Class is $58,836,174. (HM Report ¶¶ 24-27). As noted above, MNAO does not endorse Plaintiffs' valuations and reserves the right to assert its own valuations should the need arise.

3. <u>Reimbursement of Out-of-Pocket Costs for Excessive Oil Consumption</u>

Settlement Class Members that submit qualifying and timely claims are entitled to dollar-for-dollar reimbursement of out-of-pocket expenses for (1) oil changes performed more frequently than the normal interval of 7,500 miles or 1 year or (2) additional engine oil purchased in between the normal interval of 7,500 miles or 1 year. *Settlement Agreement*, Art. II(C)(1-2). These reimbursements will be provided irrespective of whether the oil change or engine oil purchase out-of-pocket expense was incurred at an MNAO authorized dealership, a non-MNAO affiliated service station or dealership or elsewhere. *Id.*, Art. II(C)(3).

4. <u>The Release</u>

In exchange for the foregoing, Class Members who do not timely exclude themselves from the Settlement will be bound by a release applicable to all claims relating to the defective valve stem seals of Class Vehicles. *Settlement Agreement*, Art. I(N), VIII(D). Released Claims will not, however, include claims for personal injuries, wrongful death, property damage (other than damage to the Settlement Class Vehicles), subrogation, or any claims that arise from any future National Highway Traffic Safety Administration ("NHTSA") recall or voluntary recall unrelated to the Valve Stem Defect. *Settlement Agreement*, Art. I(N).

## ARGUMENT

## I. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could

hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).  Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

> Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers preliminary class certification. *Id.* Second, if the court makes a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.; see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

*Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 1398816, at *2 (E.D. Cal. Apr. 19, 2017).  With this Motion, Plaintiffs initiate the first two stages and ask the Court to conduct a preliminary fairness evaluation, preliminarily certify the class and direct notice to the class.

Generally stated, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." Manual for Complex Litig. § 13:13 (5th ed. 2011); *see also Markson v. CRST Int'l, Inc.*, 2022 WL 1585745, at *2 (C.D. Cal. Apr. 1, 2022).

### 1.  **The Settlement Agreement Is the Result of Engaged, Arm's-Length Negotiations Overseen By An Experienced Mediator**

Settlements that are the result of arm's-length negotiations among experienced counsel are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (*citing* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)) (internal quotations omitted); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."). The involvement of a third-party neutral supports a finding that the process used to reach the settlement was not collusive. *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (*citing Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

This Settlement is "the product of serious, informed, non-collusive negotiations." *Kulesa v. PC Cleaner, Inc.,* 2014 WL 12581769, at *4 (C.D. Cal. Feb. 10, 2014). The Settlement was agreed after Plaintiffs conducted an extensive pre-filing investigation, briefed two motions to dismiss, and conducted discovery on the merits and class certification issues. The settlement negotiations were contentious, adversarial and took place before Hon. Dickran M. Tevrizian (Ret.) of JAMS, a well-respected mediator and a former judge for the U.S. District Court for the Central District of California and state trial courts. That the Settlement was arrived at only after such arm's-length negotiations weighs in favor of preliminary approval. *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (the participation of a respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner"); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (finding the fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion in the negotiating process).

Additionally, Plaintiffs' counsel, Lemberg Law, LLC, has extensive experience litigating consumer class actions like this one. (Lemberg Decl. ¶¶ 3, 4). As a result, Class Counsel was well-positioned to evaluate the strengths and weaknesses of their case at the mediation to negotiate class-wide relief and is able to recommend approval of the Settlement Agreement to the Court. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (noting "significant investigation, discovery and research" provides parties with sufficient information to make informed settlement decisions);

Further, while Defendant has agreed to separately pay an award of attorneys' fees and costs, there is no clear sailing provision in the Settlement. *Settlement Agreement*, Art. VIII(C). Instead, Plaintiffs will file a motion for attorneys' fees and costs , Defendant is free to oppose, and an award of fees must be approved by the Court. *Id*.; *Zakikhani v. Hyundai Motor Co.,* 2023 WL 4544774, at *7 (C.D. Cal., May 5, 2023).

The Parties' agreement to settle this litigation reflects well-informed and engaged arm's-length bargaining with the assistance of a highly experienced mediator. The Settlement Agreement is not the product of collusion and reflects the independent judgment of counsel and is the result of serious and substantive negotiations.

### 2.  There are No Obvious Deficiencies to the Settlement Agreement

The Settlement provides substantial benefits to Settlement Class Members. Payment of attorneys' fees, costs, and incentive awards are to be decided by the Court, will be paid separate and apart from the benefits to the Class, and the Settlement is not conditioned on any particular amount of a fee or incentive award. The Settlement Agreement and Notice Plan provide means for Settlement Class Members to opt-out or object. The Released Claims are limited to claims arising from the alleged defect at issue in this case. Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to Class members under Rule 23(e). *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (citation omitted). Because

the proposed Settlement meets the requirements for preliminary approval, as detailed herein, notice should be ordered to the Class.

### 3. The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class or Class Representatives

All members of the Class will receive Powertrain Limited Warranty extensions, will be able to participate in the Repair Program, and will have an opportunity for reimbursement of out-of-pocket costs for excessive oil consumption. Thus, the Settlement does not provide preferential treatment to any segment of the Class and the benefits are proportionate to the harm each Class Member suffered on account of the alleged Defect. *See Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015).

Nor will the Class Representatives receive preferential treatment or compensation disproportionate to their respective harm and contribution to the case under this proposed settlement. Each class representative is permitted to make claims for relief under the settlement terms like any other Class Member. Moreover, Plaintiffs will each seek service awards $2,200. Incentive awards promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. Manual for Complex Litig. § 21.62 n.971 (4th ed. 2004). In evaluating such an award, the Court has a duty to make sure such an award is deserved, reasonable and does not destroy the adequacy of the class representative. *Dakota Med.*, *Inc.,* 2017 WL 1398816 at *5. The proposed service awards are not "outside the realm of what may be reasonable, contingent on a sufficient showing, and [should provide] no cause for the court to hesitate in finding the settlement preliminarily fair." *Id.* (preliminarily approving settlement agreement where counsel sought a $15,000 incentive award) (collecting cases).

### 4. The Settlement Falls Within the Range of Possible Approval.

In determining whether to grant preliminary approval, district courts must consider several factors, including: "the strength of the plaintiffs' case; the risk,

expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 23(e). However, "[e]ach factor does not necessarily apply to every class action settlement, and others may also be considered." *Moreno v. Pretium Packaging, L.L.C.*, 2021 WL 3673845, at *1 (C.D. Cal. Aug. 6, 2021) (citation omitted)).[6]

### a. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Plaintiffs believe they would ultimately prevail on their claims absent this Settlement, there are considerable risks inherent in litigation and the facts at issue in this case. *See Shahbazian v. Fast Auto Loans, Inc.*, 2019 WL 8955420, at *6 (C.D. Cal. June 20, 2019) (recognizing "the uncertainty and risks inherent in litigation and potential appeals").  For instance, Mazda contends that the Valve Stem Seal Defect is not covered by its warranties and thus it has no obligation to repair the alleged defect and the express warranty claims fail; the Class Vehicles were purportedly merchantable notwithstanding the alleged defect; it had no pre-sale knowledge of the alleged defect and in any event did not have a duty to disclose the alleged defect to Class Vehicle owners and lessees; and has asserted other defenses to the state law claims for various other reasons.  (Dkt. No. 46 at pp. 6-23). While Plaintiffs vehemently disagree with each of these assertions (*see, e.g.,* Dkt. No. 51), they illustrate the risk of additional litigation.

Further, class actions typically entail a high level of risk, expense, and complexity, and thus there is a "strong judicial policy that favors settlements,

---

[6] Here, there is no governmental participant in this litigation so this factor is not relevant.

particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (internal citations omitted). While this case has been litigated for nearly two years and substantial discovery completed, absent settlement the Parties must complete additional discovery and there are substantial additional expenses and attorney time that must be devoted to class certification, dispositive motion practice, pre-trial preparations and trial. Further, as in any case, there is a substantial risk of losing at trial. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (discussing the risk of continued litigation following class certification). And, even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal or series of appeals. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). In contrast, the Settlement Agreement provides substantial relief to Settlement Class members without further delay.

### b. The Risk of Maintaining Class Action Status Through Trial

A litigation class has not been certified here. If this litigation continued without settlement, Plaintiffs face risks certifying the classes – which involve the laws of several different states as well as nationwide claims – and maintaining them through trial. Although Plaintiffs believe this case warrants class certification, class certification proceedings are highly discretionary. *See, e.g., Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011). Mazda has already challenged whether Plaintiffs have standing to represent a nationwide class for litigation (as opposed to settlement) purposes. (*See, e.g.*, Dkt. Nos. 46 at pp. 23-24, 86 at p. 3, n. 2). *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). These risks weigh in favor of approving the settlement now.

### c.  The Amount and Type of Relief Offered in Settlement

The Settlement provides Class Members with significant value including the Repair Program (valued at $46,413,916 by Plaintiffs' expert), the extended Powertrain Limited Warranties (valued at $58,836,174 by Plaintiffs' expert), and reimbursement of out-of-pocket expenses for excessive oil consumption. All Class Members receive the extended powertrain warranty, all class members that have manifested an oil consumption issue (shown by, e.g., their engine oil warning light triggered before the Mazda recommended interval for regular oil service of 7,500 miles or 1 year which is at least 58,789 vehicles) can get the repair, all class members that paid out of pocket for excessive oil refills or oil changes before the Mazda recommended interval for regular oil service of 7,500 miles or 1 year can submit claims for reimbursement. Class Members therefore receive a significant amount of the relief Plaintiffs sought in their Complaint, while avoiding the risks of continued litigation.

This relief exceeds or is comparable to similar settlements for oil consumption issues which have been approved. *See, e.g., Bang v. BMW of North America, LLC,* No. 2:15-cv-06945-MCA-SCM (D.N.J., Sept. 11, 2018) (ECF Nos. 111 & 122) (approving oil consumption class action where relief to class consisted of replacement of allegedly defective engine causing oil consumption if vehicle failed two oil consumption tests and if class member contributes towards the cost of the replacement; reimbursement of certain out-of-pocket costs for oil consumption; and coupons for additional oil changes and batteries and a discount towards the purchase of a separate BMW model); *Yaeger v. Subaru of Am., Inc.,* 2016 WL 4541861, at *3-4 (D.N.J. Aug. 31, 2016) (approving oil consumption class action where relief to the class was repair; extended warranty to cover only repairs needed to correct engine oil consumption; and reimbursement of out-of-pocket expenses); *Asghari v. Volkswagen Grp. of Am., Inc.,* 2015 WL 12732462, at *7, 21 (C.D. Cal. May 29, 2015) (granting final approval to oil consumption class action where relief to the class was repair or reimbursement for those who had already paid for repair out-of-pocket; extended warranty to cover repairs needed to correct engine

oil consumption; and reimbursement of out-of-pocket expense). Notably, the relief here includes a repair free of charge, covers most of the class if they have had the engine oil warning light activate prematurely, and provides for extended warranty coverage for the entire powertrain.

This factor thus weighs in favor of approval. *See Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (finding similar consideration offered for vehicle defect claims, including warning drivers about defect, providing an extended warranty, and reimbursing expenses, weighed in favor of approval).

### d. The Extent of Discovery Completed and the Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239; *see Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011) (finding completion of informal discovery supported preliminary approval). Class Counsel completed adequate discovery to make an informed decision about the Settlement. Both before and after filing the Complaint, Class Counsel devoted substantial time to investigating the underlying facts and developing the factual and legal allegations including reviewing publicly available sources of technical information and complaints, interviewing class members, and analyzing the Valve Stem Seal Defect. (Lemberg Decl. ¶¶ 10-12). Plaintiffs also served interrogatories and requests for the production of documents on Defendant. *Id.* Plaintiffs received numerous internal documents from Defendant outlining, *inter alia,* Defendant's investigation into the root cause of the alleged defect, the scope of the alleged defect, and Defendant's repair regarding the alleged defect including the efficacy of the repair. *Id.* Plaintiffs also deposed a Rule 30(b)(6) witness regarding the same areas and to confirm that the redesigned valve stem seals correct the alleged defect. *Id.* Based on Class Counsel's substantial experience litigating consumer class actions, including

automotive defect cases, the information and discovery obtained was sufficient to evaluate the fairness of the proposed settlement for the Class. *Id.* ¶¶ 15-16.

### e. The Experience and Views of Counsel

"Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel." *Clesceri*, 2011 WL 320998, at \*10. Here, Class Counsel believes the Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions, including automotive defect class actions. (Lemberg Decl. ¶¶ 4-5; Declaration of Stephen Taylor ¶¶ 1-5, 10; Declaration of Joshua Markovits ¶¶ 2-7; 12).

### f. The Reaction of Class Members

Plaintiffs have not yet provided Class Notice to the Settlement Class Members, so it is premature to assess this factor. *See Navarrete v. Sprint UnitedMgmt. Co.*, 2021 WL 4352903, at \*11 (C.D. Cal. Mar. 2, 2021) (noting that the lack of evidence concerning this factor "is not uncommon at the preliminary approval stage"). However, before the Final Fairness hearing, the Claims Administrator will report on exclusion requests and objections after notice is disseminated.

## II.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

To approve a class action settlement, the Court must also find that the Settlement Class is appropriately certified pursuant to Fed. R. Civ. P. 23. *See Manual for Complex Litigation* (4th) § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). In the context of a settlement class, certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

To be certified, a proposed class must satisfy the criteria set forth in Federal Rule of Civil Procedure 23(a) and fit into one of the three categories outlined in Rule 23(b). *Amchem*, 521 U.S. at 614; *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted). Rule 23(a) requires that (1) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity), (2) there are questions of law or fact common to the proposed class (commonality), (3) the named-plaintiff's claims are typical of those of the class (typicality), and (4) the named-plaintiffs and their counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4).  In addition, where, as here, certification is sought under Rule 23(b)(3), the proponent of class certification must show that (1) the common questions of law or fact predominate over questions affecting only individual class members (predominance), and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3).

For settlement purposes only, Plaintiffs respectfully request that the Court certify the Settlement Class defined as:

> All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I(P) of the Agreement, in the United States of America, including the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

*Settlement Agreement*, Art. I(Q).  As detailed below, the Settlement Class satisfies the Fed. R. Civ. P. 23 requirements.

### 1. **Numerosity is Satisfied**

Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The exact number of class members need not be known, so long as the class is readily ascertainable. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  In addition, there is no specific number of class members required, though the numerosity requirement is typically satisfied when the class comprises at least forty members. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). The proposed class here consists of the owners or

1    lessees of more than 86,000 Class Vehicles. Joinder of these claims is impractical and

2    the numerosity requirement is satisfied.

### 2. Commonality is Satisfied

3

4        Pursuant to Rule 23(a)(2), a court must determine whether "there are questions

5    of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ.

6    P. 23(a)(2). Commonality is demonstrated when the claims of all class members

7    "depend upon a common contention . . . that is capable of classwide resolution." *Wal-*

8    *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011). Commonality

9    exists "[w]here the circumstances of each particular class member vary but retain a

10   common core of factual or legal issues with the rest of the class." *Parra v. Bashas',*

11   *Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). The standard is "construed permissively,"

12   *id.* at 978, and "[i]t is not necessary that members of the proposed class share every fact

13   in common." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir.

     2012) (internal quotation marks omitted).

14       Here, common issues of fact and law include: (1) whether the Class Vehicles

15   suffer from the Valve Stem Seal Defect; (2) whether the alleged defect is material; (3)

16   whether Defendant had knowledge of the alleged defect at the time of sale; (4) whether

17   Defendant had a duty to disclose the alleged defect and concealed the alleged defect;

18   and (5) whether Defendant's conduct violates the consumer protection statutes alleged

19   and the express and implied warranties. Plaintiffs contend that determination of these

20   issues, regardless of the answers, will resolve the allegations for the whole Class "in

21   one stroke." *Dukes*, 131 S. Ct. at 2545. As such, the commonality requirement is

     satisfied.

22

### 3. Typicality is Satisfied

23

24       The third requirement of Rule 23(a)—typicality—is satisfied where "the claims

25   . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ.

26   P. 23(a)(3). The test of typicality is "whether other members have the same or similar

     injury, whether the action is based on conduct which is not unique to the named

plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is satisfied where the class representatives' claims are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)*; see also Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). Plaintiffs are each purchasers or lessees of Class Vehicles containing the Valve Stem Seal Defect. They each bring the same type of claims based on the same factual and legal theories. They each allege they suffered economic injuries arising out of Defendant's uniform conduct. Because Plaintiffs' claims arise from and challenge the same course of conduct, typicality is satisfied.

### 4. <u>Adequacy of Representation is Satisfied</u>

Adequacy under Fed. R. Civ. P. 23(a)(4) is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy has two components: (i) whether the named-plaintiff and her counsel have any conflicts of interest with other class members, and (ii) whether the plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between Plaintiffs (or their counsel) and the other members of the Settlement Class, as they are all seeking recovery under the same legal theories for the same kind of injury. Further, Plaintiffs' counsel has extensive experience litigating consumer class actions including automotive defect cases and have been appointed class counsel in numerous other cases. (Lemberg Decl. ¶¶ 4-5; Taylor Decl. ¶¶ 4-5; Markovits Decl. ¶¶ 6-7). Based on their experience and track record, Plaintiffs' counsel is clearly adequate to represent the Settlement Class.

### 5. <u>Common Questions of Law and Fact Predominate</u>

The focus of the predominance requirement is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at

623.  Predominance tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation," *Wolin*, 617 F.3d at 1172, and exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication" *Hanlon*, 150 F.3d at 1022.

Here, the questions at the core of Plaintiffs' claims are whether the Class Vehicles have similarly defective valve stem seals in their uniform engines, whether Defendant had a duty to disclose the alleged defect at the time of sale, whether Defendant knowingly concealed the alleged defect, whether the alleged defect rendered the Class Vehicles unmerchantable, whether Defendant had an obligation to repair the alleged defect under its warranties, and whether the members of the Classes suffered an economic loss as a result of Defendant's conduct.  These questions can be answered based on evidence common to all members of the Class.  For instance, to show pre-sale knowledge and the existence of the alleged defect the Class can use Defendant's same internal records applicable to all Class Members.  Moreover, class members will rely upon the same uniform warranty language to support their warranty claims. These common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so.").

### 6.  Superiority is Satisfied

The purpose of the superiority requirement is one of judicial economy and assurance that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76.  A class-wide settlement of this action is superior to other available methods for the fair and efficient adjudication of this controversy because it is neither economically feasible, nor judicially efficient, for the hundreds of thousands Settlement Class Members to pursue their claims against

Harman on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct. 1166 (1980).  By utilizing the class action vehicle, relief may be provided to class members without the need for numerous separate trials on the same facts. Hence, a class action will achieve economies of time, effort and expense, as well as promote uniformity of decision as to persons similarly situated.  Because this is a settlement class, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620.  Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

### III.    THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE

In addition to preliminarily approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class Notice and Notice Plan. Pursuant to Rule 23(e), the Court is required to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Although the question of what constitutes reasonable notice is left to the discretion of the Court, Rule 23 provides that the best notice practicable "include[s] individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

First, the Settlement Agreement provides that all identifiable Class Members will receive a copy of the Class Notice postcard via direct U.S. mail. *Settlement Agreement*, Art. IV(B); Declaration of Jennifer M. Keough, CEO of JND Legal Administration ("Keough Decl.") ¶¶ 5-14.  Mailed notice is presumptively reasonable and satisfies the requirements of due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965 (1985) (finding the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"); *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) ("due

process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice.")

Class members will be located based on the records of Settlement Class Vehicles, their vehicle identification numbers, and using the services of Experian. *Settlement Agreement*, Art. IV(B)(2); Keough Decl. ¶ 8. Experian tracks vehicle ownership through state title and registration records making it possible to identify vehicles that have moved between states and subsequently registered in another state, and have been approved in similar cases. *See Patrick v. Volkswagen Grp. of Am.,* 2021 WL 3616105, at *5 (C.D. Cal. Mar. 10, 2021) (approving notice plan where Experian or other companies retained by the parties or claims administrator will obtain the names and addresses of class members from Departments of Motor Vehicles using VINs).

The Settlement Administrator advises it will take it approximately 60 days from the time of preliminary approval to complete the identification of names and addresses of Settlement Class Members and to mail them the notice. (Keogh Decl. ¶ 9).

In addition to notice by U.S. Mail, the Settlement Administrator will set up a dedicated website that will include the Class Notice, a portal to submit a claim form for reimbursement of out-of-pocket expenses online in addition to instructions for mailing a claim, the Settlement Agreement, other relevant documents, and applicable deadlines for objecting to or opting out of the Settlement and for submitting reimbursement claims. *Settlement Agreement*, Art. IV(B)(6); Keogh Decl. ¶¶ 14-18. Claims for reimbursement can be submitted to the administrator up to 75 days after the date of Final Approval and Judgment. *Id*. Art. II(C)(4).

Second, the proposed Class Notice (Exhibit 4 to the Settlement Agreement) communicates the information required by Rule 23(c)(2)(B)(i)-(vii). It explains the terms of the Settlement, the Class definition, the underlying litigation, and the fact that Class Members may appear through counsel; details the process for requesting exclusion from the Settlement; and discloses the binding effect of the Settlement on Class Members if they do not request exclusion from the Court. *Id.* Settlement Class

Members must submit their requests for exclusion or objections within 45 days after the notice is sent which is conveyed in the notice. *Id.*; S*ettlement Agreement*, Art. V(A)(1) & (B)(2); *see also Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (stating that a forty-day opt out period following the mailing of class notices satisfied the requirement that notice be "the best notice practicable"); *Navarrete v. Sprint United Mgmt. Co.*, 2021 WL 4352903, at *12 (C.D. Cal. Mar. 2, 2021) (approving a 45-day opt out and objection period); *Kearney v. Hyundai Motor Am.*, 2012 WL 13049699, at *13 (C.D. Cal. Dec. 17, 2012) (same).

Accordingly, Plaintiffs request that the Court approve this method of notice as the best practicable method under the circumstances.

## SCHEDULE OF PROCEEDINGS AND DEADLINES

The proposed preliminary approval order contains a schedule incorporating the deadlines agreed to in the Settlement Agreement. Proposed Preliminary Approval Order ¶ 33. Key deadlines agreed to by the Parties and set by the Proposed Preliminary Approval Order are:

| EVENT | SCHEDULED DATE |
| --- | --- |
| Notice Mailing Deadline | 60 days after entry of Preliminary Approval Order |
| Attorney's Fees and Costs and Incentive Awards Motion due by | 3 days after Notice Mailing Deadline |
| Last day for Class Members to Object to, or Exclude Themselves from, the Settlement | 45 days following the Notice Mailing Deadline |
| Plaintiffs' Brief in support of Final Approval & Report from Administrator on Objections and Exclusions | 14 days before the Final Fairness Hearing |
| Defendant's Brief in support of Final Approval | 7 days before the Final Fairness Hearing |
| Final Fairness Hearing | No earlier than 135 days after entry of the preliminary approval order |

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order:

1. Preliminarily approving the terms of the Parties' Class Action Settlement Agreement;

2. Conditionally certifying the Settlement Class for the limited purpose of settlement;

3. Appointing Plaintiffs as Settlement Class Representatives;

4. Appointing Lemberg Law, LLC, as Class Counsel;

5. Approving the form, content and method of delivering Notice to the Settlement Class set forth in the Parties' Settlement Agreement and in the exhibits thereto; and

6. Scheduling a final fairness hearing in accordance with the deadlines provided in the Settlement Agreement.

DATED:  January 19, 2024

By:   _/s/ Sergei Lemberg_
Trinette G. Kent
TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (admitted *pro hac vice*)
Stephen Taylor (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com
E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs and Interim Class*
*Counsel*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, and not a party to the above-entitled cause. I hereby certify that on January 19, 2024, a copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

By:___*/s/  Trinette G. Kent*_____
Trinette G. Kent
Lemberg Law, LLC
*Attorney for Plaintiffs*