TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (admitted *pro hac vice*)
Stephen Taylor (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com
E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, Lester Woo, and Amy Bradshaw, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>Mazda Motor of America, Inc.,<br><br>Defendant. | Case No.: 8:22-cv-01055-DOC-DFM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      August 5, 2024<br>Judge:     Hon. David O. Carter<br>Time:      8:30 a.m.<br>Courtroom: 10A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 5, 2024, at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable David O. Carter, District Judge of the United States District Court for the Central District of California, in Courtroom 10A, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 90012, Plaintiffs Gary Guthrie, Stephanie Crain, Chad Hinton, Julio Zelaya, Anna Gilinets, Marcy Knysz, Lester Woo, and Amy Bradshaw ("Plaintiffs") will, and hereby do move for an order of the Court to grant final approval of the Parties' Class Action Settlement Agreement and affirm its conditional certification of the Settlement Class.

This Motion is based on this notice; the accompanying memorandum of points and authorities; the declarations from JND Legal Administration, Sergei Lemberg, Stephen Taylor, Joshua Markovits, and the named Plaintiffs; the exhibits attached hereto (including the Settlement Agreement); and all other papers filed and proceedings held in this Action.

DATED:  July 22, 2024

By:   _/s/  Trinette G. Kent_
Trinette G. Kent
TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (admitted *pro hac vice*)
Stephen Taylor (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)
Lemberg Law, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com
E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs and Class Counsel*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ON THE VALVE STEM SEAL DEFECT........................2

III.    PROCEDURAL HISTORY .........................................................................5

IV.     TERMS OF THE SETTLEMENT .................................................................7

V.      NOTICE PROCESS ................................................................................11

VI.     CLAIMS, OBJECTIONS AND REQUESTS FOR EXCLUSIONS ............12

ARGUMENT ....................................................................................................13

  I.    STANDARD ..........................................................................................13

  II.   THE SETTLEMENT CLASS SHOULD AFFIRM ITS PRELIMINARY
        CERTIFICATION OF THE SETTLEMENT CLASS..............................15

  III.  THE RULE 23(E)(2) FACTORS SUPPORT A FINDING THAT THE
        SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............17

        A. Rule 23(e)(2)(A)&(B) – the Class Representatives and Counsel have
           more than adequately represented the class and the Settlement
           Agreement Is the Result Arm's-Length Negotiations .......................17

        B. Rule 23(e)(2)(C) - The Relief Provided for the Class is More than
           Adequate ..........................................................................................19

        C. Rule 23(e)(2)(D) - The Settlement Treats Class Members Equitably
           Relative to Each Other .....................................................................21

  IV.   THE NINTH CIRUCIT FACTORS SUPPORT A FINDING THAT THE
        SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............22

        A.  The Experience and Views of Counsel .............................................22

        B.  Presence of a Governmental Participant .........................................22

        C.  Reaction of the Class ......................................................................23

  V.    THE SETTLEMENT IS NOT THE PRODUCT OF COLLUSION ........23

  VI.   DIRECT NOTICE WAS GIVEN TO ALL CLASS MEMBERS IN A
        REASONABLE MANNER .................................................................25

CONCLUSION....................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

*Asghari v. Volkswagen Grp. of Am., Inc.,*
  2015 WL 12732462 (C.D. Cal. May 29, 2015) ..........................................................21

*Bang v. BMW of North America, LLC,*
  No. 2:15-cv-06945-MCA-SCM (D.N.J., Sept. 11, 2018) ...........................................20

*Banh v. Am. Honda Motor Co.,*
  2021 WL 3468113 (C.D. Cal. June 3, 2021) .............................................................27

*Bravo v. Gale Triangle, Inc.,*
  2017 WL 708766 (C.D. Cal. Feb. 16, 2017) .............................................................27

*Chambers v. Whirlpool Corp.,*
  214 F. Supp. 3d 877 (C.D. Cal. 2016) .......................................................................15

*Churchill Vill., L.L.C. v. Gen. Elec,*
  361 F.3d 566 (9th Cir. 2004) .....................................................................................28

*Clesceri v. Beach City Investigations & Protective Servs., Inc.,*
  2011 WL 320998 (C.D. Cal. Jan. 27, 2011) .............................................................24

*Contreras v. Armstrong Flooring,*
  2021 WL 4352299 (C.D. Cal. July 6, 2021) .............................................................27

*D.S. v. Washington State Dep't of Child., Youth, & Fams.,*
  2022 WL 4366186 (W.D. Wash. Sept. 21, 2022) ......................................................26

*Deposit Guar. Nat'l Bank v. Roper,*
  445 U.S. 326, 100 S. Ct. 1166 (1980) .......................................................................18

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...................................................................................17

*In re AMF Bowling,*
  334 F. Supp. 2d 462 (S.D.N.Y. 2004) .......................................................................20

*In re Apple Computer, Inc. Deriv. Litig.,*
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .............................................................23

*In re ConAgra Foods, Inc.,*
  2022 WL 17243625 (C.D. Cal. Nov. 14, 2022) .........................................................15

*In re High-Tech Employee Antitrust Litig.,*
  2013 WL 632881 (N.D. Cal. Oct. 30, 2013) .............................................................19

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.,*
  2024 WL 414319 (N.D. Cal. Feb. 2, 2024) ...............................................................13

*In Re Ring LLC Priv. Litig.*,
  2024 WL 2845978 (C.D. Cal. May 28, 2024)..........................................................23

*In re WorldCom, Inc. ERISA Litig.*,
  2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004).........................................................20

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ..................................................................................14

*Malta v. Fed. Home Loan Mortg. Corp.*,
  2013 WL 444619 (S.D. Cal. Feb. 5, 2013)..............................................................16

*Mendoza v. Hyundai Motor Co.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017)............................................................25

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
  2012 WL 10277179 (N.D. Cal. Jan. 6, 2012)..........................................................24

*Nat'l Rural Telecomm. Coop.*,
  221 F.R.D. 221 F.R.D. 523 (C.D. Cal. 2004)..........................................................25

*Ochinero v. Ladera Lending, Inc.*,
  2021 WL 4460334 (C.D. Cal. July 19, 2021) .........................................................14

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010)............................................................................28

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................................19

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019))...............................................................................15

*Satchell v. Fed. Exp. Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).........................................................26

*Shahbazian v. Fast Auto Loans, Inc.*,
  2019 WL 8955420 (C.D. Cal. June 20, 2019).........................................................22

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ..................................................................................28

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)................................................................................................18

*Wallace v. Countrywide Home Loans, Inc.*,
  2015 WL 13284517 (C.D. Cal. Apr. 17, 2015).......................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541, 2545 (2011) ..........................................................16

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ................................................................ 16, 18

*Yaeger v. Subaru of Am., Inc.,*
    2016 WL 4541861 (D.N.J. Aug. 31, 2016) ................................................. 21

*Zakikhani v. Hyundai Motor Co.,*
    2023 WL 4544774 (C.D. Cal. May 5, 2023) ......................................... 25, 26

**OTHER AUTHORITIES**

Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide
    (Federal Judicial Center 2010 ..................................................................... 12

**RULES**

Fed. R. Civ. P. 23(a) ....................................................................................... 13

Fed. R. Civ. P. 23(b)(3) ................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 25

Fed. R. Civ. P. 23(e)(1) ................................................................................... 25

Fed. R. Civ. P. 23(e)(2) ................................................................................... 13

## I.     **INTRODUCTION**

Plaintiffs seek final approval of the Class Action Settlement between Plaintiffs and Defendant Mazda Motor of America, Inc. ("MNAO"). The Settlement provides numerous forms of relief to current and former owners and lessees of approximately 86,000 Class Vehicles.[1] Class Vehicles contain Skyactiv-G 2.5T engines which can contain defective valve stem seals which cause excessive engine oil consumption (the alleged "Valve Stem Seal Defect"). Under the Settlement, Class Vehicles that have manifested an oil consumption issue are entitled to a repair of the defect in the form of a redesigned valve stem seal (the "Repair Program" or "Program"). Second, the Settlement extends the Mazda Powertrain Limited Warranties for all Settlement Class Vehicles, whether an oil consumption issue has occurred or not, to 84 months/84,000 miles, from the earlier of 60 months/60,000 miles. Third, MNAO will fully reimburse Settlement Class Members who submit approved claims for out-of-pocket costs for oil purchased and oil changes performed before the normal oil change interval. The value of the repair and the warranty extension to the Settlement Class alone is $105,250.08[2] (Report of Susan K. Thompson & Brian S. Repucci of Hemming Morse, LLC (Lemberg Decl. Ex. A and the "HM Report") ¶¶ 25-35). Moreover, there is no aggregate cap on the amount of payments MNAO is required to make under this settlement for warranty covered repairs or for reimbursement for oil and oil changes.

The benefits provided in the Settlement were only achieved after nearly two years of adversarial litigation against a well-funded defendant and highly competent defense counsel. After conducting extensive pre-suit investigations, briefing two motions to

---

[1] The "Class Vehicles" or "Settlement Class Vehicles" are the following year and model Mazda vehicles: 2021-2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021-2022 Mazda3, and 2021 Mazda6 Class Vehicles equipped with a 2.5L turbocharged engine and valve stem seals in the impacted VIN production range. *Settlement Agreement*, Art I(P).

[2] MNAO does not endorse the valuation proposed by Plaintiffs' expert here or otherwise throughout the Motion for Final Approval.

dismiss, and engaging in written, documentary, and oral discovery in preparation for class certification, the parties were well informed as to the strengths and weaknesses of the case. This knowledge informed the Parties' mediation sessions with Hon. Dickran M. Tevrizian (Ret.) of JAMS, which resulted in the exceptional Settlement.

Given the results achieved and consideration of the Rule 23 factors for approval of class settlements in the Ninth Circuit, Plaintiffs respectfully request the Court grant final approval to the Settlement.

## II.   BACKGROUND ON THE VALVE STEM SEAL DEFECT

Plaintiffs allege that Class Vehicles have defective valve stem seals in their uniform Skyactiv-G 2.5T turbo engines that causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals. (Dkt. No. 84 (Third Amended Complaint ("TAC")) ¶¶ 2, 114-120).

The alleged defect was caused by an October 2020 design change to the "exhaust valve seals" in the impacted Class Vehicles' engines where Mazda had "changed the lip of the seal." Ward Tr.[3]  8:12-25, 9:7-15, 12:8-22.  Because of the design change, when Mazda installed the Class Vehicles' exhaust valve seals "they were susceptible to getting scratched" "as they went over the tip of the exhaust valve stem." *Id.* As a result, oil could leak past the seal on the exhaust side and "into the exhaust manifold, not the combustion chamber." Ward Tr. 71:25-72:25.  By July 2021 MNAO "confirm[ed] that the design change had caused the oil consumption to increase." *Id.* at Tr. 20:4-8

The redesigned valve stem seals were installed in approximately 86,000 Class Vehicles. Ward Tr. 23:5-8, 42:8-43:14.

In October and November 2021, MNAO issued technical service bulletin No. 01-012/21 to its dealerships.  At the time, MNAO had not diagnosed the cause of the defect.

---

[3] "Ward Tr." refers to excerpts from the deposition transcript of Jerry Ward, Senior Manager for Product Quality at MNAO, attached as Exhibit A to the Declaration of Sergei Lemberg.

MNAO acknowledged the Class Vehicles' oil consumption issues but advised dealers to only top off the engine oil. TAC ¶¶ 127-134.  Thus, when the Complaint and First Amended Class Action Complaint were filed in April and July 2022, Mazda was not repairing the defect.

In October 2022, six months after Plaintiffs initiated this action, Mazda issued a 53-page technical service bulletin to its dealers providing for a repair where dealerships could install redesigned valve stem seals but only for vehicles that had current – as in the day the repair was attempted – low oil. TAC ¶ 139.  This repair was performed with "a special tool that [Mazda Corporation] developed specific to be able to perform this repair" to install the redesigned part. Ward Tr. 44:1-9.  Because the engine remained in the vehicle during the repair, it is a "more streamlined and simple process for technicians to be able to perform" and a  "much better experience for [Mazda] customers and much shorter downtime of the vehicle to be able to perform that repair." *Id.*

Plaintiffs subsequently confirmed with Mazda that the repair is effective and dramatically reduces the Class Vehicles' oil consumption issues. Following the implementation of the redesigned parts, Mazda has tracked the effectiveness of the repair by comparing how often the low engine oil light appeared for unrepaired vehicles and repaired vehicles. Ward. Tr. 53:9-54:10.   While at least 68% of Class Vehicles with the original parts had their low engine oil light appear before they were due for oil changes, that figure has plummeted to approximately 12.9% for vehicles that have obtained the redesigned part. (Lemberg Decl. ¶ 15).  The latter figure is consistent with the rate of oil consumption for non-defective subject vehicles with 2.5L turbocharged engines. Ward Tr. 60:14-61:9, 61:18-24, 68:25-69:6.  Moreover, as more repairs are completed, it is expected that the figure will continue to decline. Ward Tr. 67:15-19.

Under the Settlement, Mazda has begun and will continue to provide this Valve Stem Seal repair to *all* affected Class Vehicles with a history of oil consumption issues without the need to show their vehicles' engine oil level is currently low.  Specifically,

under the old version of the guidance, MNAO directed its dealers to "Confirm with the oil level gauge that the engine oil has actually decreased. If the engine oil has NOT decreased, this TSB is not applicable." TSB 01-003/23 (issued 01/31/2023). However, as part of the Settlement dealerships now provide, and have been instructed to provide through a Special Service Program, the repair to all Class Vehicles that have manifested any excessive oil issue, regardless of their vehicle's current oil level. To wit, updated guidance issued to dealerships instructs them to replace the valve stem seals under the following circumstances:

> (1) the Engine Oil Level Warning Light has illuminated with Diagnostic Trouble Code ("DTC") P250F:00, signifying low engine oil level, before the regular oil change interval of 7,500 miles or 1 year;

> (2) qualifying vehicles enrolled with the Mazda Connected Services MyMazda mobile application that have recorded a "Low Engine Oil Level" alert in the application before the regular oil change interval of 7,500 miles or 1 year;

> (3) documented previous refilling of oil (either by a dealer or service station or the customer) before the engine oil level warning light came on in between regular oil change interval of 7,500 miles or 1 year; or

> (4) if neither 1, 2 nor 3 applies, a failed excessive oil consumption test performed at an authorized Mazda dealer and at no cost to the customer. (If the vehicle fails the oil consumption test, the dealer should perform the valve stem seal replacement at no cost to the customer).

Additionally, as part of the Settlement, Mazda dealers are directed to tell Class Vehicle owners unprompted that "they are eligible to receive a replacement of the affected valve stem seals" when servicing the vehicles for any reason for the year following initiation of the program if the Engine Oil Level Waning Light has illuminated with Diagnostic Trouble Code ("DTC") P250F:00, signifying low engine oil level, before the regular oil change interval of 7,500 miles or 1 year, or Class Vehicles enrolled with the Mazda Connected Services MyMazda mobile application have recorded a "Low Engine Oil Level" alert in the application before the regular oil change interval of 7,500 miles or 1 year. *Settlement Agreement*, Art. II(A)(2)&(4).

III.     **PROCEDURAL HISTORY**

Prior to initiating this action, Class Counsel conducted an extensive pre-suit investigation which included analyzing the cause of Class Vehicles' oil consumption, consulting with an automotive expert, identifying the Defect and the affected Class Vehicle models, interviewing Class Vehicle owners and lessees, reviewing documents published by Mazda and made available to NHTSA, investigating vehicle owner complaints, and analyzing potential legal claims. (Lemberg Decl. ¶ 10).

On April 18, 2022, Plaintiff Gary Guthrie – a Washington purchaser of a 2021 Mazda CX-30 who alleges he was not made aware of the Defect at the time of sale and was initially denied repairs regarding the Defect – filed a Class Action Complaint in the Superior Court of the State of California, County of Orange, against Mazda, bringing fraudulent concealment, unjust enrichment, consumer protection and breach of warranty claims on behalf of himself and nationwide and Washington classes of purchases and lessees of 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicles. (Dkt. No. 1-1).

On May 25, 2022, Mazda removed the state case to this Court (Dkt. No. 1) and then moved to dismiss the Complaint for failure to state a claim on July 7, 2022. (Dkt. No. 12).

On July 18, 2022, Plaintiffs filed a First Amended Class Action Complaint which added Plaintiffs Stephanie Crain, Chad Hinton and Julio Zelaya, and Florida and Tennessee state classes and claims in addition to the nationwide and Washington classes and claims. (Dkt. No. 14 ("FAC")).  When the FAC was filed, Mazda was not repairing the defect and was instructing Mazda dealers to top off engine oil in Class Vehicles between oil changes. *Id.* ¶¶ 80-88.

Mazda again moved to dismiss the FAC for failure to state a claim on August 15, 2022. (Dkt. No. 18). Plaintiffs opposed the motion to dismiss the FAC on September 26, 2022. (Dkt. No. 23).

On October 3, 2022, the Parties filed their Rule 26(f) Report. (Dkt. No. 28).

On October 17, 2022, the Court held a hearing on Mazda's motion to dismiss the FAC and ordered the Plaintiffs to file a Second Amended Class Action Complaint. (Dkt. No. 36).

On October 31, 2023, Plaintiffs filed a Second Amended Class Action Complaint ("SAC") which added Plaintiffs Anna Gilinets, Marcy Knysz and Lester Woo, and California and Illinois state classes and claims in addition to the nationwide and Florida, Tennessee and Washington classes. (Dkt. No. 39).

Mazda moved to dismiss the SAC for failure to state a claim on December 2, 2022. (Dkt. No. 46). Plaintiffs opposed the motion to dismiss on January 11, 2023. (Dkt. No. 51).

On January 16, 2023, the Parties filed an updated Rule 26(f) Report. (Dkt. No. 53).

On January 26, 2023, Plaintiffs moved for appointment of Lemberg Law, LLC as interim Class Counsel (Dkt. No. 55) which the Court granted on April 7, 2023 (Dkt. No. 66). On the same day, Plaintiffs moved to intervene and to stay *Heinz v. Mazda Motor of America, Inc.,* a later-filed case originally filed in the Eastern District of California which raises substantially similar claims based on the same Defect. 2:23-cv-05420-DOC-DFM (ECF No. 10). *Heinz* was subsequently transferred to this Court and stayed pending resolution of this action.

On January 30, 2023, the Court held a Scheduling Conference and hearing on Mazda's motion to dismiss the SAC and took the motion under submission. (Dkt. No. 56).

On February 1, 2023, the Court entered the Scheduling Order. (Dkt. No. 57).

The Parties then engaged in discovery. Plaintiffs served interrogatories and requests for the production of documents on Mazda regarding the individual and class claims and the requirements of Rule 23. (Lemberg Decl. ¶ 11). Plaintiffs received document productions from Defendant and repeatedly conferred with Defendant regarding the scope of its production and need for additional discovery. Plaintiffs later

conducted a Rule 30(b)(6) deposition of Defendant regarding the merits, class issues, and the efficacy of the redesigned valve stem seals. *Id.*

On May 1, 2023, the Parties attended an in-person mediation before Judge Tevrizian. (Lemberg Decl. ¶ 16).  The mediation was productive and a settlement in principle as to the benefits for the Class was reached and memorialized in a term sheet and the Settlement Agreement. *Id.*

On November 21, 2023, Plaintiffs filed a Third Amended Class Action Complaint ("TAC"), the operative complaint, which added Plaintiff Amy Bradshaw and North Carolina state class and claims. (Dkt. No. 84).  Mazda filed its Answer on December 5, 2023. (Dkt. No. 86).

On January 22, 2024, Plaintiffs moved for preliminary approval of the Parties' Class Action Settlement Agreement. (Dkt. No. 91).  The Court granted the motion and, on March 14, 2024, the Order Granting Preliminary Approval ("PAO") entered. (Dkt. No. 102).

## IV.    TERMS OF THE SETTLEMENT

### 1. Repair Program

As part of the Settlement and following preliminary approval, MNAO instituted the Repair Program to repair Settlement Class Vehicles and replace qualifying vehicles' valve stem seals with non-defective parts. *Settlement Agreement*, Art. II(A). The Program will last for the entirety of Class Vehicles' extended Powertrain Limited Warranty period of 84 months or 84,000 miles, whichever comes first (discussed below). *Id.* Art. II(A)(6-7).

As stated above, under the Program, any Class Vehicle that has excessive oil consumption as shown by one of the following will automatically qualify for the repair: (1) the Engine Oil Level Waning Light has illuminated with Diagnostic Trouble Code ("DTC") P250F:00, signifying low engine oil level, before the regular oil change interval of 7,500 miles or 1 year; (2) Class Vehicles enrolled with the Mazda Connected Services MyMazda mobile application have recorded a "Low Engine Oil Level" alert

in the application before the regular oil change interval of 7,500 miles or 1 year; or (3) documented previous refilling of oil (either by a dealer or service station or the customer) before the engine oil level warning light came on in between regular oil change interval of 7,500 miles or 1 year (documented proof can include but is not limited to repair orders or invoices from dealers or service stations or a receipt for the purchase of engine oil). *Settlement Agreement*, Art. II(A)(2).

Based on data produced by Mazda, 58,789 Settlement Class Vehicles, or approximately 68% of all Class Vehicles, have had their Low Engine Oil Level light illuminate before the regular oil change interval. (Lemberg Decl. ¶ 15).

For those vehicles that cannot show prior excessive oil consumption by any of the above means, an oil consumption test can be performed at an MNAO authorized dealer and at MNAO's cost. *Settlement Agreement*, Art. II(A)(2).

MNAO will provide a loaner vehicle to any Class Vehicle owner or lessee during the period of an evaluation or repair under the Program, subject to availability. *Settlement Agreement*, Art. II(A)(5).

Moreover, Class Vehicle owners will be made aware of the Program via multiple means. Class Notice has been mailed to Class Members setting forth the benefits under the Settlement. In addition, during the initial one-year period after the Program begins, MNAO authorized dealers servicing Class Vehicles for any reason will check whether DTC P250F:00 code is stored in the vehicle memory, and if so, will advise the Class Vehicle owner or lessee if they are eligible to receive replacement valve stem seals under the Program. *Settlement Agreement*, Art. II(A)(4).

Plaintiffs retained Hemming Morse, LLC, to provide an expert opinion of the value of the benefits to the various settlement components. The total value of the Repair portion of the settlement is at least $46,413, 916. (HM Report ¶¶ 28-35). The value of the free oil consumption tests, assuming 27,327 Settlement Class Members need one,

is $4,645,590. (HM Report ¶¶ 36-41).[4]

2. <u>Powertrain Limited Warranty Extension</u>

The Settlement Agreement provides Settlement Class Members with a warranty extension which expands the coverage period for the Powertrain Limited Warranty by an additional 24 months or 24,000 miles, from the earlier of 60 months or 60,000 miles to 84 months or 84,000 miles. *Settlement Agreement*, Art. I(S), II(B).  The extended Powertrain Limited Warranty "covers all qualifying repairs under the Powertrain Limited Warranty including and is not limited to repairs arising from the defective Valve Stem Seals." *Id.*, Art. II(B)(1-2).

Mazda's Powertrain Limited Warranty sets forth the covered powertrain components:

<u>Engine</u> - Cylinder Block, Cylinder Head, and All Internal Lubricated Parts (Piston engines); Timing gears; Timing chain/belt and tensioner; Timing chain/belt front cover and gaskets; Flywheel; Valve Covers and Gaskets; Oil Pan; Oil Pump; Intake Manifold and Gaskets; Exhaust Manifold and Gaskets; Turbocharger Housing and All Internal Parts; Supercharger Housing and All Internal Parts; Water Pump and Gaskets; Thermostat and Gaskets; Fuel Pump; Seals and Gaskets;

<u>Transmission and transaxle</u> - Transmission Case and All Internal Parts Transmission and transaxle; Torque converter; Clutch Pressure Plate; Transmission Mounts; Transfer Case and All Internal Parts; Transmission/Transaxle Control Module;

<u>Front/Rear Drive System</u> - Final Drive Housing and all Internally Lubricated Parts; Rear Axle Housing (Differential) and all Internally Lubricated Parts; Manual and Automatic Hub (4×4); Front Wheel Hubs and Bearing (FWD or AWD only); Rear Axle/Hub Bearings (RWD or AWD only); Axle/Drive Shafts; Universal Joints; Constant Velocity Joints; Propeller shaft (RWD or AWD only); Seals and Gaskets.

(Lemberg Decl. ¶ 18; Lemberg Decl., <u>Exhibit B</u> (2021 Mazda Warranty Booklet) at p.

---

[4] MNAO does not endorse the valuations for the various settlement components and warranty extension and reserves the right to assert its own valuations should the need arise.

19). Among the other covered components, the Powertrain Limited Warranty covers engine "seals and gaskets" and the "exhaust manifold and gaskets." *Id.*

The extended warranty is fully transferable to subsequent owners or lessees of Class Vehicles. *Settlement Agreement*, Art. II(B)(4). The value of the warranty extension to the Settlement Class is $58,836,174. (HM Report ¶¶ 24-27).

3. Reimbursement of Out-of-Pocket Costs for Excessive Oil Consumption

Settlement Class Members that submit qualifying and timely claims are entitled to dollar-for-dollar reimbursement of out-of-pocket expenses for (1) oil changes performed more frequently than the normal interval of 7,500 miles or 1 year or (2) additional engine oil purchased in between the normal interval of 7,500 miles or 1 year. *Settlement Agreement*, Art. II(C)(1-2).  These reimbursements will be provided irrespective of whether the oil change or engine oil purchase out-of-pocket expense was incurred at an MNAO authorized dealership, a non-MNAO affiliated service station or dealership or elsewhere. *Id.*, Art. II(C)(3).

4. The Release

The release provided in the Settlement is narrowly tailored to the factual claims in this litigation. Class Members who do not timely exclude shall release claims relating to the defective valve stem seals of Class Vehicles. *Settlement Agreement*, Art. I(N), VIII(D).  The valve stem seals "means the component which, in part, controls oil leakage into the exhaust manifold and, prior to September 13, 2021, were installed in Class Vehicles' 2.5L turbocharged engine." *Id.* Art. I(R); *see, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 327–28 (C.D. Cal. 2016) ("With this understanding of the release, *i.e.,* that it does not apply to claims other than those related to the subject matter of the litigation, the court finds that the release adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality.")

Released Claims do not include claims for personal injuries, wrongful death, property damage (other than damage to the Settlement Class Vehicles) or subrogation.

*Settlement Agreement*, Art. I(N).  Moreover, the Settlement specifically provides that any claims that may arise from a future National Highway Traffic Safety Administration ("NHTSA") recall are not released. *Id.*

## V.   <u>NOTICE PROCESS</u>

On January 29, 2024, and in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, JND compiled a CD-ROM containing all required documents and mailed it to 52 federal and state officials. (Declaration of Bronyn Heubach ("Heubach Decl."), Director at JND Legal Administration ("JND") ¶¶ 4-5 & <u>Ex. A</u>).

Following preliminary approval, on March 21, 2024, MNAO provided the Settlement Administrator with a list of Vehicle Identification Numbers ("VINs") compiled for the Settlement Class Vehicles. (Heubach Decl. ¶ 6).  JND worked with Experian to acquire potential Settlement Class Members' contact information from the Departments of Motor Vehicles ("DMVs") for all current and previous owners and registered lessees of the Settlement Class Vehicles. *Id.* ¶ 7.  The data JND received from the DMVs included Class Members in all 50 states, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands.  *Id.* JND analyzed, de-duplicated, and standardized the data received from the DMVs and loaded it into a secure, case-specific database for the matter.  *Id.* ¶ 8.  JND performed advanced address research using the USPS National Change of Address database to obtain the most current mailing address information for potential Class Members. *Id.*

On May 13, 2024, JND mailed 103,859 postcard notices via first-class mail to potential class members associated with the 86,093 unique and eligible VINs. *Id.* ¶ 9. JND mailed notice to an additional 86 potential Class Members who had ten or more Settlement Class Vehicles, so called "Bulk Filer Notices." *Id.*

Notices returned with a forwarding address were promptly re-mailed to the forwarding address.  *Id.* ¶ 10.  For Notices returned without a forwarding address, JND conducted advanced address research using skip-trace tools to identify addresses and remail. *Id.*  As of July 19, 2024 only 3,015 Settlement Class Member records remain

undeliverable, resulting in a 97% deliverable rate. *Id*. ¶ 11.  This is an excellent percentage, showing that the approved Notice Plan was successful.  *See, e.g.,* Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide at 3 (Federal Judicial Center 2010) ("It is reasonable to reach between 70-95%" of the class).

On May 13, 2024, JND launched the Settlement Website. (www.MazdaValveStemSealSettlement.com  & Heubach Decl. ¶ 12).  The settlement website allows Settlement Class Members to obtain detailed information about the case, the Settlement and its benefits, applicable dates and deadlines, procedures and deadlines for objecting, opting out and/or submitting a claim for reimbursement, the Class Members' rights, and to review and download documents.  The website also includes a VIN lookup module that allow users to enter a VIN and receive confirmation of whether the entered VIN is for a Settlement Class Vehicle.  *Id.* As of July 19, 2024, there have been 13,476 unique visitors to the website and 40,643 website pages presented. *Id.* ¶ 24.

Also on May 13, 2024, JND launched a toll-free telephone number that class members may call to obtain information. *Id*. ¶ 13.  Pre-recorded answers were available 24-hours a day and live agents were available to answer frequently asked questions during business hours. *Id*.  As of July 19, 2024, there have been 925 calls, of which 220 callers spoke with a live operator. *Id*.  JND also established a dedicated email address, info@MazdaValveStemSealSettlement.com.  As of July 19, 2024 JND has received 562 emails to this email inbox and responded to each one.  *Id*. ¶ 14.

## VI.    CLAIMS, OBJECTIONS AND REQUESTS FOR EXCLUSIONS

As of July 19, 2024, JND has received 761 oil related reimbursement claims *Id*. ¶ 17.  Since the claim filing deadline has not passed, these numbers are preliminary. The claims received are subject to continued review and auditing by JND as claims processing is still ongoing.  *Id*.

The deadline for Settlement Class Members to object or exclude themselves was

June 27, 2024 (May 13, 2024 (the notice day) + 45 days).  JND received eight requests for exclusion, one of which was untimely. (Heubach Decl. ¶ 16).

Three class members submitted objections: Farina, Young and Farr.  Those objections are addressed in a separate brief.

## ARGUMENT

## I.  STANDARD

"When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b)." *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*,  2024 WL 414319, at *1 (N.D. Cal. Feb. 2, 2024).  A class may be certified under Rule 23(a) if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4).  In addition, certification of a Rule 23(b)(3) settlement class requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that (2) "a class action [be] superior to any other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

If Rule 23(a) and (b) are satisfied, the Court considers whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Final approval of a class action settlement asks the court to "evaluate the fairness of a settlement as a whole," and find that the settlement is "'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012) (*quoting* Fed. R. Civ. P. 23(e)(2)); id. at 819 ("the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court").  "To make this determination, the Court must consider" the factors set forth in Fed. R. Civ. P. 23(e)(2) and whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

  (i) the costs, risks, and delay of trial and appeal;

  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *4 (C.D. Cal. July 19, 2021).

"Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and adequate: '[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.'" *In re ConAgra Foods, Inc.*, 2022 WL 17243625, at *6 (C.D. Cal. Nov. 14, 2022) (*quoting Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). The Court may still consider these factors in addition to the inquiry mandated by Rule 23(e). *Id*. n. 2. Factors 1-5 are largely subsumed in the Rule 23(e)(2) analysis.

Finally, where, as here, a settlement is reached prior to formal class certification, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

## II.   **THE COURT SHOULD AFFIRM ITS PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS**

The Settlement Class the Court preliminarily approved is:

All persons and entities who purchased or leased a Settlement Class Vehicle in the United States of America, including the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

(Dkt. No. 102 ¶ 5).  The Court should affirm that ruling as the Rule 23(a) & (b) requirements are met. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order);

Rule 23(a)(1) - The class consists of the owners or lessees of more than 86,000 Class Vehicles. Joinder of these claims is impractical therefore numerosity is met.

Rule 23(a)(2) - common issues of fact and law include: (1) whether the Class Vehicles suffer from the Valve Stem Seal Defect; (2) whether the alleged defect is material; (3) whether Defendant had knowledge of the alleged defect at the time of sale; (4) whether Defendant had a duty to disclose the alleged defect and concealed the alleged defect; and (5) whether Defendant's conduct violates the consumer protection statutes alleged and the express and implied warranties. Answers to these questions will resolve the allegations for the whole Class "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2545 (2011). As such, the commonality requirement is satisfied.

Rule 23(a)(3) – Plaintiffs are purchasers or lessees of Class Vehicles. (*See* Declaration of Amy Bradshaw ("Bradshaw Decl.") ¶ 3; Declaration of Stephanie Crain ("Crain Decl.") ¶ 3; Declaration of Anna Gilinets ("Gilinets Decl.") ¶ 3; Declaration of Gary Guthrie ("Guthrie Decl.") ¶ 3; Declaration of Chad Hinton ("Hinton Decl.") ¶ 3; Declaration of Marcy Knysz ("Knysz Decl.") ¶ 3; Declaration of Lester Woo ("Woo Decl.") ¶ 3; Declaration of Julio Zelaya ("Zelaya Decl.") ¶ 3). They each bring the same type of claims based on the same Valve Stem Defect and legal theories. Because Plaintiffs' claims arise from and challenge the same course of conduct, typicality is

satisfied. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Rule 23(a)(4) - Adequacy has two components: (i) whether the named-plaintiffs and their counsel have any conflicts of interest with other class members, and (ii) whether the plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). There are no conflicts of interest between Plaintiffs (or their counsel) and the other members of the Settlement Class, as they are all seeking recovery under the same legal theories for the same injuries. (Bradshaw Decl. ¶¶ 3, 10; Crain Decl. ¶¶ 3, 8; Gilinets Decl. ¶¶ 3, 8; Guthrie Decl. ¶¶ 3, 8; Hinton Decl. ¶¶ 3, 8; Knysz Decl. ¶¶ 3, 8; Woo Decl. ¶¶ 3, 9; Zelaya Decl. ¶¶ 3, 7).   Plaintiffs understand their claims, and their role as class representatives litigating this case on behalf of others as well as themselves. (Bradshaw Decl. ¶¶ 8-11; Crain Decl. ¶¶ 5-9; Gilinets Decl. ¶¶ 5-9; Guthrie Decl. ¶¶ 5-9; Hinton Decl. ¶¶ 5-9; Knysz Decl. ¶¶ 5-9; Woo Decl. ¶¶ 6-10; Zelaya Decl. ¶¶ 4-8).   Further, Plaintiffs' counsel has extensive experience litigating consumer class actions including automotive defect cases and have been appointed class counsel in numerous other cases. (Lemberg Decl. ¶¶ 4-5; Taylor Decl. ¶¶ 4-5; Markovits Decl. ¶¶ 6-7). Based on their experience and track record, Plaintiffs' counsel is clearly adequate to represent the Settlement Class.  Plaintiffs and Class Counsel's interests align to secure the best relief available to the class in light of the risks of litigation which is what this Settlement accomplishes.

Rule 23(b) - Predominance is satisfied because the core of Plaintiffs' claims are whether the Class Vehicles have similarly defective valve stem seals in their uniform engines, whether MNAO had a duty to disclose the alleged defect at the time of sale, whether Defendant knowingly concealed the alleged defect, whether the alleged defect rendered the Class Vehicles unmerchantable, whether Defendant had an obligation to repair the alleged defect under its warranties, and whether the members of the Classes suffered an economic loss as a result of Defendant's conduct.  These questions can be

answered based on common evidence. Pre-sale knowledge and the existence of the alleged defect the Class can established through Defendant's internal records applicable to all Class Members. Moreover, class members will rely upon the same uniform warranty language to support their warranty claims. These common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so.").

Superiority is satisfied because a class action is the "most efficient and effective means of resolving" the class claims. *Wolin*, 617 F.3d at 1175-76. It is neither economically feasible nor judicially efficient for tens of thousands of Settlement Class Members to pursue their own claims against MNAO on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct. 1166 (1980). Instead, this Settlement provides repair, warranty extensions and reimbursement for out-of-pocket expenses to class members in one proceeding. *See Amchem*, 521 U.S. at 617.

Because the requirements of Rule 23(a) & (b) are met, the Court should affirm its preliminary holding and certify the Settlement Class.

## III. THE RULE 23(E)(2) FACTORS SUPPORT A FINDING THAT THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Rule 23(e)(2)(A)&(B) – the Class Representatives and Counsel have More than Adequately Represented the Class and the Settlement Agreement Is the Result Arm's-Length Negotiations

Before and after filing the Complaint, Class Counsel devoted substantial time to investigating and developing the factual and legal allegations including reviewing publicly available sources of technical information and complaints, interviewing class members, and analyzing the Valve Stem Seal Defect and through expert consultation. (Lemberg Decl. ¶¶ 10-13). Plaintiffs served interrogatories and requests for the production of documents on Defendant. *Id*. Plaintiffs received numerous internal

documents from Defendant outlining, *inter alia,* Defendant's investigation into the root cause of the alleged defect, the scope of the alleged defect, and Defendant's repair regarding the alleged defect including the efficacy of the repair. *Id.*  Plaintiffs deposed a Rule 30(b)(6) witness regarding the same areas and to confirm that the redesigned valve stem seals correct the alleged defect. *Id.*  The adequacy of counsel is also evident in the substantial value of the settlement achieved for the class.

At the same time, the Plaintiffs have also more than demonstrated their adequacy. They have actively participated here, and they have made important contributions, including collecting and providing information to their counsel and pursuing this matter as a class action on behalf of others as well as themselves. (Bradshaw Decl. ¶¶ 9-11; Crain Decl. ¶¶ 6-9; Gilinets Decl. ¶¶ 6-9; Guthrie Decl. ¶¶ 6-9; Hinton Decl. ¶¶ 6-9; Knysz Decl. ¶¶ 6-9; Woo Decl. ¶¶ 7-10; Zelaya Decl. ¶¶ 5-8).

The Settlement is the result of arm's-length negotiations among experienced counsel.  *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (settlement arrived through informed negotiation before neutral "entitled to an initial presumption of fairness"); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . .").  The Settlement was agreed after Plaintiffs conducted an extensive pre-filing investigation, briefed two motions to dismiss, and conducted discovery on the merits and class certification issues. Additionally, the settlement negotiations took place before a well-respected mediator and a former judge for the U.S. District Court for the Central District of California. That the Settlement was arrived at only after such arm's-length negotiations weighs in favor of approval. *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (the participation of a respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner"); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (finding the fact that "[a] respected and dedicated judicial officer presided over the

lengthy discussions from which this settlement emerged" belied any suggestion of collusion in the negotiating process).

**B. <u>Rule 23(e)(2)(C) - The Relief Provided for the Class is More than Adequate</u>**

The Settlement provides Class Members with significant value including the Repair Program (valued at $46,413,916 by Plaintiffs' expert), the extended Powertrain Limited Warranties (valued at $58,836,174 by Plaintiffs' expert), and reimbursement of out-of-pocket expenses for excessive oil consumption.

This relief exceeds or is comparable to similar settlements for oil consumption issues which have been approved. *See, e.g., Bang v. BMW of North America, LLC,* No. 2:15-cv-06945-MCA-SCM (D.N.J., Sept. 11, 2018) (ECF Nos. 111 & 122) (approving oil consumption class action where relief to class consisted of replacement of allegedly defective engine causing oil consumption if vehicle failed two oil consumption tests and if class member contributes towards the cost of the replacement; reimbursement of certain out-of-pocket costs for oil consumption; and coupons for additional oil changes and batteries and a discount towards the purchase of a separate BMW model); *Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *3-4 (D.N.J. Aug. 31, 2016) (approving oil consumption class action where relief to the class was repair; extended warranty to cover only repairs needed to correct engine oil consumption; and reimbursement of out-of-pocket expenses); *Asghari v. Volkswagen Grp. of Am., Inc.,* 2015 WL 12732462, at *7, 21 (C.D. Cal. May 29, 2015) (granting final approval to oil consumption class action where relief to the class was repair or reimbursement for those who had already paid for repair out-of-pocket; extended warranty to cover repairs needed to correct engine oil consumption; and reimbursement of out-of-pocket expense). Notably, the relief here includes a repair free of charge, covers most of the class if they have had the engine oil warning light activate prematurely, and provides for extended warranty coverage for the entire powertrain.

The method of distribution (Rule 23(e)(2)(C)(ii)) provides that all Class Vehicle owners receive the extended powertrain warranty automatically. Class members whose vehicles manifest an oil consumption issue (shown by, *e.g.*, when the engine oil warning light triggers before the Mazda recommended interval for regular oil service of 7,500 miles or 1 year which occurred for at least 58,789 vehicles) can get the repair by visiting an authorized Mazda dealership.  They have been notified of this through the Notice and must be affirmatively told they qualify if they visit a Mazda dealership for the first year of the Program.  Further, all class members that paid out of pocket for excessive oil refills or oil changes before the Mazda recommended interval for regular oil service of 7,500 miles or 1 year can submit claims for reimbursement whether or not they still possess the vehicle by submitting a simple claim form to the Settlement Administrator and can do so on the Settlement Website.

Considering Rule 23(e)(2)(C)(ii), Class Members receive the above relief now, without the risk of receiving nothing or even the delay of further litigation.  So that Class Members could get relief as soon as possible, Class Counsel negotiated for the Repair Program to begin following preliminary approval (*Settlement Agreement*, Art. II(A)) and sought to move for enforcement of the Parties' term sheet when confronted with delay in finalizing the Settlement Agreement (Dkt. No. 89 p. 9). Although Plaintiffs believe they would ultimately prevail on their claims absent this Settlement, there are considerable risks inherent in litigation and the facts at issue in this case. *See Shahbazian v. Fast Auto Loans, Inc.*, 2019 WL 8955420, at *6 (C.D. Cal. June 20, 2019) (recognizing "the uncertainty and risks inherent in litigation and potential appeals").  For instance, Mazda contends that the Valve Stem Seal Defect is not covered by its warranties and thus it has no obligation to repair the alleged defect and the express warranty claims fail; the Class Vehicles were purportedly merchantable notwithstanding the alleged defect; it had no pre-sale knowledge of the alleged defect and in any event did not have a duty to disclose the alleged defect to Class Vehicle owners and lessees; and has asserted other defenses to the state law claims for various

other reasons. (Dkt. No. 46 at pp. 6-23). While Plaintiffs disagree with these assertions (*see, e.g.,* Dkt. No. 51), they illustrate the risk of additional litigation. Resolving the claims absent settlement will take significant delay.

The terms of the proposed fee award (Rule 23(e)(2)(C)(iii)) supports approval. The Settlement Agreement did not set any fee and cost amount nor is it contingent on any particular amount. The Agreement only provides that the Defendant will pay attorneys' fees and costs as awarded by the Court and reserved the right to oppose any application of any amount. *Settlement Agreement*, Art. VIII(C). After the Settlement Agreement was preliminary approved and before Plaintiffs moved for fees, the Parties agreed to mediation before the Judge Tevrizian in an attempt to resolve Class Counsel's fees and costs. (Lemberg Decl. ¶ 20). After the Parties reached an impasse, Judge Tevrizian made a mediator's proposal of $2,035,000 which the Parties accepted. *Id.* Thus, relief to the Settlement Class was negotiated on its own merits and independent of the fee amount. The agreement to pay attorney's fees and costs was arrived at later, after a contentious mediation and as a result of an independent mediator's proposal and remains subject to Court approval. *See, e.g.*, *In Re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *6 (C.D. Cal. May 28, 2024) ("Finally, the Court notes that the parties' separately negotiated arrangement regarding attorneys' fees warrants significant deference.") (*citing In re Apple Computer, Inc. Deriv. Litig.*, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008). Accordingly, the fee terms here further support approval.

Finally, the Settlement Agreement and the May 10, 2024, Stipulation, are the only agreements connected to the settlement. (Rule 23(e)(2)(C)(iv) & (e)(3)).

## C. Rule 23(e)(2)(D) - The Settlement Treats Class Members Equitably Relative to Each Other

This factor is satisfied because all purchasers and lessees of Settlement Class Vehicles are entitled to the Repair Program, warranty extension and can be reimbursed for their actual out of pocket costs with qualifying claims. While the amounts paid for reimbursement may be different, that is solely related to each member's loss (the

amount paid out of pocket) and is equitable. Class Members who no longer posses a Class Vehicle would not receive the same relief through the warranty extension or potentially the Repair Program, however, that does not create an inequitable situation defeating approval. *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 10277179, at *4 (N.D. Cal. Jan. 6, 2012) (that some members may have sold their vehicle and would not derive benefit from a warranty extension does not defeat certification as "differences directed to damages do not necessarily defeat class certification, and must be considered in the larger context of the class' interests"). Here, such persons (which include Plaintiff Amy Bradshaw who terminated her lease but paid out of pocket for oil changes (Bradshaw Decl. ¶¶ 5, 7)) (1) may recover qualifying out-of-pocket costs and (2) have had an opportunity to exempt themselves from the Class itself. *Milligan, supra*. The Settlement provides Class Members various forms of relief which treats them equitably relative to each other.

## IV.   THE NINTH CIRUCIT FACTORS SUPPORT A FINDING THAT THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The remaining Ninth Circuit factors (experience and views of counsel; presence of a governmental participant; and reaction of the class) support approval.

### A. The Experience and Views of Counsel

"Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel." *see Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011). Class Counsel believe the Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions, including automotive defect class actions. (Lemberg Decl. ¶¶ 4-5, 17; Taylor Decl. ¶¶ 4-8, 10; Markovits Decl. ¶¶ 5-10).

### B. Presence of a Governmental Participant

There is no governmental participant involved in this litigation. This factor is therefore inapplicable. *E.g., Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at * 7 (N.D. Cal. Jan. 23, 2017).

### C. **Reaction of the Class**

"The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Zakikhani v. Hyundai Motor Co.*, 2023 WL 4544774, at *5 (C.D. Cal. May 5, 2023) (*quoting Nat'l Rural Telecomm. Coop.*, 221 F.R.D. 221 F.R.D. 523, 529 (C.D. Cal. 2004)). There are over 86,000 Settlement Class Members, only three submitted objections and seven have opted out. This response from the class and desire to stay in and obtain benefits shows "members overwhelmingly support the settlement, which supports approval." *Id.*

## V.   **THE SETTLEMENT IS NOT THE PRODUCT OF COLLUSION**

Collusion among settling parties can be found explicitly or in "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Subtle signs of collusion include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted). A mediator's involvement in the settlement supports the argument that a settlement is non-collusive. *Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *7 (C.D. Cal. Apr. 17, 2015) (*citing Satchell v. Fed. Exp. Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Here, the Settlement was reached after mediation sessions with Hon. Dickran M. Tevrizian. Moreover, the Settlement does not include a clear sailing provision. *Settlement Agreement*, Art. VIII(C). After reaching agreement on the benefits to the Class, the parties agreed that Class Counsel would file their motion for fees and costs which Defendant could oppose on any grounds available to it. *Id.* ¶ 4. The Settlement also protects the Classes' interest by providing that the fee awarded by the Court shall

be separately paid by Defendant and shall not reduce the benefits provided to the Class. *Id.* ¶ 7.  Only following preliminary approval did the Parties negotiate regarding fees during which they accepted before Judge Tevrizian's proposal. Resolving the fee question after the Settlement Agreement was executed and preliminary approved, provided every incentive for Class Counsel to maximize relief to the Class with due concern for the risks of litigation and is strong evidence of a lack of collusion. *See D.S. v. Washington State Dep't of Child., Youth, & Fams.*, 2022 WL 4366186, at *2 (W.D. Wash. Sept. 21, 2022) (clear sailing concerns not present where "the Settlement Agreement contained no agreed amount for attorneys' fees that Defendants promised not to challenge [. . . ] negotiations as to attorneys' fees did not begin until the Settlement Agreement was already signed"); *Zakikhani*, 2023 WL 4544774, at *7-8 (no clear sailing or collusive settlement where the agreement did not provide for a set amount of fees and defendant could challenge requested fees and parties reached an agreement on fees following preliminary approval).

Nor does the relation of the amount of fees to recovery to the Class  make the Settlement collusive. Class Counsel seek fees and expenses of $2,035,000, which is approximately 3.4% of the value of the warranty extension benefit alone. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *13 (C.D. Cal. Feb. 16, 2017) (finding Plaintiffs' requested fees equal to approximately one-half the net recovery to the Class Members "does not suggest collusion."); *Contreras v. Armstrong Flooring*, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021) ("the Court is not concerned about collusion based on Class Counsel's fee request" equal to 25% of settlement fund); *Banh v. Am. Honda Motor Co.*, 2021 WL 3468113, at *6 (C.D. Cal. June 3, 2021) (no evidence of collusion where there was no clear sailing provision, "attorneys' fees will not diminish the benefits awarded to class members," and the settlement was reached after numerous mediations).

## VI.    DIRECT NOTICE WAS GIVEN TO ALL CLASS MEMBERS IN A REASONABLE MANNER

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (Rule 23(c)(2)(B) "does not necessarily require that every in-state class member 'actually receive[]' notice.") (*quoting Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994)). As to the contents of the notice, it must "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

The Court previously recognized that the notice plan proposed by the parties was "best notice practicable under the circumstances and is reasonably calculated to apprise the Settlement Class" of this matter and their rights. (Dkt. No. 102 ¶ 12).  As discussed *supra* § V, the Settlement Administrator implemented the Class Notice plan, by providing notice through U.S. mail, and dedicated settlement websites.  The mailed notice reached 97% of potential class members and was effective. Accordingly, the Court should find that the notice plan satisfies Rule 23 and comports with due process.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

DATED:  July 22, 2024

By:  _/s/  Sergei Lemberg_

Trinette G. Kent
TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (admitted *pro hac vice*)
Stephen Taylor (admitted *pro hac vice*)
Joshua Markovits (admitted *pro hac vice*)
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-2250
E-mail: slemberg@lemberglaw.com
E-mail: jmarkovits@lemberglaw.com
*Attorneys for Plaintiffs and Class Counsel*

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 8,275 words.

DATED: July 22, 2024

By:  _/s/  Sergei Lemberg_
Sergei Lemberg

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify and declare that I am over the age of 18 years, and not a party to the above-entitled cause. I hereby certify that on July 22, 2024, a copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.


By:___*/s/  Trinette G. Kent*_____
Trinette G. Kent
Lemberg Law, LLC
*Attorney for Plaintiffs*