**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**<u>CIVIL MINUTES – GENERAL</u>**

Case No. 8:22-cv-01055-DOC-DFM                    Date:  June 5, 2025

Title: Gary Guthrie v. Mazda Motor of America, Inc.

PRESENT:

<u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

| <u>Karlen Dubon</u> | <u>Not Present</u> |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING PLAINTIFFS'**
**MOTION TO ENFORCE**
**SETTLEMENT AGREEMENT [182]**

Before the Court is Plaintiffs' Motion to Enforce Settlement Agreement ("Motion" or "Mot.") (Dkt. 182). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. Pro. 78; L.R. 7-15. Having reviewed the papers and the arguments made therein, the Court **GRANTS** Plaintiffs' Motion.

**I.       BACKGROUND**

**A.  Procedural History**
On April 18, 2022, Plaintiff Gary Guthrie filed his class action complaint in state court (Dkt. 1-2). After removal to this Court and litigation resulting in a class action settlement, the Court granted preliminary approval on March 11, 2024 (Dkt. 102). The Court granted final approval of the class action settlement and entered judgment on October 8, 2024 (Dkt. 167).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01055-DOC-DFM                              Date: June 5, 2025

Page 2

On April 11, 2025, Plaintiffs filed the present Motion (Dkt. 182). On May 19, 2025, Defendant filed its Opposition ("Opp.") (Dkt. 184). On May 27, 2025, Plaintiffs filed their Reply (Dkt. 185).

### B. The Settlement Terms

The Settlement Agreement states that the Defendant agrees to three "benefits" as consideration for class members' release of claims and the dismissal of the class action with prejudice, including: (1) "a Repair Program . . . to repair Settlement Class Vehicles and replace the vehicles' Valve Stem Seals[,]" (2) "extend[ed] coverage of Class Vehicles' Powertrain Limited Warranty, covering materials and workmanship defects in powertrain components . . . from 60 months and 60,000 miles, whichever comes first, to 84 months and 84,000 miles, whichever comes first[,]" and (3) "reimbursement of certain past oil exchange expenses and the purchase of additional engine oil in between oil change intervals." Settlement Agreement §§ II(A)(1), (B)(1), (C)(1) (Dkt. 182-1).

The Powertrain Limited Warranty "cover[s] materials and workmanship defects in powertrain components (generally the Engine, the Transmission and Transaxle and the Front/Rear Drive System as set forth in the Powertrain Limited Warranty) . . . ." Settlement Agreement § II(B)(1).

The Settlement Agreement further states, in relevant part, that the "Warranty Extension covers all qualifying repairs under the Powertrain Limited Warranty including and is not limited to repairs arising from the defective Valve Stem Seals." Settlement Agreement § II(B)(2).

## II.    LEGAL STANDARD

### A. Power of Enforcement

This Court has the inherent power to enforce the terms of the Settlement Agreement because the Agreement provides "The Parties agree that the Court may retain continuing and exclusive jurisdiction over them, including all Settlement Class Members, for the purpose of the administration and enforcement of this Agreement." *See* Settlement Agreement § IX(E); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).

### B. Contract Interpretation

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01055-DOC-DFM                     Date: June 5, 2025

Page 3

"[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (quoting *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)); *see also Knudsen v. C.I.R.*, 793 F.3d 1030, 1035 (9th Cir. 2015) ("A settlement is a contract, and its enforceability is governed by familiar principles of contract law.") (citation omitted).

Under California law, the intent of the parties determines the meaning of the contract. Cal. Civ. Code §§ 1636, 1638. The relevant intent is "objective," meaning that it is manifested in the agreement and surrounding conduct, rather than parties' subjective beliefs. *United Com. Ins. Serv. Inc.*, 962 F.2d at 856; *Lawyer's Title Ins. Co. v. U.S. Fidelity & Guar. Co.*, 122 F.R.D. 567, 569 (N.D. Cal. 1988) (applying California law). Therefore, a party's unexpressed true intent is not relevant to interpretation. *United Com. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); *Union Bank v. Winnebago Indus.*, 528 F.2d 95, 99 (9th Cir. 1975); *Mill Valley v. Transam. Ins. Co.*, 98 Cal. App. 3d 595, 602–03 (1979).

The Settlement should be interpreted "to give effect to the mutual intention of the parties." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (in bank). Additionally, the whole of the Settlement "is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641; *see also Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 279 (9th Cir. 1992) ("specific provisions ordinarily qualify the meaning of the general provisions").

### C. California Parol Evidence Rule

A court should interpret a written contract solely by its language so long as the language is "clear and explicit." Cal. Civ. Code §§ 1636–39. However, "California has long abandoned a rule that would limit the interpretation of a written instrument to its four corners." *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1066 (9th Cir. 2011) (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (1968)).

Under California law, "[t]he interpretation of a contract involves 'a two-step process.'" *Wolf. v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01055-DOC-DFM                                   Date: June 5, 2025

Page 4

"First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party" *Wolf*, 114 Cal. App. 4th at 1351. "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *First Nat'l Mortg. Co.* 631, F.3d at 1067 (citing *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998)).

Second, "if in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *Wolf* at 1351.

Courts may look to extrinsic evidence to interpret settlement agreements. *Barnhart v. Points Dev. US, Ltd.*, Case No. 2:16-cv-02516-CAS(Ex), 2016 WL 5842179 (C.D. Cal. Sept. 29, 2016)*; see, e.g.*, *Cent. Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.*, 2013 WL 6442603, at *6 (C.D. Cal. 2013) (considering email exchanges between parties to determine the meaning of a disputed settlement provision); *Cacique, Inc. v. Reynaldo's Mexican Food Co.*, 2014 WL 505178, at *5 (C.D. Cal. 2014) (considering prior agreements between parties, Black's Law Dictionary, and the California Corporations Code to determine the meaning of a disputed term in the settlement); *Matter v. Beverly Hills Bancorp*, 649 F.2d 1329, 1335 (9th Cir. 1981) (interpreting the phrase "interest earned" as gross interest, because net interest entails additional expenses of which Bancorp was not forewarned).

## III.  DISCUSSION

Plaintiffs move for the Court to enforce the extension of the Powertrain Limited Warranty provided for in the Settlement Agreement. The parties do not dispute that the agreement is a complete agreement that is valid and binding upon both parties. However, the parties disagree as to the meaning of an express term of the agreement.

Specifically, the parties disagree about the meaning of the term in § II(B)(2). Plaintiffs argue that the term extending the Powertrain Limited Warranty applies to all Class Vehicles, not just those that had an affected valve stem seal and "manifested excessive oil consumption." *See generally* Motion; Reply. Whereas Defendant argues that the Warranty Extension covers only "qualifying repairs," limited to solely those repairs related to or arising out of oil consumption issues. *See generally* Opp.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**


Case No. 8:22-cv-01055-DOC-DFM                    Date: June 5, 2025

                                                                              Page 5


The plain meaning of the disputed term would support Plaintiffs' interpretation. The term states that the "Warranty Extension covers all qualifying repairs under the Powertrain Limited Warranty *including and is not limited to repairs arising from the defective Valve Stem Seals*." Settlement Agreement § II(B)(2) (emphasis added). However, California law does not follow the "four corners" approach and allows courts to consider extrinsic evidence to the extent that a term is "reasonably susceptible" to a competing interpretation.

Defendant introduces extrinsic evidence in support of its interpretation of the disputed term, including, *inter alia*, emails, the draft documents, Class Notice, claim forms, and Settlement Website. *See* Opp. at 4. Defendant argues that in each of the foregoing, the basis for the Settlement Agreement is described as "excessive oil consumption," and that the claim notices and forms do not describe a process for reimbursement for expenses related to transmission issues. *See id.* Defendant also points to a bullet point in the Long Form Notice, which stated that "manifested excessive oil consumption" was a prerequisite to qualify for the repair program. *See id.* at 4–5.

However, Plaintiffs correctly point out that the bullet point in the Long Form Notice did not refer to or modify the terms of the Warranty Extension, but only described a qualification to the repair program, a separate benefit of the Settlement Agreement. *See* Reply at 4–5. Plaintiffs argue that notwithstanding any limitations on the repair program, the express terms of the Extended Warranty did not limit claims to repairs related to or arising out of oil consumption issues. *See generally* Motion; Reply.

Defendant also argues that Plaintiffs should be estopped from presenting their interpretation of the disputed term. *See generally* Opp. Defendant states it placed Plaintiffs on notice of Defendant's disagreement on interpretation, but Plaintiffs failed to timely raise the issue before final settlement approval. *Id.* at 8–9, 12. Defendant cites to a comment it added to Plaintiff's draft motion for final approval of the class settlement, in which Defendant "communicated its position that the warranty extension offered as part of the settlement specifically covered engine components related to excessive oil consumption and the alleged valve stem defect, not unrelated transmission repairs." *Id.* at 8–9 (emphasis omitted). "Plaintiffs deleted this language from the draft and chose not to address it before filing their motion for final approval, and never raised the transmission coverage issue with this Court, despite countless opportunities to do so." *Id.* at 9.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01055-DOC-DFM                                    Date: June 5, 2025

Page 6

However, Plaintiffs correctly point out that these final approval papers were circulated in July 2024, some six months after the Settlement Agreement was signed by the parties on January 19, 2024. Reply at 9. Accordingly, Plaintiffs did not have prior knowledge of an inconsistent interpretation of the disputed term.

Plaintiffs also provide extrinsic evidence to support their interpretation of the disputed term. Plaintiffs present their Motion for Final Approval of the Settlement Agreement (Dkt. 139), in which they state that "[t]he extended Powertrain Limited Warranty 'covers all qualifying repairs under the Powertrain Limited Warranty including and is not limited to repairs arising from the defective Valve Stem Seals.' . . . Mazda's Powertrain Limited Warranty sets forth the covered powertrain components: . . . Transmission and transaxle – Transmission Case and All Internal Parts Transmission and transaxle; Torque converter; Clutch Pressure Plate; Transmission Mounts; Transfer Case and All Internal Parts; Transmission/Transaxle Control Module . . . ." Reply at 9–10 (citations and list of covered parts related to the engine and front/rear drive system omitted) (quoting Memo in Support of Final Approval at 16 (Dkt. 139)). Plaintiff argues that because Defendant did not raise an issue with Plaintiff's statement to the Court at the final approval hearing, they should be estopped from raising the argument now. Reply at 10–11.

Defendant asks the Court to consider the extrinsic evidence presented and rule that the disputed term only includes repairs related to or arising out of oil consumption issues. *See generally* Opp.

In applying the first step of the California parol evidence rule, the Court holds that the disputed express term is not "reasonably susceptible" to Defendant's interpretation. The Plaintiff's interpretation of the term is in accordance with the plain meaning of the language of the Agreement and comports with § (B)(3) including repairs or replacement of defective valve stem seals.

Indeed, the Court understood and approved the Settlement Agreement based on the plain meaning of the express term, which provides that the warranty extension was a complete extension not limited to valve stem seal problems. The Court stated on the record during the August 5, 2024 final approval hearing: "Here the proposed settlement gives several forms of relief to the settlement class. Class Vehicles that have manifested an oil consumption issue are entitled to repair of the defect and form of a redesign valve stem seal, the repair program, or program. The settlement extends the Mazda powertrain

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01055-DOC-DFM                          Date: June 5, 2025

Page 7

limited warranties for all settlement class vehicles, whether an oil consumption issue has occurred or not, to 84 months or 84,000 miles from the earlier of 60 months or 60,000 miles." Transcript of August 5, 2024 Hearing (Dkt. 184-2), at 6:3–11. Defendant did not dispute this statement or otherwise raise the issue to the Court.

The extrinsic evidence that Defendant cites in support of its interpretation of the disputed term fails to establish that the express term was ambiguous and "reasonably susceptible" to its favored interpretation. To the contrary, the express term unambiguously states that the warranty extension is "not limited to repairs arising from the defective Valve Stem Seals." Settlement Agreement § II(B)(2). The Settlement Agreement provides no other limitations on the warranty extension for Class Vehicles.

Accordingly, the Court construes the express term found in § (B) to mean that the warranty extension is not limited to those repairs related to or arising out of oil consumption issue.

**IV.    DISPOSITION**

For the reasons explained above, the Court **GRANTS** Plaintiffs' Motion. Defendant shall (1) extend the Mazda Powertrain Limited Warranty for all Class Vehicles as set forth in the Settlement Agreement, (2) reimburse all Class Members who have paid for repairs covered by the Warranty Extension created under the Settlement Agreement; and (3) report to the Court its compliance with the foregoing numbers 1 and 2 within twenty-one days.

The hearing on the Motion set for June 9, 2025, is **VACATED**.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                    Initials of Deputy Clerk:
                                                                          kdu
CIVIL-GEN